# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

THE IDAHO REPUBLICAN PARTY, *et al.*,

        Plaintiffs,

vs.

BEN YSURSA, in his Official Capacity as
Secretary of State of the State of Idaho,

        Defendants.

Case No. 1:08-cv-00165-BLW

## AFFIDAVIT OF GARY G. ALLEN

STATE OF IDAHO  )
               )ss.
County of Ada     )

COMES NOW, your affiant, GARY G. ALLEN, being first duly sworn upon oath, deposes, states and avers as follows:

1.     I am an attorney duly licensed to practice law in the state of Idaho. I am one of the attorneys representing Defendants/Intervenors in this matter. I make this affidavit based upon my personal knowledge and to the best of my information and belief.

2.     I have reviewed the information on the 2006 and 2008 legislative primary elections on the Idaho Secretary of State's website and it reveals that the following elections including a contested Republican primary with no general election opponent.

| 2008 | 2006 |
| --- | --- |
| District 3, Senate | District 10, Representative A |
| District 3, Representative B | District 11, Representative A |
| District 11, Representative B | District 11, Representative B |
| District 14, Senate | District 13, Representative B |
| District 20, Representative A | District 20, Representative B |
| District 21, Senate | District 21, Senate |
| District 31, Representative A | District 21, Representative A |

| District 31, Representative B | District 27, Representative B |
| District 32, Representative B | District 31, Representative A |
| District 35, Representative B | District 32, Representative A |
| | District 32, Representative B |

3.      Attached hereto as Exhibit "A" is a true and correct copy of the Deposition of

Norman Semanko.

Executed on October 24, 2008

/s/ Gary G. Allen
Gary G. Allen

SUBSCRIBED AND SWORN to before me this 24th day of October, 2008.

/s/ Sharon L. Cuslidge
Notary Public for Idaho
Residing at _____
My commission expires:_____

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 24th day of October, 2008, I submitted this foregoing to the Clerk of the Court for service on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing, including, but not limited to, the following:

John Eric Sutton       jesutton@jesutton.com

Charles Crawford Crafts    idaholitigator@yahoo.com


/s/ Gary G. Allen
Gary G. Allen

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO


THE IDAHO REPUBLICAN PARTY, et al, )1:08-CV-00165-BLW

                Plaintiffs,     )

vs.                         )

BEN YSURSA, in his Official    )

Capacity as Secretary of State of  )

the State of Idaho,         )

                Defendants.    )

THE COMMITTEE FOR A UNITED     )

INDEPENDENT PARTY, INC.; the    )

AMERICAN INDEPENDENT MOVEMENT OF  )

IDAHO; its Chairman MITCH CAMPBELL;)

_____)

(Caption Continued)

RULE 30(b)(6) DEPOSITION

OF THE IDAHO REPUBLICAN PARTY

TESTIMONY OF NORMAN M. SEMANKO

September 23, 2008

REPORTED BY:

DIANA L. DURLAND, CSR No. 637

Notary Public

1 JOHN HAIGHT; CALVIN LEMAN; ANDREW  )
2 LOGSDON; BARBARA NELSON; LAUNA     )
3 NOBLE; LaMAR ORTON; JASON RAMSEY;  )
4 BOYD STOKES; LAURA PIKE CAMPBELL   )
5 and JOSEPH BRITTON,            )
6       Defendants-Intervenors.  )
7 _____)
8
9       THE DEPOSITION OF NORMAN M. SEMANKO was
10 taken on behalf of the Defendants at the conference
11 room of the Offices of the Civil Litigation and
12 Contracts Division of the Attorney General's Office,
13 954 West Washington, Boise, Idaho, commencing at 8:30
14 a.m. on September 23, 2008, before Diana L. Durland,
15 Certified Shorthand Reporter and Notary Public within
16 and for the State of Idaho, in the above-entitled
17 matter.
18       APPEARANCES:
19 For the Plaintiffs:
20    J.E. Sutton & Associates
21    By:  JOHN ERIC SUTTON
22    200 North Third Street, Suites 2 & 3
23    Post Office Box 799
24    Boise, Idaho, 83701-0799
25

1       A P P E A R A N C E S (Continued)
2  For the Defendants:
3    MICHAEL S. GILMORE
4    KARIN D. JONES
5    Deputy Attorneys General
6    Civil Litigation Division
7    Office of the Attorney General
8    954 West Jefferson Avenue
9    Post Office Box 83720
10    Boise, Idaho, 83720-0010
11
12  For the Defendants-Intervenors:
13    Law Offices of Harry Kresky
14    By:  HARRY KRESKY
15    250 West 57th Street, Suite 2017
16    New York, New York, 10107
17       -and-
18    Givens Pursley, LLP
19    By:  GARY G. ALLEN
20    601 West Bannock Street
21    Post Office Box 2720
22    Boise, Idaho, 83701-2720
23
24  Also Present:
25    Mitch Campbell

1       I N D E X
2
3 TESTIMONY OF NORMAN M. SEMANKO          PAGE
4
5 Examination by Mr. Gilmore              5
6       173
7
8 Examination by Mr. Kresky               62
9       171
10
11 Examination by Mr. Allen                153
12
13       E X H I B I T S
14              MARKED
15 1.  Notice of Taking Deposition Pursuant to      9
16    Fed.R CIV P. 30(b)(6)
17
18 2.  Complaint                10
19
20
21
22
23
24
25

1       NORMAN M. SEMANKO,
2 having been first duly sworn to tell the truth
3 relating to said cause, testified as follows:
4       EXAMINATION
5 BY MR. GILMORE:
6    Q. There's a formality under Rule 30(a)(5)
7 where we need to do a few things.  The officer who is
8 going to be taking this deposition is Diana Durland.
9 She's a certified court reporter licensed by the
10 State of Idaho, the business address is 421 West
11 Franklin Street in Boise.
12       The date and time and place of the
13 deposition are the following.  Today is September 23,
14 which is a Tuesday.  This time is approximately 8:30
15 when it is noticed to begin.  The place of the
16 deposition is the conference room outside the Civil
17 Litigation and Contracts Division of the Attorney
18 General's Office, 954 West Washington, Boise, Idaho.
19 The deponent's name is Norm Semanko.  Is that
20 correct?  Norm or Norman?
21    A. Norm Semanko is fine.
22    Q. The oath has been administered by the
23 reporter, and we need to identify all persons
24 present.  My name is Michael Gilmore.  I'm a Deputy
25 Attorney General for the Civil Litigation Division of

1c00d8c3-6611-4e7e-a991-613d874d857f

1  the Attorney General's Office.
2      MS. JONES: My name is Karin Jones. I'm
3  also a Deputy Attorney General for the Civil
4  Litigation Division.
5      MR. KRESKY: Harry Kresky, attorney for the
6  defendants-intervenors.
7      MR. ALLEN: Gary Allen, also attorney for
8  the defendants-intervenors.
9      MR. SUTTON: John Sutton on behalf of the
10  party.
11      WITNESS: Norm Semanko, chairman of the
12  Idaho Republican Party.
13      Q. (BY MR. GILMORE) Mr. Semanko, could you
14  just start by telling us your name and business
15  address?
16      A. Sure. My full name is Norman Michael
17  Semanko. I go by Norm most of the time. And the
18  Idaho Republican Party office is at 802 West Bannock
19  Street in the basement level, Boise, Idaho, 83701.
20      Q. Are you a lawyer, Mr. Semanko?
21      A. I am an attorney, yes.
22      Q. Are you familiar with procedures for taking
23  a deposition under the Federal Rules of Civil
24  Procedure?
25      A. Yes.

1      Q. And how did you obtain your position with
2  the Republican Party?
3      A. I was nominated from the floor at the State
4  Convention and elected by majority at the State
5  Convention held in Sandpoint on June 14 of 2008.
6      Q. How were you chosen by the Idaho Republican
7  Party as the person to answer this 30(b)(6)
8  deposition?
9      A. I was informed by my attorney that I was to
10  show up for a deposition today.
11      Q. And did you bring any written materials with
12  you in response to the notice of deposition?
13      A. I did not.
14      Q. I'd like to just begin by asking you about
15  the governance of the Idaho Republican Party. Can
16  you describe what your authority is in your position
17  with the party?
18      A. Sure. The chairman of the party is
19  responsible for implementing the day-to-day
20  activities of the party for supervising the staff
21  that is in place.
22      Q. And what committees or organizations would
23  the party have authority to said policy for the party
24  or the party's official positions?
25      A. The governing body of the Republican Party

1  in the State of Idaho under the Idaho Republican
2  rules is the State Central Committee.
3      Q. Could you describe the State Central
4  Committee a little bit, how it's composed?
5      A. The State Central Committee is composed of
6  representatives from each of the counties. There are
7  44 counties, of course, in Idaho. Each of the county
8  Republican organizations selects a chairman, and that
9  chairman is part of the State Central Committee.
10      They also select a state committeeman and
11  state committeewoman, and those are part of the State
12  Central Committee.
13      In addition to the 44 counties, we have 35
14  legislative districts. Each of the legislative
15  districts have a central committee, and each of those
16  legislative districts selects a chairman. And the
17  chairman of the legislative district is likewise a
18  member of the State Central Committee.
19      Beyond that, you're stretching my memory,
20  but that's my recollection of who is on the State
21  Central Committee.
22      In addition, each of the officers of the
23  state party, myself as the chairman, the two
24  vice-chairmen, the secretary, and the treasurer are
25  all members of the State Central Committee, is my

1  understanding.
2      (Exhibit 1 marked.)
3      Q. (BY MR. GILMORE) Could you look at what we
4  marked as Exhibit 1? Do you see that, Mr. Semanko?
5      A. Yes.
6      Q. Have you seen this document before?
7      A. Briefly, yes.
8      Q. So I take it that as you look at page two,
9  I've asked the plaintiffs to designate somebody who
10  can answer questions regarding the facts alleged in
11  various paragraphs of the complaint. Do you see
12  that?
13      A. Yes.
14      Q. You were here for that purpose; is that
15  correct?
16      A. Yes. I'm here for this deposition that's
17  been noticed up and I guess the amended notice as
18  well.
19      Q. And I've also asked the deponent in this
20  30(b)(6) deposition -- I've asked for somebody who
21  is able to discuss how the Idaho Republican Party
22  proposes to implement any relief that it requests.
23  You see that as well?
24      A. Yes.
25      Q. You'll be prepared to testify on that

1 subject as well?
2     A. I will answer to the best of my ability,
3 yes.
4     (Exhibit 2 marked.)
5     Q. (BY MR. GILMORE) The majority of my
6 questions, Mr. Semanko, since I've noticed the
7 deposition regarding which paragraphs of the
8 complaint will be directed to the complaint, which is
9 now Exhibit 2 to the deposition, could you go forward
10 to paragraph 22 of the complaint, which I think
11 you'll find is on page eight. I'll give you a moment
12 to read paragraph 22, if you would, please.
13     A. Okay.
14     Q. You see where that paragraph refers to
15 infiltration of non-Republicans into the selection
16 process for Idaho Republican party candidates?
17     A. Yes.
18     Q. Do you have any personal knowledge that can
19 identify or quantify instances in which there have
20 been infiltration of non-Republicans into the
21 selection process for Idaho Republican Party
22 candidates?
23     A. My only knowledge is that the Idaho
24 Republican Party at its State Central Committee
25 meeting in June of `07 adopted a rule that provides

1 for only registered Republicans to be able to vote in
2 the Republican Primary as the mode of candidate
3 selection for the Republican Party.
4     Beyond that, I really don't have any
5 knowledge of -- I know that was adopted by the State
6 Central Committee, and I know also that the State
7 Convention in 2006 adopted a party platform position
8 saying largely the same thing.
9     I can read from those, if you'd like. That
10 platform position was re-adopted in 2008 at the 2008
11 convention.
12     I can't get into the minds of the
13 individuals that voted or why they voted the way they
14 did. I can only tell you that the party did vote to
15 adopt that rule and to adopt that platform position.
16     Q. If I can clarify, then, you had no personal
17 knowledge of any particular primary election in which
18 there was infiltration of non-Republicans into the
19 selection process for Idaho Republican party
20 candidates?
21     A. My understanding of the process, as it
22 currently stands, is that any person can show up at a
23 primary and vote. And I have personal knowledge that
24 folks who do not consider themselves Republicans have
25 showed up to vote at those primaries.

1 I don't know which ballot they grabbed or
2 how they voted, but I do know that non-Republicans
3 have voted in our Republican Primary. And that's
4 part of the reason that I suppose people propose the
5 rule change and the platform change to dictate the
6 manner in which Republicans are allowed to
7 select their own candidate to place on the ballot for
8 the general election. That's what those two
9 documents, the rule and the platform, purport to do.
10     Q. In paragraph 22 of the complaint there's
11 also a reference to the crossover of non-Republican
12 voting for persons who would represent the Idaho
13 Republican Party in a general election as
14 characterized as posing a direct and immediate threat
15 to the integrity of the party. Do you see that?
16     A. Yes.
17     Q. What do you mean by direct and immediate
18 threat?
19     A. The Idaho Republican Party, as any other
20 association or citizen, has the right to associate
21 under the United States Constitution. And included
22 in that is the right to select their own candidate to
23 put on the general election ballot.
24     The crossover, again, the perception is that
25 that violates the ability of Republicans to associate

1 amongst one another. The way that's been addressed
2 in the rule is to dictate that only Republicans can
3 participate in the candidate selection process to
4 determine which Republican goes on the ballot.
5     Q. Do you have any evidence that
6 non-Republicans who vote for Republican candidates in
7 the Idaho Primary Election have different voting
8 patterns than Republicans?
9     A. Can you repeat that?
10     Q. Do you have any evidence that if
11 non-Republicans vote for Republican candidates in the
12 Idaho Primary Election, that is in the Republican
13 portion of the ballot, that they have different
14 voting patterns than Republicans?
15     A. I'm pretty sure, from my own personal
16 experiences, that Democrats don't vote Republican
17 most of the time. If they show up and vote in the
18 Republican Primary, they may or may not be doing what
19 they think to be the best interest of the Republican
20 Party.
21     Certainly if they're voting in the
22 Republican Primary, regardless of what their party
23 affiliation is, they are checking one of the boxes, I
24 assume, in the Republican Primary for one of the
25 Republican candidates, if I understand your question.

1c00d8c3-6611-4e7e-a991-613d874d857f

1    Q. My question was:  Do you have any evidence
2  that if a non-Republican votes for Republican
3  candidates in the Idaho Primary Election, that those
4  non-Republicans have different voting patterns than
5  the Republicans voting in the Idaho Primary Election?
6    A. Again, my own personal experience -- and I
7  read a couple of articles, and I'm not recalling who
8  wrote them.  But one in particular that was in the
9  Boise Weekly talking about how nice it would be to
10  get into the Republican Primary and select what they
11  perceive to be the weaker candidate as Democrats in
12  the Republican Primary.  I do have that recollection
13  from reading that article.
14    Q. So your evidence would be a Boise Weekly
15  article?
16    A. I'm just telling you what I recall having
17  read.  Of course, we've not responded to the requests
18  for production of documents yet.  The deadline hasn't
19  come.  But we do have a study that will be produced,
20  the Gerber & Morton study.  And I guess you'll have
21  an opportunity to review that.
22      It's also a letter from the Attorney
23  General's Office in response to a letter from
24  Mike Moyle with regard to the ability to have a
25  closed primary, the ability of the party to adopt the

1  rule and how the current statutory scheme is
2  contrary -- in Idaho is contrary to that rule and the
3  constitutional right of association.  So there's that
4  evidence as well.
5      And then, again, the platforms from 2006 and
6  2008 and the rule itself express, through the party
7  mechanism, a concern about Republicans being able to
8  choose their own candidate as is the case.  And I
9  believe 22 other states that parties have the
10  opportunity -- one party or the other have the
11  opportunity to select their own candidate to put on
12  the ballot.  Which in Idaho we choose to do through a
13  primary.
14    MR. KRESKY:  Just for the record, the person
15  who just arrived is Mitch Campbell, who is one of the
16  defendant-intervenors.
17    Q. (BY MR. GILMORE)  Do you have any personal
18  knowledge or any evidence that non-Republicans have
19  voted for Republican candidates in an Idaho Primary
20  Election and have nominated a candidate different
21  from the candidate who would have been nominated if
22  only Republicans had voted?
23    A. I can't understand that question.
24    Q. Let me break it down.  Start with the
25  premise -- it's part of your premise that

1  non-Republicans have voted for Republican candidates
2  in the Idaho Primary Elections; is that correct?
3    A. Yes.
4    Q. Starting from that premise --
5    A. Let me clarify.  That is the premise of the
6  Idaho Republican Party in adopting their rule and
7  platform.  I'm the chairman, but not the whole
8  Republican Party and I'm not everybody who voted for
9  the rule and voted for the platform position in 2006
10  and 2008.
11      So to clarify, it's the party that has done
12  this, not me as an individual.
13    Q. You've been designated by the party for the
14  30(b)(6) deposition to testify about the allegations
15  in the complaint; correct?
16    A. I understand that.
17    Q. Okay.  Starting from the premise contained
18  in the complaint that non-Republicans have voted for
19  Republican candidates in the Idaho Primary Election,
20  do you have any evidence that those non-Republicans
21  voting in the Idaho Primary Election have nominated a
22  candidate different from the candidate that would
23  have been nominated if only Republicans had voted?
24    A. Guess I have a problem with the premise of
25  your question.  I can't agree with the premise of

1  your question which seems to be that a certain number
2  of people have  -- I don't know the number of people
3  that have voted.  And I have a hard time with the
4  premise that a single individual, who I might be able
5  to identify, that person, him or herself -- what was
6  the wording, selected the person that would be put on
7  the ballot?
8    Q. Let me start over.  Part of the premise of
9  the complaint is that non-Republicans have voted for
10  Republican candidates in the Idaho Primary Election;
11  is that correct?
12    A. Can you point that to me in the complaint to
13  refresh my memory?  That's the paragraph 22.  Yes.
14  Proponents of the rule perceive that the crossover
15  posed a direct and immediate threat to the integrity
16  of the party.  Yes, I see that in paragraph 22.
17    Q. Okay.  Can we infer from paragraph 22 that
18  part of the premise of the complaint is that
19  non-Republicans have voted for Republican candidates
20  in the Idaho Primary elections?
21    A. What you can infer from this paragraph is
22  that there's been a direct and immediate threat to
23  the integrity of the party.  As I've already
24  discussed, the integrity of the party has to do with
25  the right to associate, freedom of association under

1  the United States Constitution.  We have an absolute
2  right as the Idaho Republican Party.
3      Q. Mr. Semanko --
4      A. Can I answer the question?
5      Q. You're not answering the question.  You're
6  stating the position of the party, but you're not
7  answering my question.
8      A. You can restate.  I thought you asked me if
9  it was okay to infer, and I said no, it's not.
10     Q. As the 30(b)(6) witness, is it your
11 testimony today that no non-Republicans have voted
12 for Republican candidates in the Idaho Primary
13 elections?
14     A. No.
15     Q. So it's your testimony that there have been
16 instances in which non-Republican voters have voted
17 for Republican candidates in the Idaho Primary
18 Election?
19     A. I believe that to be true, yes.
20     Q. Given that you have just stated that there
21 are instances in which non-Republican voters have
22 voted for candidates, have voted for Republican Party
23 candidates in the Idaho Primary Election, do you have
24 any evidence or personal knowledge that they have
25 ever affected the outcome and have selected a nominee

1  other than the nominee who would have been selected
2  if only Republicans had voted?
3      A. That's impossible to answer.  Unless I know
4  exactly who voted and how they voted and what their
5  party affiliation was or was not, it's impossible for
6  me to speculate and answer that question.
7      Q. So the answer is:  You have no personal
8  knowledge or evidence that participation by
9  non-Republicans has ever affected the outcome of an
10 Idaho Republican Party election, primary election?
11     A. Sir, you're asking me to respond to a
12 negative.  All I can say is I can't say whether it
13 did or didn't or has or hasn't affected the ultimate
14 outcome of any particular primary.
15     As I stated, it's impossible to know without
16 knowing precisely how everybody voted in the primary.
17 What I can tell you, as I've already stated, is it
18 has affected the ability of Republicans to have free
19 association, and it has violated the party rule that
20 was adopted in 2007.
21     Q. So your testimony today is not that you have
22 no knowledge that non-Republicans voting for
23 Republican candidates in the Idaho Primary Election
24 has affected the outcome of the nomination process,
25 only that associational rights have been violated if

1  they vote?
2      A. I didn't say that.
3      Q. What did you say?
4      A. I said I can't tell you with absolute
5  precision who voted in every single primary, what
6  their party affiliation was, what the total number of
7  votes would have been without non-Republicans voting.
8  It's impossible for me to tell you.
9      What I have previously said, there's no
10 doubt in my mind that non-Republicans have voted in
11 Republican primaries.  And obviously if
12 non-Republicans have voted in the primary, it does
13 have some effect on the vote total one way or the
14 other.
15     I just can't tell you if it would have
16 affected the outcome.  I don't have those records in
17 front of me, because there's no party registration
18 requirement.  I can't tell you exactly what impact it
19 had on the election one way or the other in any
20 particular election.  So that's what I'm saying.
21     Q. Now can you look at paragraph 23 of the
22 complaint?
23     A. Yes.
24     Q. I want to start with a semantic question.
25 Do you see a reference there to the Idaho Republican

1  Primary election?
2      A. Yes.
3      Q. Would you accept my clarification that as
4  far as the statute is concerned there's only a
5  primary election; there's no separately designated
6  Idaho Republican Primary election?  At the primary
7  election, a person can go in and vote.  There's no
8  sign up for an Idaho Republican Primary election
9  under the current system.  There's only a primary
10 election.
11     A. I guess I can agree that the current primary
12 system has Republicans, Democrats on the ballot.  And
13 that all occurs at the same time.
14     I guess the reason I'm hesitating is I can
15 read this to talk about the purpose of conducting the
16 Idaho Primary.  The Republican Primary could be
17 referring to -- in view of the current rule, then I
18 guess you could call it a Republican Primary.
19     But, yeah, I would agree that at the current
20 time there's one date that everyone shows up that
21 wants to participate in the primary.  Unless you're a
22 Democrat in the presidential selection process where
23 they do the caucus and they have everybody that
24 participates swearing allegiance.  Yeah, there's one
25 primary that everyone has an opportunity to show up

1c00d8c3-6611-4e7e-a991-613d874d857f

1  at.
2      Q. There's a reference in paragraph 23 to
3  selecting candidates who most closely represent the
4  views, ideals and interests of the members of the
5  Republican Party.  Do you see that?
6      A. Yes.
7      Q. How does the party define its views, ideals
8  and interests?  Or how does the party determine who
9  most closely represents the views, ideals and
10 interests of the members of the Republican Party?
11     A. Again under the idea that the Republicans
12 have the constitutional right to associate.
13 Republicans gathered together, in this case in a
14 primary, have the opportunity to determine who best
15 represents the views, ideals, and interests of the
16 Republican Party as each of those individual members
17 participating in the candidate selection process
18 would determine those views, ideals and interests to
19 be met for purposes of the Primary.
20     Q. So it's the voters, the Idaho Republican
21 Party members', voters', definition of views, ideals
22 interests that you're talking about here?
23     A. Yes.  If you look at our rule that was
24 adopted in 2007 at the summer meeting, I believe it's
25 section four of that particular article of the rules,

1  it says that only Republicans are allowed to vote in
2  Republican Primary elections.
3      So that is the manner in which the candidate
4  would be selected which most closely represents the
5  views, ideals and interests of the members of the
6  Republican Party as opposed to members of the
7  Democrat party or others being allowed to select that
8  candidate that would then, of course, go on the
9  general election ballot.
10     Q. Does the party have a mechanism for
11 disqualifying candidates who win in the primary
12 election who do not subscribe to the views, ideals
13 and interests of the members of the Idaho Republican
14 Party?
15     A. I'm not aware of any process that that would
16 be done by.  I'm not aware of any process where the
17 Republican Party would have an opportunity to remove
18 somebody from the ballot.  I'm only familiar with the
19 procedures in the statutes and in our rules for
20 replacing someone when they are removed from the
21 ballot because they have been selected for some other
22 office or death or resignation.
23     I'm not immediately familiar with anything
24 that would allow the party to remove somebody from
25 the ballot for any particular reason.

1      Q. Is the primary election held before the
2  State Convention in Idaho?
3      A. I don't know that that is absolutely firm,
4  that that has to happen.  In 2008 that certainly
5  occurred.  The primary was in May, and the convention
6  was in June.  State Convention was in June.
7      Q. Do you know whether the approximate times of
8  the state conventions are set by statute?
9      A. I'm not immediately aware of that.
10     Q. At least in 2008, were Republican candidates
11 chosen before the party platform was adopted at the
12 convention?
13     A. Before the 2008 platform was adopted?
14     Q. Uh-huh.
15     A. Yes.  The 2006 platform was in place, but
16 the 2008 had not been adopted yet.
17     Q. And to the extent that the 2008 platform
18 represents the ideals and views and interests of the
19 Republican Party that was not finalized until after
20 the primary election; is that correct?
21     A. The 2008 platform is not the only document
22 that represents the positions of the party.  The 2006
23 platform did that, and the rules that are in place do
24 that.  So I guess I can't accept the premise that the
25 positions had not been adopted yet.  They were

1  refined in 2008, in June of 2008, at the convention,
2  but certainly there were already views, ideals and
3  interests as expressed through our existing 2006
4  platform and our existing rules in place prior to the
5  primary election.  Then following the primary
6  election, of course, we did have a State Convention
7  in June.
8      Q. Could you look at paragraph 24 of the
9  complaint, please?  Do you see references there to
10 permitting non-Republicans to select the Republican
11 candidate as weakening, diluting or obstructing that
12 process?
13     A. Yes.
14     Q. And do you have any evidence or any personal
15 knowledge of instances in individual elections where
16 that has happened?
17     A. Every primary that I've been associated with
18 and voted in, there have been non-Republicans that
19 have voted in that.  I'm sure the other party members
20 who have the concern about being forced to identify
21 or select their candidate, Republican candidate,
22 along with non-Republicans would have that same
23 concern.  That they're ability to affiliate and to
24 associate as Republicans has been diluted and
25 interfered with by having nonparty members

1 participate in that process.
2     Q. Later on in paragraph 24, there's a
3 reference to -- after stating the premise of
4 permitting non-Republicans to select the Republican
5 candidate, there's a reference to forcing the party's
6 candidates to modify their political message,
7 ideology and positions on public policy issues in
8 order to persuade nonparty members to vote for them
9 in the primary election.
10     Can you give me instances in which
11 individual candidates have modified their political
12 message, ideology or position in order to persuade
13 nonparty members to vote for them in the primary
14 election?
15     A. Can you state that again?
16     Q. Can you identify any instances in which
17 Republican candidates in the primary election have
18 been forced to modify their political message,
19 ideology and positions on public policy issues in
20 order to persuade nonparty members to vote for them
21 in the primary election?
22     A. Reading this with forcing from the sense of
23 as a candidate feeling like you need to attract votes
24 other than Republican votes, yeah, I can see in
25 virtually every contested primary where candidates

1 are looking out at the potential voting body in the
2 primary saying, I need to appeal not just to
3 Republicans, but I need to appeal to independents and
4 Democrats as well.
5     And that does force, in every instance, at
6 least that to be in the mind of the candidate.  In
7 that sense, forcing them to change or modify their
8 political message to appeal not just to Republicans
9 but to Democrats and independents as well.
10     Q. Can you name one candidate who has been
11 forced to modify his or her political message,
12 ideology and position on public policy issues in
13 order to persuade nonparty members to vote for him or
14 her in the primary election?
15     A. I've not had any individual candidate say
16 they've been forced to change their position.  I've
17 observed that candidates tend to appeal to more than
18 just the Republican Party members in their messaging
19 and campaigning.  Those would be the instances where
20 I have seen that occur, is in the primary, the
21 competitive primaries, where you had more than one
22 candidate running certainly.
23     Q. Can you name one of those candidates and
24 tell us what election that was in?
25     A. I think virtually every candidate I've seen

1 in every Republican primary that I've been involved
2 in -- I wasn't old enough for the primary in `84 but
3 primaries, I guess, starting in `88, I've seen
4 candidates have their message appeal to as wide an
5 audience as possible.  Moderate, Conservative,
6 Liberal, Democrat, Republican.  So I guess I can't
7 exclude anyone.
8     I've seen pretty much everybody try to do
9 that.  Because they know when their name is on the
10 ballot in the primary, that it's wide open to
11 Republicans, Democrats and Independents.
12     Some candidates have done it probably more
13 than others, but I've certainly seen it across the
14 board.
15     Q. I've asked you several times now, and you've
16 yet to give me a name of a specific candidate who has
17 modified his or her political message, ideology and
18 position on public policy issues in order to persuade
19 nonparty members to vote for him or her in the
20 primary election.  If you don't give me a name now,
21 can I assume you have no names?
22     A. No, you can't assume that.
23     Q. Give me a name.
24     A. I would say every single Republican who has
25 been on the primary ballot since 1988.

1     Q. Give me, by name, one candidate who has had
2 to modify his or her political message, ideology or
3 positions?
4     A. I'm not going to give you one.  I've already
5 stated, it's every single Republican primary
6 candidate that's been on the ballot since 1988 has
7 been affected that they know independents and
8 Democrats can vote in the primary.
9     Q. Did Bill Sali modify his political message,
10 ideology and position on public policy issues in
11 order to persuade nonparty members to vote for him in
12 the primary election?
13     A. Are you asking for my opinion?
14     Q. Yes.
15     A. In my opinion, every single Republican Party
16 candidate has modified his message to appeal to
17 independents, Democrats, as well as Republicans, so
18 yes.
19     Q. Tell me how Bill Sali modified his message?
20     A. I can't tell you exactly how he's modified
21 it, but he certainly -- in my view, every Republican
22 candidate has, in the back of his mind when he is out
23 giving a stump speech, when she is drafting her
24 positions to put on a placard, on a card, in the back
25 of their mind they're thinking, how can I arrange

1  this message as broadly as possible to appeal to as
2  many independents and Democrats as well as
3  Republicans in the primary election.
4       Whether that's the a good strategy or not, I
5  believe it's in the back of every candidate's mind as
6  they're preparing their message, as they're
7  delivering their message, as opposed to a situation
8  where they are appealing just to Republicans, they
9  know only Republicans will be voting in the primary.
10      The focus of the message is necessarily
11 different. But I can't tell you with any
12 particularity exactly how any individual candidate
13 did that, exactly what they said. You asked for my
14 opinion, so I'm giving you my opinion.
15      Q. You're designated as the 30(b)(6) witness.
16 The answer is: You will not identify by name one
17 specific candidate in an election where this has
18 happened?
19      A. No. I said I will identify every single
20 Republican candidate that's been on the ballot. If
21 you want to present a list of all of those names
22 involved in all of those primaries, I'd be happy to
23 run through that list.
24      But I don't want to exclude anybody by
25 naming one or two candidates. It's every single

1  Republican candidate who has been on the primary
2  ballot, at least that I've observed since I've been
3  old enough to participate in primary elections, which
4  would have been 1988. I think it's affected each of
5  their thought processes and their messaging at some
6  level.
7       Whether it's in a debate, whether it's
8  talking to a specific group of voters, whether it's
9  putting their positions together on their Internet
10 site, in some aspects it's affected them all. Some
11 more than others. Some have tried to appeal more to
12 moderates and independents than others. But in my
13 opinion, and through my observations over the years,
14 it's affected every single Republican Party
15 candidate.
16      If you want us to come up with a list of all
17 of those candidates, we can do that, but I can't
18 recall all of those by memory. Again, my intent is
19 not to name one person. I don't want to exclude all
20 the others, because I think it's affected every
21 single candidate in every single primary.
22      Q. Can you give me a specific example of a
23 political message that has been modified?
24      A. I can't. Because I haven't been involved in
25 every one of those candidate's campaigns and their

1  messaging. I certainly have not been inside the mind
2  of any of our candidates when they are on the stump
3  and they start thinking, do I need to change a little
4  bit? Do I need to modify what I'm saying because
5  this audience has independents and perhaps even
6  Democrats in it as opposed to just being a Republican
7  audience.
8       I can't tell you exactly how -- what
9  exactly they changed in their message or in their
10 formal position. There's no doubt, as I've already
11 stated, that every one of those candidates -- because
12 more than just Republicans are participating in that
13 selection process, they're thinking about what those
14 people want to hear.
15      Q. Let me shift the focus then. In a general
16 election, do Republican candidates ever modify their
17 political message, ideology or position on public
18 policy issues to persuade nonparty members to vote
19 for them?
20      A. The rule that's been adopted by the party
21 has to do with our candidate selection process. Once
22 that candidate is selected through our Republican
23 candidate selection process -- that's why we want it
24 to be a closed process that only Republicans can
25 participate in.

1       Once that is done, then that person becomes
2  the nominee for the Republican Party through that
3  candidate selection process that is put on the
4  general election ballot.
5       In the general election, everybody knows
6  that everybody is entitled to vote. So every
7  candidate, if they're a smart candidate, they're
8  going to be trying to tailor their political message
9  to appeal to as many voters as possible.
10      That's a completely different process, the
11 general election process, than the candidate
12 selection process, which should inherently be a
13 Republican process under our party rule.
14      Q. How can you distinguish between a candidate
15 who modifies his position in the primary election
16 looking ahead to the general election from one who
17 does not?
18      A. Can you restate that?
19      Q. Let's just go to paragraph 29.
20      A. Can we take a break for a couple of minutes?
21      MR. GILMORE: Sure. Do you need to
22 check --
23      WITNESS: I need to call.
24      (Recess taken.)
25      Q. (BY MR. GILMORE) I'm going to ask you some

1c00d8c3-6611-4e7e-a991-613d874d857f

1  questions that really have to do with paragraphs 29
2  and 31. If you'd take a moment to read those.
3     A. Okay.
4     Q. In paragraph 29 is there a reference to
5  Democratic, Libertarian, Constitutional and
6  independent voters participating in the selection of
7  Republican Party candidates in the primary election?
8     A. There's reference to members of those
9  parties, yes.
10    Q. And independents?
11    A. As well as independent voters.
12    Q. Then on paragraph 31, there's a statement
13  that the State of Idaho forces the party and its
14  members to associate with persons who do not share
15  their political beliefs.
16     Is it the Party's position that no
17  independent voter can share the Republican Party's
18  political beliefs?
19    A. No. I don't think paragraph 29 or 31 says
20  that every single Democrat, Libertarian, Constitution
21  Party or independent voter has every position in
22  deference to Republican positions. It doesn't say
23  that.
24     It says that Republicans are forced -- which
25  is true if they want to participate in the primary

1  and vote for a Republican candidate -- to participate
2  in that process with members of the Democrat,
3  Libertarian, Constitution and other parties as well
4  as independent voters.
5     By definition they don't all share
6  Republican principles. They would be members of the
7  Republican Party if they shared all the same ideals.
8  There may be some overlap on certain positions, but
9  certainly not a complete overlap. I think that's
10  what 29 and 31 are saying.
11    Q. If I understood you correctly, the party is
12  not taking the position that no independents share
13  the party's political beliefs?
14    A. I can't say with any -- I can't say
15  definitely that there's any particular independent
16  that I know that has exactly the same positions as,
17  for example, the Republican platform. But I can't
18  tell you there's not. So I can't sit here and say
19  that there isn't a single independent that doesn't
20  share the views of Republicans. I can't say that as
21  a fact.
22    Q. And picking up on the last half of the
23  sentence in paragraph 31, can you say that every
24  independent is openly antagonistic to the ideology
25  and principles of the Idaho Republican Party?

1     A. Paragraph 31 talks about all persons who
2  don't share their political belief. 31 is talking
3  about those who necessarily don't have the same
4  political beliefs. If they don't have the same
5  political beliefs as the Republican Party, then they
6  are antagonistic to the principles of the Republican
7  Party.
8     So your question is assuming that we've got
9  an independent who shares political beliefs with
10  Republicans, and that would not be antagonistic. It
11  also would not fit what we are alleging in paragraph
12  31.
13     For those who don't share our political
14  beliefs -- members of the Democrat, Libertarian,
15  Constitution and other parties and independents, that
16  is antagonistic. That does deprive our members of
17  the right to associate with one another and conduct
18  their own candidate selection process as Republicans.
19    Q. Do all members of the Republican Party share
20  identical political beliefs?
21    A. No. I can say that not every single
22  Republican believes exactly the same on every single
23  political position.
24    Q. Are party platforms always adopted
25  unanimously?

1     A. No.
2    Q. We can say that members of the party who
3  attend the party's convention and are outvoted on
4  platform positions and who have lost on platform
5  positions are openly antagonistic to those platform
6  positions; are they not?
7    A. No. You can't say that. Because they are
8  members of the Republican Party; they believe in the
9  Republican Party. Just as in a family where you
10  don't agree on everything, it doesn't mean you'll
11  leave the family at the end of the day.
12     Again, it's a right of association. Whether
13  you agree on every single position or not, you're all
14  members of the Republican Party. You are free to
15  associate and should be free under our rule that's
16  been adopted to select your candidate from your party
17  to be on the general election ballot.
18     No, I wouldn't say that they're openly
19  antagonistic to the principles of the Republican
20  party. They are members of the Republican Party.
21  That's different than someone coming in who is not a
22  member of the party and voting in our process.
23    Q. Are there members of the Republican Party
24  who attended the State Convention in 2008 and who
25  voted in the minority with regard to certain platform

1c00d8c3-6611-4e7e-a991-613d874d857f

1  positions?
2      A. Yes.
3      Q. And they were --
4      A. No, wait a minute.  I believe the platform
5  was adopted unanimously.
6      Q. How about various resolutions or rules?  Was
7  there a vote on the closed primary issue?
8      A. Yes.  There was an advisory vote on that.
9  And there was a majority and minority on that vote as
10 there was on the chairmanship race and a few of the
11 other officer races.
12     Q. So there are at least some issues upon which
13 members of the Republican Party who attended the
14 convention took positions that were not the party's
15 official positions.  They voted against what became
16 the party's official position?
17     A. The official positions of the Republican
18 Party are set by the State Central Committee.  The
19 State Central Committee is the governing body of the
20 party.
21         Also the State Party Platform is part of the
22 positions of the party.  My understanding is the
23 platform position, which includes the so-called
24 closed primary rule, was adopted unanimously.
25         That's the way I would answer it.  With

1  regard to the governing laws of the party, the rule
2  and the platform, the central committee adopts the
3  rule.  And the convention adopts the platform.  And
4  the platform vote was unanimous at the convention, is
5  my recollection.
6      Q. Just as a practical matter, have there been
7  instances where members of the Idaho Republican Party
8  have voted against or debated against platform
9  positions that were adopted?
10     A. I believe the 2006 platform discussion on
11 the closed primary was such an occurrence.  I wasn't
12 personally in the room at the time that debate
13 occurred, but that's my understanding of what
14 happened in 2006.  There was a full open debate and
15 vote on the platform with regard to adopting a closed
16 primary rule.
17     Q. Are members of the Idaho Republican Party
18 who voted against or debated against a party platform
19 or resolution or position or a rule that was adopted,
20 are they in opposition to the ideology and principles
21 of the Idaho Republican Party as a result of their
22 vote or their debate?
23     A. Are you asking for my opinion?
24     Q. Yes.
25     A. No, I don't think they are.  Again, not

1  every Republican agrees on every single piece of the
2  platform or rule or resolution that is adopted, but
3  they are nonetheless members of the Idaho Republican
4  Party.  They've associated with one another to take
5  those positions and have those votes pursuant to the
6  rules of our party.
7          And the rules contemplate that there will be
8  votes and there will be decisions and we move forward
9  as a party with those positions and those decisions
10 that have been made.  So, no, I would say they're not
11 being antagonistic or --
12     Q. In summary, in order to be a member of the
13 party, you do not have to agree with all of the
14 party's positions.  Is that a fair summary of what
15 you just said?
16     A. That's true.  If you read our Republican
17 rule on the closed primary, it does not say that you
18 have to agree with every single principle of the
19 Republican Party to vote in a Republican primary.
20 You just need to be a Republican.
21         I can read that rule, if you'd like.  It
22 says only Republicans can vote in the Republican
23 primary.
24     Q. Do you have to be a member of the Republican
25 Party to attend the State Convention?  Not as a

1  member of the press, but as a participant of a state
2  convention?
3      A. Are you asking me how delegates are selected
4  for the State Convention?
5      Q. I'm asking you:  Do you have to be a member
6  of the Republican Party to participate and attend the
7  State Convention as a delegate or alternate?
8      A. Yes.  You must be selected by -- let me
9  take that back and say you must be selected by the
10 Central Committee for your county or the Central
11 Committee for your legislative district under the
12 reorganization process that occurs under our rules.
13         Immediately following the primary, all of
14 those that have been selected as precinct committee
15 persons during the primary meet in each of those,
16 whether it's county or legislative districts, and
17 choose delegates and alternates to attend the state
18 convention.
19         So the Republican party elected precinct
20 committee persons, select the delegates and
21 alternates to go to the convention.
22     Q. Can persons other than delegates and
23 alternates register for and attend the State
24 Convention?
25     A. I'm not sure exactly of the process that was

1c00d8c3-6611-4e7e-a991-613d874d857f

1 utilized this last time. I can tell you there were
2 guests in the room and there were members of the
3 press in the room.
4 　　　As far as being seated on the convention
5 floor either as a delegate or an alternate that takes
6 that delegate's place, that's a credentialing process
7 that is pretty defined.
8 　　　There certainly were others in the room
9 sitting behind the floor, the seated convention floor
10 delegates and alternates, who were not part of the
11 Republican Party in any way, shape or form.
12 Certainly the press members.
13 　　　A lot of the guests that were there, I would
14 say, are active in the Republican Party either as
15 candidates or elected officials or as precinct
16 committee people or officers of the party but were
17 not, for whatever reason, selected as delegates or
18 alternates but were nonetheless there as guests.
19 　　Q. Do you know who Rex Rammell is?
20 　　A. Yes. I know Rex Rammell.
21 　　Q. Do you know whether he attended the State
22 Convention this summer?
23 　　A. I saw Rex at the State Convention. I recall
24 seeing him outside the hall, outside the building. I
25 don't recollect -- essentially didn't see him on the

1 convention floor. I don't recollect seeing him in
2 the guest seating area or in the various displays
3 that were around the room.
4 　　　Folks were selling Republican wares and
5 handing out literature. He certainly did not have a
6 booth there, and I don't recall seeing him at the
7 booths.
8 　　　I do recall seeing him outside the hall and
9 at an off-site picnic I recall seeing him. Actually
10 it was at -- yeah, I saw him at an off-site picnic.
11 I don't recall seeing him in the building during the
12 convention.
13 　　Q. Do you know whether he registered to attend
14 the convention?
15 　　A. I don't know that. We can certainly figure
16 that out.
17 　　Q. Do you know whether he paid a registration
18 fee for the convention?
19 　　A. I don't know that.
20 　　Q. Does the party have any mechanism for
21 excluding non-Republicans from registering for a
22 convention or paying registration fees for the
23 convention?
24 　　A. I don't know that. I know that we have a
25 process for registering delegates and alternates, but

1 I'm not sure about that. I do know that we have a
2 process for credentialing and determining who is
3 authorized to vote during the convention.
4 　　　But as far as observers and guests and
5 people walking around, I can't tell you the exact
6 process that was utilized for that.
7 　　Q. Can you look up paragraph 32 of the
8 complaint, please?
9 　　A. Yes, I'm looking at that.
10 　　Q. There's a reference in the first sentence of
11 paragraph 32 about party raiding by Democratic voters
12 and other nonparty members. What does the complaint
13 mean by that?
14 　　A. The Idaho Republican Party, through the rule
15 that it has adopted, has decided that it wants to
16 have a closed primary process where only Republicans
17 are allowed to vote and select their candidate that
18 would go on the general election ballot.
19 　　　By the state law not recognizing or
20 enforcing or implementing that state party rule,
21 non-Republicans -- Democrats in this case and other
22 nonparty members -- are allowed to be involved in, to
23 infiltrate, to dilute, the selection process by
24 saying we're not just going to have Republicans
25 selecting the Republican candidate, we're going to

1 allow other people to come in and select your
2 candidate with you, if not for you, as part of that
3 process.
4 　　　I think that's what we're trying to say
5 here. We have a right to associate under the
6 Constitution. We've adopted a rule pursuant to that,
7 and the state law doesn't recognize that or in any
8 way implement or enforce that right of association as
9 expressed in the party rule.
10 　　Q. Are you aware of any instance in which party
11 raiding by Democratic voters has resulted in the
12 nomination of a Republican candidate who would not
13 have been nominated had the primary been closed?
14 　　A. I'm trying to recall my response to the
15 similar question earlier. Again, I can't, with any
16 particularity, unless I have a list of everybody that
17 voted and what their party affiliation is or is
18 not -- unless I have a list like that and compare it
19 to the totals, I can't tell you exactly what impact
20 that had on the vote totals.
21 　　　The only thing I can tell you is there's
22 absolutely no doubt that non-Republicans have voted
23 in Republican primaries. And so I guess the answer I
24 gave previously is the same. I can't with any -- I
25 would have to look at that list if it even existed.

1c00d8c3-6611-4e7e-a991-613d874d857f

1    Q. The answer is here today, you can't identify
2  a particular primary election in which party raiding
3  resulted in the nomination of a Republican candidate
4  who would not have been nominated if only Republicans
5  had voted?
6    A. You're asking me to answer a negative, and I
7  don't have the evidence to prove that negative
8  proposition.
9    Q. Could you look at paragraph 35 to the
10  complaint, please?
11    A. Yes.
12    Q. There's a reference to immediate and
13  irreparable harm.  Do you see that?
14    A. Yes.
15    Q. Would that be in reference to the 2010
16  primary?  Is that the harm that is being discussed
17  there?
18    MR. GILMORE:  Do you need to take a call?
19    WITNESS:  No.  I'm making sure it's not
20  something that is  -- if I could take a couple of
21  minutes.  I apologize.
22    (Recess taken.)
23    Q. (BY MR. GILMORE)  Before the break, I
24  directed your attention to paragraph 35 of the
25  complaint.

1    A. I have the question.  I can answer it.  I
2  think the question was whether or not the 2010
3  primary is the immediate and irreparable harm.
4    That's part of it certainly, because we're
5  going to have a primary in 2010.  If we have another
6  primary, as we did in 2008 where our Republican rule
7  is not in force, then that certainly causes harm to
8  the party and its members.
9    However, there's an ongoing impact and harm
10  to the members of the party in their inability to be
11  able to associate under the Constitution and to
12  select their own candidate under the rule that
13  they've chosen to adopt.
14    That occurred in 2008.  We're still under
15  that same dynamic where the Idaho election laws don't
16  respect or implement or enforce, aren't in agreement
17  with our rule.  Therefore that's an ongoing impact to
18  our constitutional right to freely associate.
19    Q. Regarding the ongoing harm, then, can you
20  identify any nominee selected at the 2008 primary
21  election for the Republican Party who would not have
22  been selected if there had been a closed primary?
23    A. Let me make it very clear.  It's not just
24  the outcome, potential outcome, that we claim as
25  injury.  It's the right to freely associate.

1    With regard to that part of your question, I
2  can't agree that it's just the potential outcome or
3  actual outcome that is the immediate and irreparable
4  harm.  It's also the ability to freely associate.
5  And it is the right to participate in a candidate
6  selection process that is consistent with the state
7  Republican Party rule.
8    But, no, as I stated in all of the previous
9  answers to the same previous question, I can't, with
10  any particularity, tell you that everybody that voted
11  in the primary what their party affiliation is or
12  isn't and how folks that were not Republican
13  participating in that primary would have affected the
14  outcome if they had not participated.  Whether that
15  is different or not.  In this primary or previous
16  primaries.  I can't tell you because I'd be
17  speculating.  I don't have those facts in front of
18  me.
19    Q. Can you identify any nominee for the
20  Republican Party selected in the 2008 primary
21  election who does not share the political beliefs of
22  the Republican Party?
23    A. No.
24    Q. Could you look at paragraph 37 of the
25  complaint, please?  The second sentence has a

1  reference to these injuries include not only the
2  selection of the different party nominees than would
3  otherwise be selected.  I understood your answer to
4  be that you could not identify a particular person
5  who was a different party nominee that would
6  otherwise be selected?
7    A. Let's be clear.  My response to all four
8  times you've asked this now has been that I can't
9  tell you whether it would have changed the outcome or
10  not.  I'm not saying it would have or wouldn't have.
11    I don't have those names of the voters.  I
12  can't tell you exactly how the outcome would have
13  changed.
14    I can tell you that the numbers are
15  obviously different, because you've got
16  non-Republicans voting in that primary election that
17  would not otherwise be voting if the Republican Party
18  rule was being adhered to pursuant to our
19  constitutional right of association.
20    I can't tell you the exact numbers and how
21  it would breakdown.  But I can tell you there is a
22  difference.  There's absolutely no doubt to that.
23    Q. But the party has alleged in the second
24  sentence of paragraph 37 that these injuries include
25  not only the selection of the different party

1c00d8c3-6611-4e7e-a991-613d874d857f

1 nominees that would otherwise be selected. You've
2 been designated by the party to answer questions
3 about this particular paragraph of the complaint.
4 And in summary, you couldn't give me a
5 specific instance of that; is that correct?
6 A. No. and I can't tell you that it hasn't
7 happened. I can tell you, however, as I already
8 said, that the vote totals are different than they
9 would have been if only Republicans had been voting.
10 And in which races that affected, who got selected, I
11 can't tell you with particularity, because I don't
12 have those votes or facts in front of me.
13 Q. May I assume from your previous answers you
14 cannot tell me with particularity instances of
15 alterations or suppression of the political message
16 presented by the nominees to the electorate?
17 A. As I stated before, in the instance of every
18 Republican candidate who is on the primary, at least
19 in a contested race, they're going to modify.
20 They're going to adapt their message to the fact,
21 like in a general election, they're trying to appeal
22 to more than just Republicans. They're trying to
23 appeal to Democrats and independents as well,
24 contrary to the Republican party rule that says that
25 candidate selection process for the Republican

1 nominee should only be conducted by Republicans
2 voting.
3 Again, I can't with any particularity say I
4 saw this candidate say this thing and then modify his
5 message the next day because there were independents
6 in the room. But it occurs in every single, I
7 think -- that is my opinion. Every Republican
8 candidate in every primary has done that because of
9 the reality that they are appealing or attempting to
10 appeal to more than just Republicans, again contrary
11 to our party rule.
12 Q. Did I understand that you said the
13 Republican nominees may at times modify their message
14 for the general election in order to appeal to a
15 broader electorate?
16 A. No. What I said was that the Republican
17 candidate, not the nominee, the Republican candidate
18 who is selected through our Republican nominee
19 selection process in a general election will do what
20 he or she can to appeal to the broader audience,
21 because it's a general election. Everyone is
22 entitled to vote. Republican, Democrat, independent
23 and otherwise.
24 That's a different process. That's an
25 election of all the voters as opposed to the

1 candidate selection process that Republicans are
2 entitled to hold, in this case through a primary,
3 pursuant to their constitutional right, freedom of
4 association under the First Amendment.
5 Just as Democrats are allowed to select
6 their candidate for president through their closed
7 caucus process. That's different than the general
8 election process where that Democrat then stands on
9 the ballot with a Republican and any independent for
10 all voters to be able to vote on. Not a closed
11 process like the Democrats have for their caucus or
12 that 22 states have for their candidate selection
13 process in the primary.
14 Q. Well, Republican candidates for a primary
15 election, upon occasion, look forward to the general
16 election and begin modifying their message in
17 anticipation of the general election even for the
18 primary?
19 A. I can't speculate on what any particular
20 candidate would do in the primary with the view
21 toward the general election.
22 Q. That's a possibility?
23 A. Not as much under the current system as
24 under the system that has been adopted under our
25 closed primary rule.

1 Right now in the primary everybody can come
2 in and play in the Republicans' selection process.
3 So candidates are already worried about appealing to
4 non-Republicans in the primary.
5 I'm speculating. There's probably less
6 reason to look forward to the general election,
7 because they're already trying to appeal to a broader
8 audience in the primary.
9 If we close the primary as is required by
10 the rule, then you are necessarily only appealing to
11 Republicans, because those are the only folks
12 participating in the candidate selection process in
13 the primary. And then maybe there would be a larger
14 question about how that affects your ability to
15 garner votes from independents in particular in the
16 general election.
17 But that's all speculation. Because, of
18 course, that rule has not been enforced, adopted,
19 implemented in any way, shape or form by the state.
20 Q. Could we turn to paragraph 43, which is on
21 page 13 of the complaint?
22 A. Yes.
23 Q. How does the party propose to identify those
24 who associate with the party and to exclude those who
25 do not associate with the party?

1    A. If I'm reading the paragraph correctly, it
2  says that we're entitled to declaratory relief
3  establishing the right to identify those who
4  associate with the party.
5        Once that decision is made by the court
6  upholding that right, then the ability, the process,
7  how that will be done will be determined.  We aren't
8  setting forth -- my understanding of this complaint
9  anyway is we're not setting forth the process to do
10  that.  We're asking for relief to be granted saying
11  that we have the right to identify those who
12  associate with the party.
13        And we aren't actually asking the court to
14  adopt a specific way of doing that right now.  Nor
15  are we proposing a way to do that right now.  That
16  would be imitation upon the granting of the
17  declaratory relief that we are asking for.
18    Q. If I understand your answer, the party has
19  not yet settled on a mechanism for identifying those
20  associated with the party?
21    A. I don't recall that we have a rule or
22  resolution or anything that lays out the exact
23  specific of how to identify that.  Now once the
24  declaratory relief is granted and our right to
25  associate under the First Amendment is upheld, then I

1  imagine we will be having that dialogue with the
2  Legislature so that the laws can be conformed to our
3  party rule and to the Constitution.
4        No, I'm not aware that that's been decided
5  upon in any way, shape or form.  We're asking for the
6  declaratory relief establishing that right to
7  identify who is associated with the party and who is
8  not and how to implement that.
9    Q. Will there be any criterion other than the
10  willingness to register as a Republican that would
11  satisfy the party's association requirements?
12    A. I don't know that.  I don't know what would
13  be acceptable to the State Central Committee.  I
14  don't know whether it would be acceptable to the
15  other parties that are responsible for implementing
16  the changes to the law or what will be acceptable to
17  the court if it comes to that.
18        I can't say that that would be the only way
19  to do it.  It could certainly be a way to do it.  You
20  said registration; right?
21    Q. Well, that was my question.  I was trying to
22  find out if that was your only criterion or if you
23  had any others?
24    A. It's not that it's a criterion.  I think you
25  asked the manner in which we would identify those who

1  associate with the party and exclude those who do not
2  associate with the party.
3        I'm sure that if we  -- when we get the
4  relief that we're seeking from the court, that we
5  will be able to identify that mechanism and really
6  work hard with a lot of other people to identify what
7  that mechanism is so that we can get it adopted and
8  implemented in time for the next election, the next
9  primary.
10    Q. Would the party itself bear the costs of
11  identification?  Or will it try to place those on the
12  county courts?
13    A. That's again something I don't know, and I'm
14  not aware that we've adopted any rule or resolution
15  or platform or any other kind of position that
16  addresses that issue of cost and what costs would be
17  associated, let alone how to address those.
18        That's again a little bit the cart before
19  the horse, because we don't know that -- the
20  declaratory relief has not been granted yet.
21    Q. Your understanding is at this point you're
22  just asking the court to declare the current Idaho
23  Primary Election law unconstitutional but not asking
24  the court to create a method of party identification
25  or registration or some other; is that correct?

1    A. I'm not sure I agree with that
2  characterization.  What I would say, amongst the
3  things that we are asking for, we are asking for
4  declaratory relief.  And I don't believe we're asking
5  the court to implement any specific mechanism by
6  which to identify those who associate with the party
7  and to exclude those who do not associate with the
8  party.  I don't believe we're asking the court to
9  adopt any specific mechanism for doing that.
10    Q. That will shorten up a bunch of my
11  questions.
12    A. Maybe it's a nuance, but I don't think it
13  is.  Asking for declaratory relief and asking for a
14  an injunction requiring somebody to do something in
15  an exact specific way are two different things.
16        I don't think we're asking for a permanent
17  injunction for the Secretary of State to do things
18  exactly a certain way.  We are raising
19  constitutionality issues that because something isn't
20  done in a particular way it must be declared
21  unconstitutional.  That's the declaratory judgment
22  and any suggested or requesting positive injunctive
23  relief are different things.
24        That's my understanding of what we're asking
25  for, is for declaratory relief that this is an

1  unconstitutional infringement of our right to
2  association but the state not following the
3  Republican Party rule.  And then any injunctive
4  relief -- my recollection, I can review this
5  again -- is to prohibit the Secretary of State from
6  conducting a primary election that is not consistent
7  with the party rule.
8        My recollection is there's no specific
9  relief requested in terms of exactly how it should be
10 done.
11     Q. That's the clarification I was looking for.
12 Just a couple of other questions:  Has the party
13 taken any position  -- let me just say, assume for
14 the sake of argument the party prevails on the
15 declaratory judgment.  Take that hypothetical
16 assumption.
17       Does the party have any position on whether
18 it would allow same-day registration with regard to
19 voters for the Republican primary?
20     A. I'm not aware that we've adopted any rule or
21 resolution or party platform or any other position
22 that deals with that.  My understanding of the way
23 our party is governed is, taking your assumed fact
24 that the party has found and given us declaratory
25 relief, it would be the prerogative of the State

1  Central Committee to agree to, if that's the right
2  terminology, whatever manner or method was going to
3  be identified or proposed to implement the
4  declaratory relief.
5        The State Central Committee is the governing
6  body.  They are the ones that adopted the rule, the
7  resolution authorizing and requiring the party to
8  enter into the lawsuit that we're in now.  And so my
9  assumption, with my understanding of the governance
10 of the party, is that it would be up to the State
11 Central Committee, whether it's special meeting or a
12 regular meeting, perhaps even an emergency meeting,
13 depending on the circumstances, to meet, discuss and
14 identify the solution that they were agreeable to.
15       So I can't say that they have adopted
16 anything that would agree to use that method that you
17 asked about.  I also can't say that they wouldn't
18 agree to that.  But I'm speculating either way,
19 because we've not adopted a position one way or the
20 other on it.
21     Q. To clarify, the party just simply hasn't
22 taken a position at this point on whether to allow
23 same day registration for voting in the 2010 primary
24 if it prevailed?
25     A. Not that I'm aware of.

1      Q. Are you the officer of the Republican Party
2  who makes decisions with regard to whether to pursue
3  attorneys' fees and costs in this action?  If you
4  need to talk to Mr. Sutton about this, that's fine?
5      A. I don't think I need to talk to him.  The
6  reason I'm hesitating is because I'm not the one that
7  signed the complaint.  I'm trying to think of the
8  legal position that my predecessor was in and his
9  ability to -- yes.  Given the resolution that we
10 adopted in January of 2008, which said that if this,
11 then this, the then being we file the lawsuit, the
12 Republican Party was the one authorized or directed
13 to file the lawsuit.
14       The chairman of the party is the one who is
15 responsible for implementing the day-to-day
16 decisions.  We do have a hired executive director who
17 helps do that on a day-to-day basis.  I would say
18 that whoever was identified by either the State
19 Central Committee or in the absence of the State
20 Central Committee, meaning the executive committee
21 would be authorized to do that.
22       If neither of them did that, then I think it
23 would fall to the chairman to have the authority to
24 do that.  And he may delegate some of that to the
25 executive director.

1        So to answer your question, I think the
2  chairman is authorized to do that.  Whether the
3  chairman did that in this case or not or delegated it
4  to someone else or instructed the attorneys to do it,
5  I don't know because I wasn't the chairman at the
6  time.
7        You're asking me if I'm authorized as the
8  chairman to seek this relief?
9      Q. I'm asking you -- you can always plea for
10 attorneys' fees, but you don't have to ask for them.
11 I'm asking you:  Is it your decision on whether to
12 ask for them?
13     A. In this point, I'm in the position that the
14 previous chairman was in.  So yes.  Unless the
15 Central Committee or the Executive Committee decides
16 otherwise, I'm authorized under the by-laws to do
17 that, yes.  Not the bylaws, the rules.
18     Q. Do you intend to ask for them?
19     A. Is there a specific part of the complaint
20 that you're referring to?
21     Q. Just the complaint asks for attorneys' fees
22 in its prayer for relief.
23     MR. KRESKY: 52.
24     Q. (BY MR. GILMORE) 52.
25     A. I guess the prayer for relief speaks for

1 itself. But we've not specifically asked for
2 attorneys' fees yet.
3    Q. I'm trying to find out if you're the officer
4 who will decide to do that and if you intend to?
5    A. Yes to the first part, and I don't know to
6 the second part. I don't know if I will or not.
7        I think I've said enough about the
8 relationship between the chairman and Central
9 Committee and Executive Committee. I will consult
10 with those entities before I make any final
11 decisions. I anticipate that I will be the one
12 authorized to do that.
13       MR. GILMORE: That completes my questions.
14       MR. KRESKY: Why don't we take a five-minute
15 break?
16       (Recess taken.)
17            EXAMINATION
18 BY MR. KRESKY:
19    Q. Good morning, Mr. Semanko?
20    A. Good morning.
21    Q. At the state conventions in 2006 and 2008
22 where this issue of the resolution, the rule, and the
23 genesis of the lawsuit were under discussion, were
24 there any hearings held in which evidence was
25 presented as to outcomes of primary candidates

1 subverting their message and so on?
2    A. I wasn't in attendance at a lot of the 2006
3 convention in Idaho Falls. I was there for part of
4 it. I'm not personally familiar with the exact
5 process that was utilized to bring the resolution to
6 the floor or the rule at the State Central Committee
7 in 2007.
8        All I can tell you is that we have a
9 platform committee, a convention, and this certainly
10 would happen in 2008. The platform committee is
11 charged with reviewing the platform, entertaining any
12 proposed changes, voting on that and sending it to
13 the floor of the convention. I'm assuming the same
14 process that was followed in 2006 was followed in
15 2008.
16       My understanding of that process, from
17 having sat in on it, whether it's a resolutions
18 committee, a rules committee, a platform committee, a
19 convention, is it's a traditional normal committee
20 hearing. And we don't take evidence or swear people
21 in or anything to that extent.
22       We have folks designated to participate on
23 the committee from different parts of the state from
24 throughout the party. They deliberate on motions.
25 It's more of a Roberts Rules of Order type of

1 proceeding and not an evidentiary proceeding.
2        So to answer your question, no, I don't
3 think evidence was taken per se. I'm sure during the
4 discussions there were stories shared and examples
5 given and heated exchanges of ideas back and forth,
6 but I don't know that you would characterize it as
7 evidence being presented to the committee.
8    Q. Can you recall any of the stories or
9 anecdotes or information that was presented?
10    A. I wasn't in attendance at the 2006 or 2008
11 committee meetings where any of that would have been
12 discussed. The rule was adopted by the State Central
13 Committee in the summer of 2007 in Burley, and I was
14 not personally present for that.
15       I was present for the 2008 State Central
16 Committee in Boise where the resolution was adopted.
17 And the resolution authorized and directed the state
18 party to file the lawsuit in the event that the
19 legislature had not conformed the Idaho laws to our
20 constitutional right and the rule that had been
21 adopted in the summer of `07.
22       And at that meeting, in January of `08,
23 there was a debate on both sides. It wasn't a
24 particularly close question. The resolution passed
25 in the neighborhood of 70 percent to 30 percent

1 amongst the State Central Committee members.
2        There was discussion about -- and I can't
3 tell you exactly who said exactly what. If you're
4 asking me for that, I can stop now.
5        There was general discussion from delegates,
6 State Central Committee members, at the January `08
7 meeting. Concerns about if you are the -- if you're
8 a particular football team, you don't want the other
9 football team selecting your quarterback for you.
10    Q. We got that.
11    A. You were asking me what was said at the
12 meeting, and that was certainly one of the things
13 said. We don't want the other team picking our
14 quarterback for us.
15       There was a lot of sentiment during that
16 discussion about this issue that has been going on
17 for a while. We adopted the rule in `07, and we need
18 to do this lawsuit if the legislature doesn't address
19 the issue. We need to file this lawsuit so we can
20 get a declaration from the court and get a final say
21 about whether we have the right to freely associate
22 and choose our own candidate to put on the general
23 election ballot.
24       That was a heavy topic of discussion in
25 January of `08 as to why we should support the

1c00d8c3-6611-4e7e-a991-613d874d857f

1 resolution to, in that case, potentially file the
2 lawsuit, which of course ended up happening.
3     Q. I take it at the 2008 convention this
4 summer, there were delegates who both voted and spoke
5 out against pursuing this effort; correct?
6     A. Well, I guess it depends on what you're
7 talking about. With regard to the state party
8 platform, the state party platform makes it very
9 clear that we're in favor of having, open, unquote,
10 "a closed primary" only allowing Republicans to
11 participate in our candidate selection process.
12     That's part of the platform that was adopted
13 in `06. It was re-adopted in `08. My recollection
14 is that that was a unanimous vote on the convention
15 floor for the platform.
16     So in that, it's very clear that the State
17 Convention supported the platform position that calls
18 for a closed primary.
19     Q. It was a close vote, though, on the issue
20 of -- and you obviously know this better than I do,
21 because I was there. The vote was something like 200
22 to 192 or something relative to going forward. Was
23 that a vote on the lawsuit or what was that vote?
24     A. My understanding is that that was a vote
25 amongst the delegates at the convention as the

1 chairman, Kirk Sullivan at the time, announced it in
2 an advisory vote that the State Central Committee
3 could take under advisement, with regard to any
4 potential future rule changes.
5     Rule changes can only be adopted by the
6 State Central Committee. So the convention vote, at
7 least what was announced right afterwards by
8 Kirk Sullivan, was this is an advisory vote that the
9 State Central Committee can take under advisement.
10 It in no way changes the rule that's on the books.
11 Or certainly doesn't change the platform that was
12 adopted by the convention delegates.
13     Yes, there was a lengthy discussion at the
14 convention and a vote in the neighborhood of 209 to
15 202, something like that, in favor of, quote, unquote
16 "the open primary" position as an advisory vote.
17     Q. What were some of the arguments that were
18 advanced by those in favor of maintaining the open
19 primary system?
20     A. First of all, I can say that I was in the
21 process of preparing for the afternoon chairman
22 election. I wasn't seated on the floor. One of the
23 alternates from Ada County -- I was a delegate for
24 Ada County. One of the alternates for Ada County was
25 seated in my spot. I wasn't on the floor for the

1 debate and vote.
2     I was in the guest area most of the time. A
3 lot of the discussion had to do with PR and what will
4 Republicans look like if they don't allow the whole
5 world to participate in their primary? Will we look
6 like we are trying to close things off to other
7 people?
8     And a lot of their response was, A, it's our
9 right to have a candidate selection process that only
10 Republicans, or those willing to identify themselves
11 as Republicans participate in.
12     And, B, we don't necessarily care what the
13 rest of the world thinks about what we look like in
14 terms of our candidate selection process. You need
15 to differentiate that from the general election where
16 the candidate we select is put on the general
17 election ballot and then competes head to head
18 against the Democratic candidate and any independent
19 that is on the general election ballot. There was
20 that back and forth.
21     And you asked me specifically about on the
22 open side, so I'm thinking about other arguments that
23 I heard. But it was primary perception and what we
24 look like as a party with the report back that we're
25 not talking about the general election, we're not

1 talking about excluding people from voting in the
2 general election. We're talking about defining our
3 candidate selection process under our rules.
4     Q. Can you recall any of the other arguments by
5 those in favor of maintaining the open primary
6 system?
7     A. You know, I can't. Nobody raised any
8 questions during the platform adoption process. And
9 I'm not recalling a specific argument in favor of
10 changing the rule.
11     Q. I meant specifically at the 209/202 vote, or
12 whatever that was, just as a point of reference. If
13 you don't, that's fine?
14     A. I don't.
15     Q. Just to go back a step, you mentioned
16 various hearings, discussions, committee meetings,
17 discussions. Are there any records of those
18 discussions -- either minutes, transcripts,
19 resolutions or -- I take it there are resolutions
20 and votes. But are there any minutes or a record
21 that would reflect some of the substance of those
22 debates, discussions and so on?
23     A. If we have minutes of our committee
24 meetings, we'll make them available. I'm not
25 personally familiar with committee meeting minutes.

1 I'm fairly sure that our Central Committee meetings
2 have minutes. And we can provide in response -- I'm
3 sure you requested those or the defendant has.
4     I'm not personally familiar with whether we
5 have minutes on all of the committee meetings or not.
6     Q. You mentioned during your questioning by
7 Mr. Gilmore a study -- and I didn't get the exact
8 name. Gerber & Morton. The Gerber & Morton study.
9 Do you recall that?
10     A. I know the name of it, and that's it. We'll
11 be producing the study.
12     Q. Okay. Then you mentioned some
13 correspondence with the attorney general. Can you
14 tell us a little bit more about that?
15     A. Yeah. I can't remember exactly that date,
16 but Representative Moyle basically asked the Attorney
17 General's Office whether the current statutory scheme
18 for elections in Idaho is inconsistent with or
19 unconstitutional in view of the closed primary rule
20 that had been adopted in the summer of `07.
21     Remember we've had a legislative session
22 since the `07 State Central Committee where the rule
23 was adopted. The response back from the Attorney
24 General's Office, I think Mitch Toryanski was the
25 author, was that it does appear to be an

1 unconstitutional violation of the right of
2 association. I can identify that letter by date and
3 author, if you'd like.
4     Q. Or you can produce it?
5     A. We'll certainly produce it, yes. The Gerber
6 & Morton study is the name of the study, and we'll
7 produce that.
8     Q. Let's take a look at paragraph 21 of the
9 complaint. And right at the bottom of page seven
10 there's Article IX. And Article IX is the closed --
11 well, the closed primary rule has an Article IX;
12 correct? Is that what that is saying?
13     A. Article IX of our rules and section four of
14 that Article IX.
15     Q. So section four of Article IX, which is
16 reflected on page eight says that, only persons who
17 have registered as a Republican prior to the primary
18 election will be allowed to vote on an Idaho
19 Republican Party ballot in that primary election;
20 correct?
21     A. Yes.
22     Q. And then in paragraph 51(a) of the
23 complaint, you state that you're entitled to
24 permanent injunctive relief, preventing the Secretary
25 of State from conducting any primary election after

1 2008 without affording the party the right to party
2 registration.
3     It is the case, isn't it, that since you are
4 seeking to compel the State of Idaho to abide by
5 Republican Party rules, at least with regard to
6 Republican Party nominations, that you are seeking
7 party registration; is that correct.
8     A. Yes. In the broadest, most generic sense of
9 that term. I can't tell you what party registration
10 means or how that will be implemented. Along the
11 lines discussed with Mr. Gilmore this morning, the
12 manner in which that will be done and what will be
13 deemed, quote, unquote, "registration." There's been
14 no determination by our party as to how that should
15 be implemented.
16     Yes, in terms of the wording in our rule, it
17 says those who have registered as Republican prior to
18 the primary election. So the manner in which that
19 would be done and what would constitute registration
20 are certainly open questions.
21     Q. At this point there is no party registration
22 in the State of Idaho; is there?
23     A. My understanding is there's no registration
24 in Idaho.
25     Q. When you talk about people voting in your

1 primary that aren't Republicans, what do you mean by
2 that?
3     A. Well, certainly someone who attends a
4 Democrat caucus and swears an oath of allegiance to
5 the Democrat party in order to participate in that
6 caucus and then two months later shows up and votes
7 in a Republican primary, would not be a Republican.
8     Someone who proclaims to be an independent,
9 and makes a point of being an independent, certainly
10 would not be a Republican.
11     Q. Do people in Idaho go around proclaiming
12 themselves as this or that? Some people do, I guess,
13 who are activists. But the other ordinary folks in
14 Idaho that go to work and raise their kids, are they
15 proclaiming themselves as this or that?
16     A. You might want to spend a little more time
17 in Idaho, because actually a lot of people do do
18 that. And a lot of people are proud to be
19 independent in Idaho. I do hear that and see that a
20 lot. And I see it in the senate race with
21 Rex Rammell, and I've seen it in other races. And I
22 hear other people preface their comments by saying
23 I'm an independent.
24     Yes, it is fairly common in Idaho to have
25 independents, and I think the polling would bear that

1c00d8c3-6611-4e7e-a991-613d874d857f

1 out too.
2    Q. Do you have any evidence of people who voted
3 in the most recent Republican primary, which I take
4 it would be 2008, who were people who had proclaimed
5 themselves to be independents?
6    A. I'm not personally familiar with anyone who
7 identified as not being a Republican who voted in the
8 primary. I didn't stand in line and watch people
9 vote. And if I did, I wouldn't necessarily know what
10 their party affiliation is.
11       Again it's similar to the discussion this
12 morning. Unless I have a list of names of who voted
13 in the primary and what their party registration or
14 affiliation is or isn't, I don't have the facts in
15 front of me to be able to answer that question.
16    Q. Now, you told Mr. Gilmore that you
17 can't think of any Republican nominees in 2008 who
18 were nominated in the Republican primary who don't
19 reflect the interests, ideology and beliefs of the
20 Republican party; is that correct?
21    A. I'm not sure that was the exact wording.
22 The question I remember responding to -- and maybe we
23 can go back and read it, can we do that? Read
24 Mr. Gilmore's question back. It wasn't the same
25 question.

1    Q. Let's try to get more specific. If
2 Mr. Gilmore asked you the same question with regard
3 to the 2006 primary, would your answer have been the
4 same?
5    A. Yes.
6    Q. 2004?
7    A. It would have been the same for any primary.
8    Q. Okay, thank you.
9    A. Under the current system. I don't know what
10 was going on before the current system. We used to
11 have a convention process.
12    Q. Okay. Now you talked a lot about the
13 party's right or the Republican's right to freely
14 associate. Is there anything in Idaho that prevents
15 Republicans from freely associating?
16    A. Yeah. The primary election laws in the
17 State of Idaho. We show up to select our candidate,
18 and others who are not Republicans are allowed in the
19 room with us to select that candidate. And that
20 truly and sincerely infringes on our right.
21       Now does it have a difference to the
22 outcome? I don't know. I think it has in certain
23 cases, but I can't prove it.
24       I can tell you that maybe not having a jury
25 trial doesn't result in any different outcome at the

1 end of the day either. But you have a right to have
2 a jury trial. You have a right to associate with
3 the First Amendment as a Republican Party. And we
4 are denied that because the state laws in Idaho allow
5 non-Republicans, allow anybody, to come in and
6 participate in our candidate selection process.
7       The state laws don't require or allow people
8 to walk into the Democratic caucus and do anything
9 other than swear an oath of allegiance to participate
10 in the caucus to select their presidential candidate.
11       Yes, that state law on elections definitely
12 infringes on our right, our freedom of association
13 under the First Amendment.
14    Q. There's nothing that is preventing the
15 Republicans, the people who proclaim themselves to be
16 Republicans, from getting together and holding a
17 convention; is there?
18    A. We get together a lot.
19    Q. And no one is saying you can't do that;
20 right?
21    A. No. We can have a convention. In fact the
22 state law recognizes our convention process, I
23 believe. No, that's a different issue than the
24 primary election process.
25    Q. You're talking about freely associating.

1 You're being very specific relative to the manner in
2 which candidate are selected at a primary; correct?
3    A. Yes. I believe our allegations in our
4 complaint are specific to the primary election laws
5 in the State of Idaho and don't call out any other
6 laws or processes besides the primary election.
7    Q. Or other violations of your freedom to
8 associate; correct?
9    A. Not that I can recall. We're concerned that
10 we have the right to select our own candidate to
11 place on the general election ballot.
12    Q. Could the Republican Party, under current
13 Idaho law, opt out of the primary system altogether?
14 Forget the presidential. But for state offices,
15 legislative governor and so on?
16    A. I guess I'm not familiar enough with the
17 state law to know whether or not we can do that. I
18 do know, from anecdotal information, that we used to
19 have a -- Republicans used to have a nominating
20 convention. And we either had to receive so many
21 votes during the primary process to be eligible to be
22 nominated or vice versa. You had to be nominated in
23 order to be on the ballot in the primary. One or the
24 other.
25       We certainly had different systems in the

1c00d8c3-6611-4e7e-a991-613d874d857f

1   past.  And I don't know, as a legal matter, if we're
2   allowed to depart from the primary process or not.  I
3   don't know that as a legal question.
4         Q.  I take it that there's nothing in Idaho law,
5   or in the world, that would prevent the Republican
6   Party from having a caucus or convention and saying,
7   yes, we have an open primary; yes, there are criteria
8   from being on the ballot, but this is the candidate
9   that Republicans favor in the State of Idaho.  Is
10  there anything that would prevent the party from
11  doing that?
12        A.  I'm not aware of anything that would prevent
13  that.  I don't know if it's legal or not.  I can tell
14  you that Democrats have a presidential caucus
15  process, and I don't know the relationship between
16  that and the primary.
17        I believe when I voted in the primary, there
18  were still Democratic candidates on that ballot as
19  well.  I don't understand the relationship there.
20        But if the Democrats caucus for president,
21  I'm assuming we can do the same thing for president.
22  But I don't know the laws well enough to know, can we
23  put a note on the ballot saying this is our preferred
24  candidate?  I don't know.
25        Q.  We agree there's a difference between a note

1   on the ballot and simply announcing a press
2   conference, those kinds of things; yes?
3         A.  By who?
4         Q.  I don't mean to be argumentative.  A note on
5   the ballot presumably would be something that would
6   be required or you'd have to be allowed to do under
7   Idaho law.  That's one way of expressing a
8   preference.
9         Another way would simply be to have a caucus
10  in a particular county or a convention and publicly
11  announce, yes, there might be ten candidates on the
12  ballot, but that is the preferred candidate as far as
13  the Republican caucus of Ada County is concerned.
14  There's nothing preventing you from doing that; is
15  there?
16        A.  I wasn't meaning to be argumentative.
17        Q.  I was.  I was apologizing.
18        A.  I guess I'm still asking for clarification.
19  Who is doing that?  Are you saying that State Central
20  Committee is doing that or --
21        Q.  I should be specific.  Let's say there's a
22  race for county legislator or for a member of a state
23  legislature from a particular county.  Obviously
24  under the open primary system, anyone who qualifies
25  for a place on the ballot could be on that ballot,

1   and anybody can vote for them.
2         Isn't it the case that the Republican
3   organization in Ada County could meet and say this is
4   our preferred candidate, this is the candidate that
5   we feel is true to the Republican values, and we are
6   endorsing that candidate and urging people to vote
7   for him or her?
8         A.  Thank you for the clarification.  My
9   understanding of our state party rules is that a
10  County Central Committee and I believe a Legislative
11  Central County can vote to endorse a candidate in the
12  primary.  It's a specific process for doing that in
13  our state party rules.
14        How that manifests itself, I'm not sure.
15  That's my recollection of the rules, that that can
16  occur.  Which is, of course, a completely separate
17  question from who is allowed to participate in our
18  candidate selection process at the primary.
19        Q.  The State of Idaho has never attempted to
20  curb that right; has it?
21        A.  The right to --
22        Q.  To endorse and to announce and so on?
23        A.  Not that I'm aware of.
24        Q.  This might be my ignorance of Idaho law and
25  the process.  New York is a closed primary state.

1   That's where I'm from.
2         In Idaho, anybody can vote in the primary.
3   Is there any restriction on who can declare
4   themselves to be a candidate for a party nomination
5   and petition for that nomination?
6         A.  You're testing my knowledge of the election
7   law here.  From personal experience, you pick up a
8   ballot -- not a ballot.  A petition or form.  I can't
9   remember what it's called.  And you have to fill out
10  what you're running as, a Republican or Democrat or
11  independent is my recollection.  Then you either get
12  the required number of signatures or pay a filing
13  fee, or you can do both I guess.
14        And that identifies whether you're going to
15  go on the ballot as a Republican or Democrat or
16  something else in the primary selection process.
17        Q.  There's no screening as to who is allowed to
18  pick up which petition or what they write on the
19  bottom?
20        A.  No.  Just as we don't screen who can say
21  they're Republican and come in and vote in our
22  primary.  If we have our closed primary, if you meet
23  the criteria, whatever they end up looking like, and
24  want to be in our party and vote in our election, we
25  like the idea of having as many people as possible in

1c00d8c3-6611-4e7e-a991-613d874d857f

1 the Republican Party.
2  We want to know that when people walk in
3 there and vote, that they actually are part of the
4 Republican Party and not there to thwart the process
5 or try to undermine who we're selecting or to violate
6 our right to associate just with Republicans.
7  Just because John and I are both Republicans
8 doesn't mean we like each other, that we agree on
9 everything.  But I know that I'm associating with a
10 fellow Republican in that primary selection process.
11 That's different than associating with and being
12 forced to associate with somebody who is not a
13 Republican.
14  Q. So you envision a registration process in
15 which anyone can decide to register as a Republican?
16  A. I don't know what the process will end up
17 looking like.  I can tell you if you meet the
18 criteria, whether -- whatever registration is defined
19 as, then you're going to be entitled to vote in the
20 Republican primary.
21  Q. I think you're think of an objective
22 criteria?
23  A. I don't have any criteria in mind at all.  I
24 don't know what that will end up looking like.  Right
25 now we are asking for the court to declare that we

1 have the right to associate and that that right
2 includes selecting our Republican candidate for the
3 general election through the primary process in a way
4 that doesn't require us to include those that aren't
5 willing to register as a Republican.
6  So I don't know how you define registration.
7 I don't know what steps that will include or if it
8 will include many steps at all.  Once that threshold
9 is met and you register as a Republican in whatever
10 manner is established or you're agreed to, then
11 you're entitled to vote in the Republican primary.
12 It's open to anybody who is willing to do that.
13  Q. That's what I was getting at.  So in your
14 mind, the qualification, in addition to old enough to
15 vote, citizen, and so on, would be the desire to
16 register as a Republican?
17  A. I don't know what all the criteria would be.
18 I don't like to speculate on hypothetical.  I can
19 tell you, the one example to look at -- and I'm not
20 saying we would adopt this model.  But my
21 understanding of the Democrat caucus in Idaho for
22 president, is that you have to swear some kind of
23 allegiance or loyalty oath to the Democrat party.
24  Would we do that before we require somebody
25 to register as a Republican for the primary?  I don't

1 know.  That's an example of something that has been
2 done in a hurdle of whatever effect it has, that
3 people have to clear -- if I'm correct on that
4 process -- to participate in the closed Democrat
5 caucus in Idaho.
6  I don't know what our criteria will end up
7 being.  That was the point of the discussion this
8 morning.  We aren't asking for anything specific
9 other than we have to have some manner to determine
10 that these folks are registered as Republicans.  I
11 don't know what it will look like, and I have no
12 predisposed notion of what it should look like.
13  Q. So we're talking about a state's action
14 primary.  Idaho has state's action primaries now.  I
15 take it the lawsuit is about what should be the
16 nature of the state's action primary; correct?
17  A. That's really broad.  The lawsuit, I guess,
18 speaks for itself.  We're asking for declaratory
19 relief.  That the general election laws, the primary
20 election laws in Idaho, are inconsistent with our
21 rule and therefore violate the freedom of association
22 under the First Amendment and ask for injunctive
23 relief that no Idaho primary elections be held by the
24 Secretary of State inconsistent with the rule.  That
25 leaves a lot of room for interpretation and

1 implementation.
2  Q. Would the same concerns that gave rise to
3 the lawsuit -- people who don't share Republican
4 ideology, don't have the interest of the Republican
5 Party at heart, candidates changing their message --
6 would those same concerns still exist if you have
7 partisan registration but you had no litmus test for
8 who would register as a Republican?
9  A. Yes, but to a lesser degree.  I don't think
10 that anybody in the Republican Party would purport
11 that registration, as a Republican primary to the
12 primary election, is a perfect solution to ensuring
13 that everyone that votes adheres to any particular
14 percentage of the Republican platform, for example.
15  But it certainly ratchets it up when folks
16 have to step up and say, I'm registering as a
17 Republican.  I'm identifying myself as a Republican,
18 not a Democrat or independent.  And voting in this
19 primary.
20  If the party chooses as part of its
21 registration process to do what the Democrats do on
22 the presidential side in Idaho and have a loyalty
23 oath, I suppose these can do that.  I don't know.  I
24 don't know that the Republicans would go that far, if
25 you consider that a litmus test, to swear a loyalty

1 oath as the Democrats do.
2     Q. I don't want to get in the middle of the two
3 parties here.
4        I think Mr. Gilmore asked this. But to
5 close the loop on this: That section four on page
6 eight of the complaint talks about, who have
7 registered as a Republican prior to the primary
8 election.
9        Does prior mean one day? Five minutes? Six
10 months? Do you have any position on that?
11     A. I don't know. It hasn't been defined, and
12 we're not asking the court, I don't think, to
13 interpret what that means either. Implementation
14 will have to occur after our constitutional rights
15 are upheld.
16     Q. Do you think that it's right for a federal
17 court to tell the State of Idaho how to conduct its
18 primary election?
19        MR. SUTTON: That's a legal conclusion.
20     Q. (BY MR. KRESKY) Well, politically -- or I
21 can frame the question a little more. Just to
22 respond to what Mr. Sutton said, there's a question
23 of whether or not the federal court has a right to do
24 that. And there's been a lot of litigation on that.
25        There are areas such as race discrimination

1 where that right has been clearly established. But
2 as a citizen of the State of Idaho, do you feel
3 comfortable with a federal court telling the State of
4 Idaho how to conduct its primary election for state
5 office?
6        MR. SUTTON: Do you want me to answer that
7 for you?
8        WITNESS: I can answer what I'm willing to
9 answer. I think what is appropriate to ask the court
10 for, and what we have asked the court for, is a
11 determination of whether the primary election laws in
12 Idaho, which require the Republican primary to allow
13 anybody to participate, whether that violates our
14 constitutional right under the First Amendment to
15 association.
16        I think that's a fair thing to ask the
17 federal or district court to determine and enforce
18 through declaratory and injunctive relief, a
19 constitutional right.
20        If the state law is inconsistent with or
21 unconstitutional, inconsistent with the Constitution,
22 that's, in my view, personally my opinion, an
23 appropriate role for the federal district court.
24     Q. (BY MR. KRESKY) Okay. Delegates to the
25 convention, the Republican convention, are chosen by

1 the county organizations; correct?
2     A. State convention or --
3     Q. Yeah, let's take the State Convention.
4     A. They are selected, my best understanding of
5 our rules, by the precinct committee people who are
6 selected during the primary. The primary election
7 was in May. They have to convene within 10 or 11
8 days and select who they want to be the delegates and
9 alternates.
10        Each County Central Committee does that and
11 each Legislative District Central Committee does
12 that. You've got delegates coming from each county
13 and from each legislative district.
14     Q. The precinct people that you referred to,
15 they're elected at a primary; correct?
16     A. They are on a ballot in the primary. If
17 there's no one in that spot, then the respective
18 Central Committee can fill that position.
19     Q. Who votes in the primary to select these
20 precinct people?
21     A. Right now it's whoever shows up and grabs a
22 Republican primary ballot and chooses to check that
23 box, I suppose. I don't watch people vote. I
24 suppose they could vote for the presidential
25 candidate John McCain or Ron Paul and not vote in any

1 other race. But basically it's open to anyone, right
2 now, under the Idaho election law that chooses to
3 vote at a precinct committee race.
4     Q. It's the case now that the people who
5 adopted the Republican Party platform were people who
6 were selected by bodies of people who were chosen by
7 precinct people who were elected in open primary;
8 correct?
9     A. Yes. And 99.9 percent of those are totally
10 uncontested. Especially on the Democrat side, you
11 don't even have anybody running. Yes. They're not
12 contested in most cases.
13        Yeah, as a strict interpretation matter,
14 it's a wide open primary. So everyone who wants to
15 vote in the Republican primary has the opportunity to
16 check the box for the precinct person or to write
17 someone else in. Or in the rare case where there's a
18 contested race, to pick one of those two.
19     Q. Is it fair to say that the very platform
20 that you're referencing as the standard for true
21 Republicanism was itself derived from an election
22 that wasn't over the primary?
23     A. No. The delegates are the ones that vote on
24 the platform, not the precinct committee people.
25     Q. The precinct committee people elect the

1c00d8c3-6611-4e7e-a991-613d874d857f

1  county people who elect the delegates?
2      A. I answered the question. The precinct
3  committee people and the delegates aren't the same
4  people. They aren't chosen through the same process.
5      Q. But the building block of the Republican
6  structure are these precinct people who are elected
7  in open primary; correct?
8      A. The folks that select the delegates to the
9  convention are the precinct people in each or the
10  respective counties and legislative districts.
11      Q. Those people were elected in an open
12  primary; correct?
13      A. Yes.
14      Q. So is it fair to say that the Republican
15  platform, which I take it we've agreed this morning,
16  the reference point for a true Republicanism, is
17  itself the result of an election process in which any
18  citizen of the State of Idaho could vote?
19      A. No. The delegates are selected by the
20  precinct committee people. The delegates are not
21  selected by -- frankly, I don't know where this is
22  going. As a strict interpretation matter, the
23  delegates or the ones voting on the platform, not the
24  folks that voted for the folks that selected the
25  delegates.

1      Q. But the ones voting on the people who select
2  the delegates are any citizen of the state of the
3  Idaho; correct?
4      A. The ones that vote for the precinct
5  committee people, it's an open process, yes. But not
6  for the delegates. Not just anybody can nominate
7  somebody to be a delegate or an alternate at the
8  reorganization meetings and the counties and
9  legislative districts.
10      Q. We won't quibble about ultimate causes and
11  sources at this point.
12      Now, do you make a distinction, in your
13  view, or does the Republican Party make a
14  distinction, relative to the concerns that gave rise
15  to this litigation and rules that we've been talking
16  about, between participation by independents in your
17  primaries and participation by Democrats or members
18  of other parties?
19      A. No. The concern, as I understand it, is
20  that as Republicans we ought to have the opportunity
21  to associate with other Republicans and to select our
22  candidate through our candidate selection process.
23      And who else would be participating in that
24  process, who is not a Republican, I don't think is
25  the issue. I think it's the fact that we have a rule

1  that allows us to associate. And the state primary
2  election law frustrates the ability to do that.
3      I don't think that -- the rule certainly
4  doesn't, and the platform position doesn't
5  differentiate between types of non-Republicans.
6      Q. Okay. Now, we've --
7      A. I have a personal opinion about independents
8  versus Democrats, but I don't think that helps.
9      Q. We've probably answered this. Let me ask:
10  In a nonpartisan registration state like Idaho, what
11  is the basis for claiming that non-Republicans voted
12  in the your primary?
13      A. Boy, it's anecdotal. Just sheer numbers
14  when you compare the percentage of people who claim
15  to be a Republican in a particular area through
16  polling versus the number that actually vote in the
17  primary.
18      The Boise Weekly article I mentioned made
19  fun of being able to cross over and vote in the
20  Republican primary. I think it was in `06. In that
21  case it was a congressional race that Bill Sali won.
22  And I think the joke was about crossing over and
23  voting for a different candidate and how if Democrats
24  had an opportunity to do that, why wouldn't they do
25  that.

1      Again, I don't have a list that says --
2  maybe that's part of the problem -- that says this
3  person is a Democrat, this person is an independent,
4  this person is Constitution, this person is
5  Libertarian, this person is Republican. I don't have
6  a list that shows that these are the people that
7  voted in the primary and here is their party
8  affiliation. So I can't answer beyond what I already
9  said.
10      Q. Does the Republican Party have members in
11  Idaho?
12      A. The Idaho Republican Party has, in a sense
13  those, that choose to pay sustaining dues. But
14  that's not obviously the same as registering as a
15  Republican for purposes of voting in a primary
16  election.
17      Q. If I move to Idaho in the current state of
18  affairs and say, I want to be a member of the
19  Republican Party. I don't want to be a delegate or
20  go to meetings, but I want to be a member of the
21  Republican Party. what do I have to do in order to
22  do that?
23      A. Well, I would sure ask you to pay some dues,
24  sustaining dues, or make a contribution to the party.
25  But as far as being a registered Republican, there is

Page 94

1  no such process that I'm aware of in Idaho right now.
2  I personally have made phone calls to people
3  asking about their party affiliation, and they'll say
4  I've been a registered Republican all of my life.
5  And are you a lifelong Idahoan? Yes.
6  Well, you don't want to argue with them
7  because they are Republican. They believe they're
8  Republican. They haven't formally registered,
9  because there's no such process. I'm guessing if I
10  went to my database I would find they made a
11  contribution to the party. In their eyes that makes
12  them a member or registered under their definition of
13  the term as a Republican.
14  We don't have a formal process. As an
15  unincorporated association, we have folks that pay
16  dues. I would consider those people to be members of
17  the Idaho Republican Party, which is different then
18  being registered as a Republican for a primary
19  election.
20  Q. Because we don't have that yet?
21  A. Yes.
22  Q. As the complaint alleges, the Republican
23  Party is a private association; correct?
24  A. Yes. And we do have a formal membership
25  through the State Central Committee and Executive

Page 95

1  Committee and all the different committees.
2  Q. The activists?
3  A. I would consider that different. Somebody
4  who is involved with the state party might consider
5  that to be the members of the Republican party. I
6  don't. I think that's the members of the State
7  Central Committee and the different committees.
8  We do have people who pay sustaining dues,
9  and it's one mechanism that we have to do
10  fundraising. Whether all of those people consider
11  themselves to be Republicans or not, they contribute
12  to the Republican Party.
13  Q. You'll take money from anybody, but you
14  don't want just anybody participating in your
15  primaries?
16  A. I didn't say that.
17  Q. Just to go back to this member issue. I
18  take it the Republican Party has a set of rules and a
19  constitution and those kinds of things; correct?
20  A. We have a set of rules.
21  Q. Is there anything in the Republican Party
22  rules in the State of Idaho that says what it means
23  to be a member of the Republican Party?
24  A. I believe the platform spells out what
25  Republicans believe in. But I don't think it sets

Page 96

1  forth criteria that you need to sign a blood oath or
2  do anything in particular in terms of mechanics to be
3  a Republican. I believe the platform spells out
4  clearly what Republicans believe. That's basically
5  the way the document is phrased. As Republicans we
6  believe the following. There's 26 planks to the
7  platform.
8  The rules, I can look them over, but I don't
9  believe they define what a Republican Party member
10  is. They define what a member of the Idaho
11  Republican Party State Central Committee is, and
12  that's of course the governing organization of the
13  Idaho Republican Party.
14  In my professional life, it's no different
15  than the Idaho Water Users Association having a board
16  of directors that constitutes the governing body.
17  That doesn't mean that all the farmers in Southern
18  Idaho that are using water aren't water users, but
19  they're not formally members of the board of
20  directors of the Idaho Water Users Association.
21  It's a similar type of dynamic. There are a
22  lot of people that are Republicans that claim to be
23  Republicans, pay dues, make contributions to the
24  Republican Party or their candidates, but they're not
25  a formal part of the Idaho Republican State Central

Page 97

1  committee or any other governing body of the party.
2  They have no mechanism to register their
3  Republicanism, as it were, for purposes of party
4  affiliation or for voting in primaries or anything
5  else.
6  Q. There's a Bar Association in Idaho; correct?
7  A. Integrated Bar Association. Mandatory.
8  Q. And are there private -- like there's a Bar
9  Association in New York that isn't mandatory but --
10  the New York State Travel Lawyers Association, for
11  example, or the association of the Bar of the State
12  of New York. Is there anything like that in Idaho?
13  A. We have voluntary associations. Even within
14  the Idaho State Bar Association there are sections
15  that are not mandatory. The American Bar Association
16  is mandatory.
17  Q. But there is a criteria for membership;
18  right?
19  A. I don't know. Pay money? I don't know
20  about that, because I still get their magazines, and
21  I haven't paid dues for over ten years.
22  Q. The Republican Party, as a private
23  association could adopt a criteria that says this is
24  what you have to do to be a member of the Republican
25  Party; correct?

25  (Pages 94 to 97)

(208) 345-9611    M & M COURT REPORTING SERVICE, INC.    (208) 345-8800 (fax)

1    A. I guess so. We've never had, to my
2  recollection, that discussion. And I don't know what
3  that would mean, that you're a member of the Idaho
4  Republican Party. Because I focus on the rules, and
5  the rules talk about -- maybe we would have criteria
6  for who could be on the State Central Committee.
7  But, yeah, I guess that we could try to do that.
8    Q. Like the Elks or the Rotary Club or other
9  private associations; correct? They have members?
10    A. You know, our rules really don't have a
11  category of member or membership. We could, I guess,
12  attempt to do that, but we don't have that. I'm not
13  aware that we've had any discussions or proposals to
14  do any of that.
15    Q. Would you agree that in recent years in the
16  State of Idaho the number of people who proclaim
17  themselves or who poll as independents, that number
18  is going up?
19    A. I don't know. I know it's a sizable chunk
20  of the electorate in Idaho and nationwide. I don't
21  know if it's going up or down, though.
22    Q. Do you think that there's a relationship
23  between -- well, does the effort by the Idaho
24  Republican Party to implement some form of partisan
25  registration or the concerns that give rise to the

1  lawsuit, in your mind, do you think there's a
2  relationship between that and the increasing number
3  of people and the number of people who now declare
4  themselves as independent?
5    A. First of all, I haven't agreed with your
6  supposition, which is that independents are
7  increasing. This close to the general election, I
8  think the independents are decreasing as they firm up
9  their ideas for the general election.
10    I have no idea. All I can tell you is the
11  Republican Party adopted a rule, and the rule is an
12  attempt to allow the Republicans to select their own
13  candidate under their constitutional right to freedom
14  of association.
15    We're not looking to offend or make anybody
16  angry. We welcome people into the Republican Party
17  and would be happy to have them participate in our
18  candidate selection process. We're just asking to
19  have the rights, as the Elks or the Rotary, to have
20  their own meeting with their own people without other
21  people being forced into the meeting. That's all
22  we're asking for.
23    Q. You have to put the Elks and Rotary Club in
24  the State of Idaho -- to ask everyone to declare
25  themselves as an Elk or Rotoarian --

1    A. No. And apparently there's no state law
2  that that's been found to be a violation of Rotary or
3  Elk's constitutional rights of freedom of
4  association. That's what we've got in this case.
5  That's why we brought the lawsuit.
6    Q. Why do you think Idaho has an open primary
7  law?
8    A. I have no idea. I can't go back that far.
9  I don't know when it was adopted, and just don't
10  know.
11    Q. Why do you think Idaho has a nonpartisan
12  registration?
13    A. No idea. I honestly don't know why they
14  have a nonpartisan registration.
15    Q. Do you think that -- some people say that
16  nonpartisan registration promotes less partisan
17  governance, less partisan gridlock, more modern
18  candidates, candidates that are less driven by a
19  partisan agenda. Do you think those are legitimate
20  calls for a state to pursue?
21    A. I don't know the answer to that question.
22  We're not talking about a general election here.
23  We're talking about a candidate selection process and
24  the Republicans having a right, as the Democrats
25  should have a right or anyone else, to select their

1  own candidate to put on the general election ballot.
2  Of course, every registered voter is entitled to vote
3  in that general election.
4    But as to reasons why you would have -- you
5  would choose not to have a partisan registration
6  process, I can't speculate what those reasons would
7  be. I'm not privy to any discussion or debate that's
8  been had about that by the legislature or any other
9  body. I don't know when those laws were adopted or
10  implemented or last debated. But when they were
11  implemented and adopted, I have no idea.
12    I don't tell you what is a good reason or
13  bad reason. The legislature gets to decide those
14  things, I guess, up to the point where they violate
15  our constitutional rights, as they're doing now with
16  our rule having been adopted.
17    Q. The complaint talks about a desire to have
18  Republican candidates who are true to Republican
19  principles, Republican platform, Republican ideology
20  and so on; correct?
21    A. They're a specific part of the --
22    Q. Let's be specific.
23    A. Maybe paragraph 23?
24    Q. Yeah. The purpose is to select the
25  candidate who most closely represents the views,

1c00d8c3-6611-4e7e-a991-613d874d857f

1 ideals and interests of the Republican Party. That's
2 what the Republican Party seeks in its primary
3 elections; correct?
4     A. Paragraph 23 speaks for itself. But, yeah,
5 that's part of the purpose in conducting the
6 primaries, to get those that most accurately or
7 closely reflect the values or ideals of the
8 Republican Party.
9     Q. Where are those values and ideals and
10 interests found?
11     A. In a lot of different places. Obviously our
12 platform is part of that. Positions that are taken
13 by various candidates can be reflective of that. Our
14 national Republican platform is indicative of a lot
15 of the views of the Republican Party.
16         The whole point of that paragraph, and the
17 others that follow, is that by having our own
18 candidate selection process -- while it's not
19 perfect, unless you have really rigorous criteria.
20 The litmus test type thing that you suggested
21 before -- it's not going to be perfect.
22         But by saying only those people who are
23 willing to identify themselves as Republicans,
24 "registered," quote, unquote, are able to participate
25 in a process. We have a higher level of confidence

1 that that person is going to be more reflective of
2 that than a process where Democrats are free to walk
3 in the door.
4         Now, I don't know who will register and who
5 won't register when this is implemented. Maybe there
6 are independents that will be comfortable doing it
7 for a particular election. And maybe they'll stay
8 involved in the Republican party. I don't know.
9         I'm fairly sure that dyed in the wool
10 Democrats, not all of them are going to be
11 comfortable stepping up and saying, okay, I'm a
12 Republican. Give me a Republican ballot. That's
13 enough of a hurdle that we feel like it would improve
14 the process and make it more likely that person who
15 does identify with Republican values, because those
16 that are voting, by in large, are Republicans.
17     Q. But at this point there are people who step
18 into the voting place and say I want a Republican
19 ballot; correct? In Idaho.
20     A. Who is doing that?
21     Q. The voters. They come to the primary and
22 say, I want to vote -- they either vote -- how does
23 it work? You come to vote and you select the ballot
24 of the party you want to vote in?
25     A. You mean non-Republicans --

1     Q. In the open primary system. If I come to
2 the polling place and I want to vote in the
3 Republican primary, what do I do?
4     A. It may have changed. My recollection is --
5 and the state may be the better one to answer this.
6 My recollection is there's one ballot book, so to
7 speak, for that precinct. And you choose to vote for
8 the Democrat or Republican inside that book, either
9 the red sheets or blue sheets, whatever color they
10 are. Then everyone, regardless of which one, and
11 you can't crossover from red to blue.
12         Regardless of whether you voted in the
13 Republican or Democrat primary, you're allowed to
14 vote in the white pages which are the nonpartisan
15 races such as the judicial races. That's my
16 recollection from the last time that I voted in
17 person. I've done some absentee voting. I think it
18 was the same, but I don't remember for sure.
19         Anybody -- Republican, Democrat,
20 independent, Constitutional, Libertarian -- walk in
21 there and vote in the primary either Republican or
22 Democrat. Or neither. Just the judicial races or
23 just one on the Republican or Democrat. Whatever
24 they want to do.
25     Q. You are making a choice at the point at

1 which you vote as to whether you want, as you said,
2 to vote the red or blue ballot; correct? For
3 Republican or Democrat?
4     A. Or you made the choice before you got there.
5 Yeah, you get to choose which one you want to. I
6 suppose somebody could peruse the thing and decide
7 the Democrats don't have many interesting races this
8 year. I think I'll vote in the Republican Party
9 election.
10         In fact on the anecdotal side, we had
11 Robert Novak speak at our Ada County Republican
12 Lincoln Day dinner this past February or March,
13 whatever it was. And he made it very plain that he
14 has voted in Democrat primaries, because there's no
15 action going on in DC on the Republican side.
16         So I suppose you could make the choice at
17 the time when you look at the ballot rather than
18 right when you get there or two days before. It's
19 kind of open, whatever you want to do.
20     Q. That's what I'm asking. What difference
21 does it make whether a voter makes that choice at the
22 point at which they vote or whether they make it a
23 week or month before?
24     A. It's not so much when they make it. It's
25 what determination are they making? Are they showing

1c00d8c3-6611-4e7e-a991-613d874d857f

1  up to vote in the primary and then perusing and
2  deciding what to do? Or are they showing up as a
3  registered Republican or to register as a Republican
4  or a Democrat and then voting pursuant to that
5  registration?
6       It makes a big difference. Because the
7  person who shows up and registers to be a Republican
8  is the only one entitled to vote, pursuant to the
9  rule and our right of association, in that Republican
10  primary.
11       The same thing for the Democrats if they
12  choose to implement this. As with their caucus for
13  president, then only those people are entitled to
14  vote. And you don't allow folks who aren't
15  affiliated or aren't willing to make that affiliation
16  to step in and be part of that voting process for the
17  candidate selection but then lends itself to a name
18  borne on the ballot for the general election.
19    Q. To use your words, if the action was in the
20  Republican primary this year in Ada County, and you
21  had partisan registration and you could register
22  seven days prior to the primary, how would that be
23  different than the action being in the Republican
24  primary and you can go to the polling place and
25  decide which place you want to vote in? What is the

1  difference?
2    A. The Idaho Republican Party has a right to
3  associate and to choose its own candidate. They've
4  decided that the best way to do that is to have some
5  form of registration before the primary.
6       I can sit here and hypothesize all day why
7  they think that would be better. I believe that dyed
8  in the wool Democrats or people that are just anti
9  Republican will choose not to register as a
10  Republican. And that will change things from the way
11  they are without registration.
12       So that's just one example based on my own
13  opinion. But for whatever reason, the Republican --
14  which frankly is not even relevant to me. The
15  Republican Party adopted a rule, the governing body
16  of the party adopted the rule, and says we will have
17  registration or we will only allow people who are
18  registered Republicans to vote, however you want to
19  define registration.
20       And for the state to have a law that doesn't
21  allow that to occur is in contravention to our
22  constitutional right of association.
23       We've decided that that, as a party, is the
24  best way to get to where we want to go. And we have
25  a right to do that under the Constitution. It's not

1  relevant how much it changes the end result. It's a
2  constitutional right, and we need to be allowed to
3  exercise it regardless of what or how much of an
4  impact it has on the end result.
5       I can make a lot of arguments about not
6  being able to exercise constitutional rights because
7  the end outcome would not be any different. But that
8  doesn't eliminate the constitutional right and the
9  ability to exercise it.
10    Q. Under this rule, the one on page seven to
11  eight of the complaint, the one we've been referring
12  to, it would still be the case that it would be
13  voters who would be choosing the Republican
14  candidate; correct?
15    A. Only persons who have registered as a
16  Republican prior to the primary election would be
17  allowed to vote on an Idaho Republican Party ballot
18  in the primary election. That's what the rule says.
19    Q. Under such a rule, it would be the voters
20  who would be determining who the Republican candidate
21  is, the voters who vote under this bill; correct?
22    A. Those that have satisfied this criteria and
23  whatever the other voting laws are to participate in
24  the primaries, that's the mechanism. This
25  contemplates that there will continue to be a

1  primary. So, yes. People show up and vote in
2  primaries.
3    Q. So then the Republican Party of Idaho has
4  decided that the best mechanism for selecting who are
5  the candidates who best represent the values,
6  interests and ideology of the Republican Party is to
7  allow voters to decide that; correct?
8    A. No. What we decided is that those who have
9  registered as Republicans prior to the vote are the
10  best able to determine who the Republican candidate
11  should be. Just as Democrats have determined that
12  folks who participate in a caucus, show up for a
13  caucus, take their evening and do that and swear an
14  oath of allegiance to the Democratic party are the
15  best ones to select their presidential candidate. Or
16  at least the votes at their national convention for
17  president.
18    Q. Let's forget about the Democrats for a
19  minute. The Republicans of the State of Idaho have
20  decided that the best way to determine who are the
21  candidates who are best able to carry the banner of
22  the Republican Party forward and express its
23  interests, ideology and sentiments and its platform
24  are those who were chosen by voters in a primary;
25  correct?

1c00d8c3-6611-4e7e-a991-613d874d857f

1     A. I guess I'm answering the same question.
2  No. We decided, as a party, that it's appropriate to
3  have folks identify themselves as Republican through
4  registration, however that is defined. That those
5  are the folks that are best able to select, would
6  give us the best candidate to place on the ballot.
7          That's the candidate selection process that
8  under other right of association we've chosen to
9  adopt. And we feel, and what we're asking the court
10  to rule, is that the statute in Idaho that doesn't
11  allow that to occur or is inconsistent with that, is
12  unconstitutional. Because it violates our right of
13  association.
14         So it's not the voters, it's those who have
15  registered as Republican prior to the primary
16  election. Those are the ones that should be allowed
17  to vote in the Idaho Republican Party candidate
18  selection process. The general election is a
19  different deal.
20     Q. Those would be the people who would
21  determine who are the truest and best Republican
22  candidates; right?
23     A. I don't know about truest and best. But are
24  most appropriate to select the Republican candidate
25  to go on the general election ballot.

1     Q. Who would be voters who meet this criterion;
2  correct?
3     A. Those that are registered as Republican
4  would be the ones allowed to vote in the primary,
5  yes.
6     Q. Then it would be the voters who would
7  determine which candidates best represent the
8  principles and interests of the Republican Party.
9  Granted, there's a pool the voters?
10     A. Voters who are registered as Republican
11  prior to the primary election.
12     Q. Okay. Do you favor some mechanism for
13  reviewing the results of such a primary and
14  determining whether, in fact, the voters did select
15  the best candidate, the candidate who is best able to
16  represent the interests and ideology of the
17  Republican party?
18     A. You're using the best and whatever language
19  I didn't agree with, so --
20     Q. Let's use the language of paragraph 23. I
21  take it that the Republican Party believes that its
22  voters who meet this criteria, that that's the best
23  mechanism for selecting the candidate who most
24  closely represents the views, ideals and interests of
25  the members of the Republican Party; correct?

1     A. I'm going to read paragraph 23. It says,
2  "The purpose of conducting the Idaho Republican
3  Primary election is to select the candidate who most
4  closely represents the views, ideals and interests of
5  members of the Republican Party as opposed to members
6  of the Democratic Party or other voters."
7          Your question, if you're still asking it,
8  was whether we would favor reviewing the process
9  afterwards to make sure that that actually happened?
10     Q. Right. That the candidate selected by the
11  voters was that candidate.
12     A. I'm not aware that the party, State Central
13  Committee, has ever had that discussion. And I'm
14  quite sure we have no rule or resolution or platform
15  position that discusses that.
16         So I have no idea whether that's something
17  folks would be interested in or not. I can tell you
18  it's not part of our current rule or platform. It's
19  not in any of the resolutions that I'm familiar with.
20     Q. All right.
21     A. It's the process that we're after here.
22     Q. Under this rule that you're seeking to
23  impose on the State of Idaho, the candidate who best
24  represents or most closely represents the views,
25  ideals and interests of members of the Republican

1  Party would be the candidate selected by the voters
2  who were allowed to participate in the primary; is
3  that correct?
4     A. Just to be clear --
5     Q. I think you can answer my question.
6     A. Your question had a lead-in. To be clear
7  with the beginning of your question, we're not
8  seeking to impose anything on the State of Idaho.
9          We are seeking to implement and enforce our
10  constitutional right of association which has been
11  manifest in a rule that allows us to select our
12  candidate through a, quote, unquote, "closed primary
13  process."
14         We're not seeking to impose anything on the
15  state. To the contrary we're trying to stop the
16  state from imposing a law on the party and its
17  members that is inconsistent with the Constitution.
18  That's what we're trying to do.
19     Q. I'll reframe the question. So I take it
20  that if this rule were implemented by whatever means,
21  that at that point in time the candidate who most
22  closely represents the views, ideals and interests of
23  the members of the Republican Party would be the
24  candidate chosen by voters who voted pursuant to that
25  rule; correct?

1c00d8c3-6611-4e7e-a991-613d874d857f

1    A. If I understand your question, I think my
2 answer is still the rule is probably not perfect.
3 But in the view of the party, it's going to improve
4 the likelihood that that person most closely
5 represents the views, ideals and interests of the
6 members of the Republican Party.
7        If I understand your question, yes. Once
8 this constitutional right is affirmed and the right
9 to implement this rule is made clear and it is
10 implemented in whatever form it is, we're confident
11 that that will improve the likelihood that the
12 candidates will most closely represent the views,
13 ideals and interests of the party and fundamentally
14 will allow us to exercise our constitutional right to
15 associate as Republicans and choose our own candidate
16 to put on the general election ballot that then
17 everyone in the State of Idaho has an opportunity --
18 registered voters have an opportunity to vote for
19 Republican, Democrat, independent, whatever they want
20 to do.
21        But we have the right to select our own
22 candidate, and we think there's a process that allows
23 us to choose our candidate who most closely
24 represents those views, yes.
25    Q. And in a democracy, it's voters who make

1 those decisions, correct, not party officials?
2    A. Which decisions?
3    Q. As to what should be on the ballot as a
4 nominee of the party?
5    A. That's the fundamental question in this
6 case. Who does get to decide who the Republican
7 candidate is? We're saying under our right of
8 freedom of association, the manner to do that is that
9 those voters who have registered as Republican prior
10 to the primary election are the ones who are able to
11 select that candidate to go on the ballot for the
12 general election.
13    Q. And if there were four candidates on the
14 ballot in such a primary and candidate A won, then it
15 would be candidate A who most closely represented the
16 views, ideals and interests of members of the
17 Republican Party; correct?
18    A. You're saying in a Republican primary
19 there's four candidates that whoever wins necessarily
20 most closely reflects -- I can't say that that's
21 necessarily the case.
22        I can say that the purpose of the primary is
23 to select the candidate who most closely represents.
24 Whether that is always happening or not, I don't
25 know. That's the whole reason why -- a big part of

1 the reason why this rule has been brought forward.
2 We're not at all confident that we are selecting, as
3 a group of Republicans with everyone else in the room
4 with us, the candidate who most closely represents
5 the views of the party.
6        It's the purpose of the election, but we're
7 not sure that it's being satisfied. We think that
8 purpose would more accurately be met, closely be met,
9 if we had folks identifying themselves as Republicans
10 before being eligible to vote in that candidate
11 selection process.
12    Q. If that were to come about, if you win, and
13 you had a primary under this rule, would you agree
14 that the winner of that primary would be the
15 candidate who most closely represents the views,
16 ideals and interests of members of the Republican
17 Party?
18    A. I can't say it with one hundred percent
19 certainty. I think I've already that it wouldn't be
20 perfect. The view of the party, the State Central
21 Committee having adopted this, is that it will more
22 likely result in a candidate with a higher degree of
23 comfort, certainty, amongst of the members of the
24 party, who again are the ones who are associating to
25 make this decision, who most closely represents the

1 views, ideals and interests of the member of the
2 Republican Party.
3    Q. Would there be any way of making that
4 determination other than the outcome of such a
5 primary? How else would you do it?
6    A. You're saying conduct one primary with
7 everyone voting --
8    Q. I think I'm being clear. In a primary
9 conducted under this rule --
10    A. Under the new rule, okay.
11    Q. Yeah. How else could  -- how else could
12 the  -- how else could a decision be made as to
13 whether or not  -- as to which of the four candidates
14 on the ballot, or five or six or two, most closely
15 represent the views, ideals and interests of members
16 of the Republican Party other than the person who won
17 the primary? What other mechanism could there be?
18    A. Well, you'd have to have a completely
19 different candidate selection process besides a
20 primary vote, I suppose. I don't know. A nominating
21 convention would be one possibility that we've had --
22 I understand we've had in the past where all the
23 folks that are eligible to be delegates at the
24 convention as Republicans select who they would like
25 to see be the candidate. I suppose that's -- some

1 might argue that that more closely represents the
2 views and ideals than people voting. A smaller group
3 of people.
4     I don't know the criteria for that versus
5 the criteria for registering as a Republican, whether
6 that's better or not. That's something that could be
7 debated in the future.
8     At this point in time, the party has decided
9 that the best way to do this, and their absolute
10 right of association allows them to choose this as
11 the manner by which they select their candidate.
12 They don't want to select the Democrat's candidate,
13 they don't want to go to the Democrat caucuses. They
14 want to select their own candidate to be on the
15 general election ballot.
16     That's all the rule is asking for, is to
17 have that opportunity. And that the state law that
18 infringes on that be found to infringe on that. And
19 no more primary elections be held that are
20 inconsistent with that rule, that right of
21 association under the Constitution.
22     Q. If a primary were conducted pursuant to this
23 rule and there were three candidates, A, B and C, and
24 candidate A won. And then after the primary,
25 Joe Smith from Twin Falls stood up and said,

1 candidate B better represents the views, ideals and
2 interests of members of the Republican Party and here
3 is why, wouldn't your answer be, but the voters have
4 chosen candidate A, and therefore that's the
5 candidate that best represents the views, interests
6 and ideals of the members of the Republican Party?
7 Isn't that the answer?
8     A. No. Even with this hypothetical, I'll do my
9 best. My response to the guy from Twin Falls would
10 be, that's his First Amendment right of freedom of
11 speech, to express whatever opinion he has. He
12 thinks that that person best represents the views of
13 the Republican Party as he sees them or as he
14 interprets them or the ones that are most important
15 to him.
16     But under the rule, we have adopted the
17 mechanism that we think best results in the candidate
18 who most closely represents the views, ideals and
19 interests of members of the Republican Party through
20 party registration.
21     Maybe there's a better way to do it. Who
22 knows what the details of party registration would
23 look like, how you would treat all the different
24 folks that want to be involved. I don't know that.
25 I can't prejudge that. We'd have a discussion about

1 that, but we haven't been able to do that until we
2 get a decision from the court apparently.
3     Yes, the voters who are registered
4 Republicans have spoken in this case under this rule
5 and that is the decision. As now under the current
6 system, everyone gets to vote, and that's the way the
7 decision is made.
8     Q. Would you agree that the difference between
9 the current system and the system that, under this
10 rule, would be simply when a person decides which
11 primary they want to vote in, wouldn't that be the
12 only other difference?
13     A. It's fundamentally different. Until the
14 rule is adopted, there maybe was no concern. But now
15 that the rule has been adopted, we have called for a
16 process where Republicans step forward, are
17 registered, and have the opportunity to vote in the
18 primary. And they select the candidate that goes on
19 the general election ballot.
20     Under the current system, there is no such
21 limitation. And all that is going on is our rule and
22 the ability to have that implemented as our
23 expression of our freedom of association has been
24 violated by the state law.
25     I guess before we adopted our rule, it's

1 arguable where there was any kind of infringement
2 going on. But now there obviously is, because our
3 rule is adopted pursuant to a constitutional right.
4 We have a right as an unincorporated association to
5 affiliate and to select our own candidate, just like
6 the Democrats do for president.
7     That's fundamentally different now because
8 of that relationship between the constitutional right
9 and the system that we've adopted. That's
10 fundamentally different than what we currently have
11 in place where anyone can vote.
12     Q. Okay. But let's say you won and we went
13 through the remedy thing and blah, blah, blah and we
14 ended up with a system where you had partisan
15 registration, or what you call prior registration,
16 and the prior registration was such that in order to
17 vote in the Republican primary, you had to register
18 Republican seven days prior to the election; okay.
19     Would there be any other test of eligibility
20 other than going to the Board of Election and signing
21 a form that says I want to register Republican?
22     A. I honestly have no idea. I don't even know
23 if the seven day pre-registration requirement would
24 be there. I have no idea.
25     We didn't suggest exactly how it should be

1c00d8c3-6611-4e7e-a991-613d874d857f

1  done.  We're just asking that the right to do it be
2  affirmed, and then we'll get to decide how it's done.
3      Q.  What is the difference between a system in
4  which -- let me ask you this question:  From the
5  vantage point of paragraph 23 of the complaint,
6  that's our frame of reference, what is the difference
7  between a system where seven days prior to the
8  election I can say I want to register Republican and
9  a system where I go to the polling place and I decide
10  to vote the Republican ballot?  What difference does
11  that make?
12     A.  A huge difference.  In the latter category
13  you're continuing to allow non-Republicans to show up
14  and vote for Republican candidates.  In the former,
15  with the seven day registration or whatever
16  registration we end up having, there's a much higher
17  probability that the folks walking in the room who
18  have said I'm Republican are actually Republican.
19     You have to read more than just 23.  24,
20  permitting non-Republicans to select the Republican
21  candidates weakens, dilutes, et cetera.  Of course
22  the other huge difference is in paragraph 25, one
23  violates our right of association under the
24  Constitution and one doesn't.
25     The latter category where people can just

1  walk in, whoever wants to, violates our right of
2  association and violates our rule.
3      The former category we may or may not end up
4  with the seven day registration.  But the former rule
5  says we are going to follow the rule, we are going to
6  value this right of association under the
7  Constitution and let Republicans choose the
8  Republican candidate.
9      Is the system perfect?  I doubt it.  I don't
10  know what it's going to end up looking like, but it's
11  going to be a lot better than what we have now and
12  it's going to value -- not value, but be consistent
13  with the constitutional proviso that we have the
14  right of freedom of association.  The latter doesn't
15  do that.  There's a huge difference.
16     Q.  Under the parts and registration system,
17  doesn't, quote, "being a Republican" simply mean
18  checking a box on a form that in effect tells you
19  which primary you can vote in?
20     A.  I don't know what the registration process
21  will look like.  That's not something we have asked
22  the court to dictate, what the registration process
23  would look like.  What even constitutes registration.
24     Those are details left for after we get a
25  declaration that the current Idaho statues are

1  unconstitutional and injunctive relief that future
2  primary elections must not be held inconsistent with
3  the rule.  Those are details that get dealt with
4  later.
5      Q.  Is there anything in this rule that suggests
6  any criteria promoting a new Republican primary other
7  than checking a box that says I want to register
8  Republican?  Does this suggest any other
9  qualification?
10     A.  Besides --
11     Q.  Besides checking a box on a registration
12  form?
13     A.  Where does it say check a box?
14     Q.  Okay.  Does this rule suggest any other
15  criteria for voting in a Republican primary other
16  than registering as a Republican?
17     A.  No.  Those who have registered as a
18  Republican prior to the primary election is what I
19  see in here as what will allow you to vote in the
20  Idaho Republican Party.  You get to define what
21  registration is and what prior to means.  Those are
22  huge questions to be answered.
23     Q.  Is there any criteria for registering as a
24  Republican that you're seeking, whether this rule
25  contemplates, other than the desire to register to

1  vote?
2      A.  The complaint speaks for itself.  We're
3  asking for declaratory relief and we're asking for
4  injunctive relief.  What we've asked for is what
5  we've asked for.  We're not asking for anything
6  beyond that.
7      But there is going to be a phase, as I
8  understand it, once our constitutional right is
9  upheld, where you have to decide how to implement the
10  rule.  This is only three lines long.
11     Q.  Do either you, or any other of the
12  proponents of this rule, seek to seek any
13  qualification for registering Republican and thereby
14  being allowed to vote in the primary other than
15  expressing a desire to register Republican and vote
16  in the primary?
17     A.  I've not seen any proposed rule or
18  resolution or platform position or other position for
19  the party to consider adopting that has anything
20  beyond the language is that in here or that is in our
21  existing resolution or existing platform position.  I
22  would be completely speculating.
23     Q.  Now once a candidate is chosen under this
24  rule and is on the general election ballot listed
25  Republican, is there any mechanism for between the

1c00d8c3-6611-4e7e-a991-613d874d857f

1 point in which they're elected in the primary and the
2 point in the general election for determining whether
3 or not they still meet the criteria of paragraph 23?
4     A. The criteria of paragraph 23 is that the
5 primary election has been held.
6     Q. Right. But 23 talks about most closely
7 represents the views, ideals and interests of members
8 of the Republican Party.
9        You have the primary under this rule and
10 Joe Smith is elected, then you have a general
11 election in which Joe Smith appears on the ballot as
12 the Republican candidate. Is there any mechanism or
13 is there any way between the primary and the general
14 election to determine whether or not Joe Smith still
15 continues to or does represent the views, ideals and
16 interests of members of the Republican Party other
17 than the fact that he won the primary?
18     A. You mean under the state party rules?
19     Q. Would there be anyway to make that
20 determination?
21     A. I'm not aware that there's any process
22 beyond the primary election. That is the process by
23 which we select our nominee. Again, pursuant to the
24 rule, those who are registered Republicans get the
25 opportunity, under the right of freedom of

1 association, to make that choice.
2        Once that decision is made, that is purpose
3 of conducting the primary, to select the candidate
4 who most closely represents. Once that's done,
5 that's the candidate. That's why it's so important
6 that we conduct that process in the way that we think
7 best reflects the associational rights that the
8 Republicans have amongst one another.
9     Q. Let's follow Joe Smith's career. Then he's
10 elected to office and now he's in the Idaho State
11 Legislature; correct? Assuming he's running for
12 that.
13     At that point, is it Joe Smith's
14 responsibility to represent the views, ideals and
15 interests of the members of the Republican Party, or
16 does he have some other responsibility as well once
17 he's elected?
18     A. I'm not going to opine on what the
19 legislator's responsibilities are. We'll talk about
20 what his responsibilities are to the party and to the
21 candidate selection process.
22     Under Idaho law, every seat in the house and
23 senate is open every two years. So there will be
24 another primary election process in two years. The
25 candidate who most closely represents the views,

1 ideals and interests of the members of the Republican
2 party should be the one that emerges from that
3 primary process, if that's the purpose of the
4 process. And we've adopted and enforced a rule that
5 allows registered Republicans to vote.
6        So he'll stand for election in two years.
7 The job of conducting someone as a state legislator
8 is completely separate from the party rules or the
9 candidate selection process. That's why we have
10 election laws and they're totally separate from the
11 laws that govern how legislators conduct themselves.
12 One is an election, and one is holding a public
13 office after you take the oath of office.
14     I guess I'm losing the premise of the
15 question. The next link would be that next primary
16 where we're back into the election process and
17 Joe Smith is standing for election again.
18     Q. You would agree there's a difference between
19 Joe Smith's responsibilities as a legislator and his
20 needing to most closely represent the views, ideals
21 and interests of the members of the Republican Party?
22     A. As Republicans, we would hope he would honor
23 those views, ideals and interests as a Republican and
24 look to party positions for guidance. But at the end
25 of the day, he's a state legislator and he's going to

1 exercise his rights as he understands it to follow
2 the Constitution of the State of Idaho, the United
3 States and all the other things that are in his oath
4 of office.
5        Whether that is consistent with the views,
6 ideals and interests of the Republican Party is going
7 to be in the eyes of the beholder, I guess. For any
8 individual Republican, somebody may think that was
9 consistent, they may not think it was consistent.
10 And their remedy, if you will, is the next primary
11 election, if he has a contested race. Or if he
12 doesn't have a contested race, you can skip that race
13 or vote the box below it and write somebody in. That
14 would be the remedy, I guess.
15     Q. Ultimately, whether or not he acted in that
16 way would be determined in the next primary?
17     A. Well, in the next primary, the registered
18 Republican would have a right to vote in that
19 primary, whether it was contested or not. So he gets
20 to vote.
21     Q. And that's how Idaho Republicans would weigh
22 in on whether or not he best represented -- whether
23 he effectively represented the views, ideals and
24 interests of members of the Idaho Republican Party
25 would be a primary election; correct?

1c00d8c3-6611-4e7e-a991-613d874d857f

1    A. Not the individual. The whole process of
2  going through the primary. The purpose of conducting
3  the primary is to select the candidate. It's not one
4  individual person. I may or may not like a certain
5  person and I go and vote, and my one vote doesn't
6  make that decision.
7    Q. We're still talking about Joe Smith. The
8  retrospective on how Joe Smith performed, at least
9  with regard to representing the views, interests and
10  ideals of the Republican Party, would occur in the
11  primary election subsequent to his first election;
12  correct?
13    A. Yes. That's only the candidate selection
14  process. It's not the general election. Two years
15  later Republicans, as a group, may decide that
16  Joe Smith is not the best guy to be on the ballot
17  anymore. That's not a radical proposition. We've
18  seen people lose in primaries before.
19    Whether it's more likely or less likely
20  under this scenario, I have no idea. It's still the
21  notion that the Republicans get to choose their
22  candidate and put that candidate on the ballot for
23  everyone to vote on in the November election.
24    MR. GILMORE: Can we interrupt for a second
25  and discuss our timing?

1    MR. KRESKY: I probably have another half
2  hour. I can finish before lunch if people can hang
3  in there.
4    MR. GILMORE: That's all I wanted to find
5  out.
6    Q. (BY MR. KRESKY) Paragraph 19 of the
7  complaint identifies -- the resolution contained in
8  paragraph 19 at the top of page seven states that the
9  Republican party is a private political party and not
10  an agent for the State of Idaho; correct?
11    A. Yes.
12    Q. When the Republican Party conducts a
13  state-sanctioned primary to select candidates who
14  will appear on the general election ballot, is it
15  acting as a state agent for the State of Idaho when
16  it does that?
17    A. No. They're acting as a party, an
18  organization, a group of individuals, who has chosen
19  to affiliate together as Republicans to choose their
20  candidates to put on the ballot for the general
21  election. I don't see them acting as an agent of the
22  state. I see them as a private organization that is
23  selecting their candidate from their political party
24  to put onto the ballot.
25    Q. So they're not carrying out an official

1  function in --
2    A. The Republican Party, you mean?
3    Q. Yes, in conducting its primary election?
4    A. I don't see how the Republican Party is
5  acting as an agent of the state. I've never seen any
6  of our organic documents, rules or regulations or
7  anything that recognizes us -- or any state laws, for
8  that matter -- that recognize us as an agent of the
9  State of Idaho. That would be news to me.
10    Q. Isn't it carrying out a function delegated
11  to it by the State of Idaho to nominate and elect
12  candidates to appear on the primary ballot?
13    A. I don't believe that the nomination of a
14  candidate by a political party is a state function.
15  It's a function of the political party. I don't
16  think that when the Republicans selected John McCain
17  and Sarah Palin in Minneapolis this year that they
18  were operating as an agent or that that opportunity
19  had been delegated to them by the federal government.
20    Q. Is a nomination and selection of candidates
21  putting aside -- the process by which candidates are
22  selected to appear on the general election ballot and
23  to be elected to serve in public office, is that a
24  public function or private function? Public activity
25  or private activity?

1    A. I don't know if it's private or public. I
2  know there are state laws that regulate primary
3  elections. Those are the laws we believe, at least
4  as applied to our resolution, are unconstitutional.
5    The function of selecting a candidate to put
6  on a ballot from a political party should be, in our
7  view, through the registration mechanism, is the
8  opportunity, the right of the political party. Not
9  to be confused with the general election which
10  obviously is something that is being done for all of
11  the citizens of the State of Idaho. All the
12  candidates are on the ballot.
13    All we're trying to do is preserve our right
14  and better define through this rule our ability to
15  select who our candidate should be to put onto the
16  ballot. There's two different processes, at least
17  the way I see it. And certainly what our rule
18  contemplates is there's a candidate selection process
19  and then there's a general election.
20    Q. Does the State of Idaho and its citizens
21  have an interest in how primary elections are
22  conducted?
23    A. Repeat that.
24    Q. Does the State of Idaho and its citizens
25  have an interest in how primary elections are

1c00d8c3-6611-4e7e-a991-613d874d857f

1 conducted?
2 A. I would think so. I would think that the
3 legislature and citizens in the State of Idaho would
4 want to make sure that if a political party has
5 chosen a manner in which they want to select a
6 candidate, that they ought to be able to implement
7 that procedure.
8 If there's a law that prevents them from
9 doing that or that is in violation of their right to
10 do that, I would say the state, the legislature in
11 particular, the citizens, have an interest in seeing
12 that individual -- that associational right upheld
13 versus the unconstitutional state law. So there's
14 definitely an interest there.
15 Q. Suppose the Republican Party decided that --
16 and this happened in the south, the Democratic
17 party -- that only white people could participate in
18 a Republican primary or Democratic primary. Wouldn't
19 the state have an interest or the citizens as a whole
20 have an interest in doing something about that?
21 A. Can you restate that? I was shocked by the
22 question.
23 Q. This really did happen during the 1930s and
24 `40s. The Democratic party in Mississippi and Texas,
25 probably other states as well, passed a rule that

1 said that we are a private political association, and
2 only white people can participate in our primary.
3 People went to court, and it was held that
4 the primary wasn't just a private function that, in
5 fact, it was a process by which elected officials
6 would be selected. And there was a legitimate state
7 interest in telling the Democrats that they couldn't
8 do that.
9 MR. SUTTON: I think that case law ruled
10 that it was constitutionally impermissible for those
11 states to be able to have that criteria. In this
12 case, the reverse is such that we're asking for a
13 constitutionally permissible right of association.
14 That's what we're asking the court to grant to us.
15 MR. KRESKY: But the genesis of it was the
16 party's decision to close their primaries, not the
17 state's decision. The parties defended it on the
18 basis that they were a private association and had
19 the right --
20 MR. SUTTON: There's nothing
21 constitutionally abhorrent about what we're asking
22 for in terms of a closed primary.
23 MR. KRESKY: We'll save that for the court.
24 Q. (BY MR. KRESKY) If the Republican Party
25 adopted a rule that said that in order to register

1 Republican you had to be the son or daughter of a
2 person who had registered Republican, would the State
3 of Idaho have a legitimate interest in questioning
4 that decision?
5 A. Obviously the state has a role in this thing
6 or we wouldn't be challenging their primary election
7 laws. I can't imagine a scenario under which the
8 state Republican Party would attempt to institute
9 such a criteria. It's not in our rules or
10 resolutions, our platforms. It's not been suggested;
11 it's not been discussed. It's a complete
12 hypothetical, and I don't see how we would ever go
13 there.
14 I don't see how asking for that to be
15 instituted is some kind of constitutional right as
16 opposed to our right to allow Republicans to vote as
17 an association of Republicans.
18 So I guess the state has an interest,
19 because they have the statutes that are in place that
20 govern the primaries. But your scenario is different
21 than the scenario we've got here where we believe
22 that the statute is unconstitutional as it purports
23 to deny us the ability to implement a party
24 registration, mechanism or a closed primary.
25 But this idea that we're going to have a

1 litmus test based on race or familial relations or
2 property owners or income or any of that is so
3 abhorrent and frankly not even imaginable as
4 something the Republican Party would do. I don't
5 know how to speculate if that happened and what would
6 occur. I can't entertain that scenario as something
7 that is in the realm of possibility.
8 Again, we're only asking for the right to be
9 recognized. How it gets implemented and the details
10 are for later. That's not within the scope of this
11 lawsuit and the relief that we're requesting. So
12 you're asking me to speculate on things that we are
13 not in any reasonably imagined scenario asking for.
14 Q. I take it as Americans we share the belief
15 that anyone who wants to register into a political
16 party should have the right to do that regardless of
17 why they want to do it and who they are?
18 A. I've already said, the more people that want
19 to come in and be part of the Republican Party, we
20 welcome them. We like to have people in our party.
21 If they feel like after voting for our candidates and
22 supporting them in the general election, listening to
23 the discussions about our party platforms and all the
24 positions that we have, that they're still
25 comfortable registering as a Republican, who am I to

1c00d8c3-6611-4e7e-a991-613d874d857f

1  say they shouldn't be able to do that?
2      Q. Paragraph 23 says that the purpose of the
3  primary is to select the candidates who most closely
4  represent the ideals, views and interests of members
5  of the Republican Party. What is the basis for
6  that -- let me withdraw that.
7      Does that preclude -- is that inconsistent
8  with the purpose of the primary being to select the
9  best candidate for that office?
10     A. No. Because this candidate selection
11 process is the process by which we as Republicans get
12 to choose our candidates. The Democrats choose their
13 candidates, the independents put the name on the
14 ballot, the Constitution party picks their candidate,
15 the Libertarian party selects their candidate, the
16 Green Party selects their candidate. They all go on
17 the general election ballot. And then at the general
18 election, everyone gets to vote and everybody gets to
19 decide who they think would make the best state
20 representative or the best congressman.
21     This process of the primary is the candidate
22 selection process for our organization to be able to
23 select, under its constitutional right of
24 association, the candidate it would like to have to
25 go on the ballot in the general election.

1      Q. Can you see the situation where the
2  candidate in the primary election who best represents
3  the views, ideals and interest of the Republican
4  Party might not be the most qualified candidate for
5  that office?
6      A. No. I have to look at the folks that are on
7  the ballot now that have been on the ballot in the
8  past. They're likely to be on the ballot in the
9  future.
10     The Republicans, at least -- I'm not as
11 familiar with folks from other parties. But they're
12 qualified to hold that office. And if they've been
13 through our candidate selection process, we obviously
14 think they are qualified and a good candidate and
15 we'd be happy to have them serve in office.
16     They've gone through that candidate
17 selection process. In this case, the primary, and in
18 the past some other process, I suppose. We're happy
19 with that candidate and confident of his or her
20 abilities to fulfill their duties. If the rest of
21 the populous doesn't agree with us, I guess they
22 won't vote for them at the general election.
23     Q. What if you had two candidate in the
24 Republican party, one of who -- I hate to use that
25 word in the context of the 2008 presidential

1  election. Let's say two candidates for attorney
2  general, one of whom was a very experienced attorney
3  and one had just graduated from law school. And one
4  candidate agreed with every plank of the Republican
5  platform, the one just graduated from law school, and
6  the other one agreed with 75 percent. Which
7  candidate, in that case, would best represent the
8  views, ideals and interests of the Republican Party?
9      A. Whichever one the majority of the registered
10 Republicans voting in the primary election decide
11 should be selected as the candidate. That's the
12 purpose of the election, to allow all of those
13 registered Republicans who choose to show up and vote
14 that day to select the candidate who they feel is the
15 best.
16     I may or may not personally agree with the
17 decision of the party as a whole. But I'm
18 comfortable with the fact that we, as a Republican
19 Party, got to decide who that candidate for the
20 ballot was.
21     Q. Okay. Paragraph 31 you talk about voters
22 who are openly antagonistic to the ideology and
23 principles of the Idaho Republican Party. Would that
24 category include independents?
25     A. You know, again, it doesn't differentiate in

1  paragraph 31 between any category of non-Republicans.
2  It only talks about those who do not share the
3  political beliefs and ideology and principles of that
4  of the Republican Party.
5      Whether they were independent or Democrat or
6  Green Party or Libertarian or Constitution party is
7  irrelevant. It's the fact that as members of a
8  Republican Party, an organization, you have the right
9  constitutionally to associate.
10     We're being forced to associate with those
11 who are not Republicans, is what is the problem, not
12 any particular class of non-Republican.
13     Q. Now if the rule set forth in paragraph 21,
14 particularly section four, were adopted, what
15 mechanism would that necessarily prevent a person who
16 is openly antagonistic to the ideology and goals of
17 the Republican Party from registering Republican and
18 voting in the primary?
19     A. That person's own conscience and
20 self-restraint and values and ethics. It's up to
21 that individual whether they want to register as a
22 Republican.
23     Again, I don't know what all the criteria
24 would be, but it's a determination by, I think, the
25 Republican State Central Committee. That by

1 requiring people to register, you are more likely to
2 have people who are actually Republicans registering
3 and less likely to have those who are antagonistic to
4 the ideology and principles of the party registering.
5 We have an absolute constitutional right to
6 make that decision. What the end result is and
7 whether or not it has that ultimate impact or how
8 much of an impact it has is not as important as the
9 fact that we have that right of association. And
10 this is the way we're choosing to implement it.
11 We think by having registration prior to the
12 primary election as Republicans that we will have
13 less non-Republicans and less people that are openly
14 antagonistic to the ideology and principles of the
15 party voting.
16 Frankly from my perspective, if an
17 independent steps up and says, I want to register
18 Republican because in this particular election I feel
19 like the Republicans have it right and they're
20 comfortable with that, that's not someone who is
21 antagonistic. More importantly, you're less likely
22 to have people who are antagonistic.
23 Somebody who feels like Republicans have it
24 way wrong, there's no way I'm going to vote for
25 Republicans, I want to vote for Democrats in this

1 primary, you're less likely to have that going on.
2 Q. Isn't that the case that that goal of
3 preventing these openly antagonistic people from
4 participating in the primary, couldn't that goal be
5 better accomplished by having a voter have to sign a
6 pledge at the poling place before they vote in the
7 open primary saying I am not opening antagonistic to
8 the ideology and goals of the Idaho Republican Party?
9 Wouldn't that be a better way of accomplishing that
10 objective than having a registration system that
11 didn't require such a pledge?
12 A. I don't know which would work better. I can
13 tell you that the purpose of describing the
14 antagonistic towards the ideology and principles of
15 the Republican Party is to reinforce the notion that
16 the state, through its open primary laws, is forcing
17 that to occur in violation of our rule and our right
18 of association.
19 That's the purpose of that paragraph, is to
20 illustrate how the statute and the rule and
21 constitutional right are inconsistent with one
22 another.
23 So it isn't that the purpose of the primary
24 election has to be necessarily to weed out those who
25 are antagonistic. It's to select the candidate that

1 most closely represents the views, ideals and
2 interests of the Republican Party.
3 You may still have a few people who really
4 hate Republicans showing up and somehow registering
5 to be Republican. Again, I don't know what the
6 criteria would be.
7 But on balance, you're way less likely to
8 have that than you are with a wide open primary
9 system. That's the judgment that the party made.
10 That's why they adopted the rule, and that's why
11 they're asking to be able to implement it in some
12 form after the court recognizes the right.
13 Q. Would the signing of such a pledge, that I
14 just mentioned, be an effective mechanism for the
15 party to exercise its right to limit participation in
16 the primary?
17 A. I don't know. I really don't. I've not
18 heard of a pledge that says that you're not
19 antagonistic to a particular party. So I don't know
20 if that would be effective.
21 I really doubt that it would be anywhere
22 nearly as effective as having someone saying, yes,
23 I'm a Republican. I'd like to register as a
24 Republican so I can vote in the Republican primary.
25 Q. Would the interest of the Republican Party

1 and its freedom of association be met if the State of
2 Idaho said, we want to keep the open primary system,
3 but we're going to implement a law that says before
4 you can vote, pick that Republican ballot, you have
5 to sign such a pledge? Would that violate -- would
6 the freedom of association of the Republican Party
7 still be violated?
8 A. I think unless the rule that's been adopted
9 is the one that is implemented, that our right of
10 association would be violated. What you're
11 describing is not, in my view, consistent with
12 section four of Article IX, the party rule.
13 So I don't think the state gets to come back
14 and say, or anyone else here, this is what you want.
15 But really this would work better. Unless the State
16 Central Committee consents to that, some kind of
17 settlement or whatever, and changes their rule, this
18 is the system that has been adopted through our
19 process, through our rule as the candidate selection
20 process that protects our right of association under
21 the Constitution. I don't think that would work.
22 I think you would have to have something
23 that fits within the words, who have registered as a
24 Republican prior to the primary election. I don't
25 know how that will be defined. I don't think anybody

1 will know that until after the court upholds the
2 right.
3     Q. Is it the position of the Republican Party
4 that the issue is whether or not the Republican
5 Party, or the State of Idaho, determines what is the
6 best way to confine primary participation to
7 candidates -- to voters who are not openly
8 antagonistic to the interest of the party in
9 question?
10     A. No. The issue is who gets to choose the
11 Republican candidate in the primary through the
12 candidate selection process that then goes on the
13 general election ballot? It's our view -- and the
14 courts upholds this, the Constitution upholds this --
15 the Republican Party is the entity that has the right
16 and opportunity to choose its candidate to put on the
17 general election ballot. That's the issue in this
18 case.
19         We've specified the manner in which we think
20 that should be done. We've identified a state law
21 that is inconsistent with that. Is doesn't allow us
22 to do that. That's further in violation of the
23 Constitution, and so we are asking for that law to be
24 found unconstitutional and for the Secretary of State
25 to be prohibited from instituting any further primary

1 elections that are inconsistent with the rule and our
2 constitutional right. That's what this case is
3 about.
4     Q. Would you agree that from the vantage point
5 of the plaintiffs, the issue in the case is whether
6 the State of Idaho or the Republican Party makes the
7 decision as to who can participate in the Republican
8 primary, putting aside the content of the particular
9 rule. Isn't that really what you're saying?
10     A. The question is whether the state law is
11 unconstitutional. The primary election law is
12 unconstitutional in view of our party rule and our
13 right of association in setting forth the manner in
14 which we can select our candidate.
15         The issue isn't who is in charge, who gets
16 to pick the candidate. Because clearly Republicans
17 get to pick the candidate. The issue is whether the
18 Idaho Republican party primary election law violates
19 the constitutional right for the Republican Party to
20 choose their own candidate.
21     Q. The issue in the case is not who picks the
22 candidate. The issue is who determines the rules by
23 which the primary is conducted. Wouldn't you agree?
24     A. Can you restate that?
25     Q. The issue in this case is not who picks the

1 candidate. The issue in this case is who picks the
2 rules by which the primary election is to be
3 conducted; would you agree?
4     A. No. The issue is whether the state statute
5 is unconstitutional. That's the issue. The issue is
6 whether the state statute, which prevents us from
7 exercising our freedom of association through
8 implementation of our rule, whether that state law
9 that prohibits that from occurring is
10 unconstitutional.
11         If it is unconstitutional, the court needs
12 to declare that, and it needs to not allow primaries
13 to proceed that are inconsistent with the rule and
14 our right of association. That's what the case is
15 about. That's the relief we've asked for. How that
16 gets implemented, the exact details of it, is not
17 something that we put before the court. And that
18 will have to be worked through after our right is
19 upheld.
20     Q. If the State of Idaho were to pass a law
21 that says that every voter, before they can vote in a
22 party primary, has to sign a pledge that saying that
23 they're not openly antagonistic to --
24         MR. SUTTON: Counsel, you've asked him that
25 at least twice before. At least twice.

1         MR. KRESKY: Let me try once more, then I
2 will stop; okay?
3         MR. SUTTON: It's been asked and answered.
4     Q. (BY MR. KRESKY) If the State of Idaho were
5 to pass a law that says that nobody can participate
6 in a party primary unless they sign a pledge saying
7 that they're not openly antagonistic to the
8 interests, principles and ideology of the party,
9 would the state be violating the Constitution if that
10 was different than rule number four in paragraph 21?
11     A. First of all, I don't believe the state
12 would ever do that. Secondly, I don't think the
13 constitutional problem that we have raised occurs
14 unless the state statute is denying us the ability to
15 associate under the Constitution and denying us the
16 right to implement our party rule, which is that you
17 must register as a Republican prior to primary
18 election.
19         If that oath is deemed as registration,
20 which I don't see how it could be -- back to my
21 original answer. I don't see how that satisfies
22 this. Whether that makes that law unconstitutional
23 or not, it's a legal opinion. I don't know. I know
24 what we have asked for is that there be registration
25 as a Republican prior to the primary election.

1    Q. Isn't the premise of your position that it's
2 the Republican Party who should make that decision
3 regardless of the content of it, not the State of
4 Idaho?
5    A. Again, it's the members of the Idaho
6 Republican Party, those that are registered as
7 Republicans prior to the primary election that should
8 make that decision. That's what that --
9    Q. Not the decision as to who can vote, not the
10 decision as to who the candidate could be, the
11 decision as to how the Republican Party primary is
12 conducted.
13       Aren't you saying that the bottom line here
14 is that the Republican Party should decide who can
15 participate in the Republican primary, not the State
16 of Idaho? Isn't that really what --
17    A. No. The State Central Committee of the
18 Republican Party adopts the procedure by which we
19 select our candidates. That is manifest in a rule.
20    Q. Right.
21    A. If the exercise of that rule or right of
22 association is prohibited by a state statute, that
23 state statute is unconstitutional. That's the issue
24 here, is whether this statute, which prohibits us
25 from exercising our right of association and

1 selecting our own candidate selection process, is
2 unconstitutional.
3       You can characterize it however you want.
4 It is a clear case of whether the right of
5 association of the Constitution is infringed upon by
6 a state statute. That's what is at issue in this
7 case.
8    Q. Is it your position that the measure of what
9 is constitutional and what is consistent with the
10 freedom of association of the Republican Party is the
11 acquiescence of the State of Idaho in conducting a
12 primary in which the Republican Party wants it to?
13 Isn't that your position?
14    A. No. Again, the rule speaks for itself. All
15 we're saying is we are an association, we're a group
16 of individuals, we're Republicans. We want the
17 opportunity and the right to select our candidate
18 through our candidate selection process to put on the
19 general election ballot.
20       The way we've chosen to do that is through
21 registration prior to the primary election, however
22 that ends up getting defined. And we want an
23 opportunity to be able to do that. That's all we're
24 asking for.
25       The state law prohibits us from being able

1 to do that. It's really that simple.
2    Q. And if the state had a law that said the
3 Republican Party can do whatever it wants, then it
4 would be okay?
5    A. Probably not. All we're asking for is that
6 we be able to have a registration of Republicans
7 prior to the primary election in furtherance of the
8 purpose of trying to select the candidate who we
9 think is the best representative of our views and
10 ideals and interests, to carry the banner for our
11 party to go on the general election ballot.
12       We've decided that this, at least for the
13 time being, is the best mechanism and the best way to
14 do that is to have some type of registration prior to
15 the primary.
16    Q. If the State of Idaho said, okay, we'll have
17 voters and registration, we want it to be seven days
18 before. And the Republican Party says we want it to
19 be two months before, would the Constitution require
20 that the State of Idaho acquiesce to the position of
21 the Republican Party?
22    A. You're asking for a legal opinion. I have
23 no idea. I will tell you that we would welcome that
24 kind of discussion.
25       MR. KRESKY: In the interest of time, does

1 anyone object to my deferring to local counsel and
2 let him ask some questions rather than us going
3 outside and having him tell me his questions?
4       MR. SUTTON: I don't have any objection.
5            EXAMINATION
6 BY MR. ALLEN:
7    Q. Mr. Semanko, you've referred repeatedly in
8 your testimony -- I'm sorry, do you need a second?
9       MR. SUTTON: I do. Go ahead.
10    Q. (BY MR. ALLEN) Mr. Semanko, you've
11 referred repeatedly in your testimony to the way that
12 the Democratic caucuses run.
13       Has the Republican Party ever asked the
14 state to run its primaries in a similar way of a
15 privately operated caucus that would be outside of
16 the primary system?
17    A. I'm not aware that they have. We certainly
18 don't, to my knowledge, have any rule or resolution,
19 any platform or other position that has asked for
20 that type of process to be put in place. I'm not
21 aware of that.
22       That's something the Democrats have chosen
23 to do, and I don't know that we've ever requested it
24 or frankly had it in the past at some point. I just
25 don't know.

1c00d8c3-6611-4e7e-a991-613d874d857f

1    Q. So the position of the party is that a
2 private caucus system like the Democrats have does
3 not meet the requirements of section four of your
4 party rule?
5    A. I don't know where you got that conclusion.
6 We don't really have any opinion with regard to the
7 validity of the Democrat's system. The Democrat
8 party, they get to choose how they want to select
9 their candidate. Maybe I'm confused by the question.
10    I don't think we have any position with
11 regard to the legality or constitutionality of the
12 Democrat's candidate selection process for president
13 or any other candidate.
14    Q. My question for you is: Would a process of
15 that kind, if applied to the selection of Republican
16 candidates, meet your criteria under your party rule?
17    A. Well, no. I don't think so. Because we're
18 asking for registration prior to a primary. So we're
19 not talking about a caucus. We're not talking about
20 an oath. We're talking about registration.
21    The oath thing is completely speculative.
22 We've not asked for, talked about any oath in our
23 filings or any of our party documents. So I don't
24 think that it would be consistent with the party
25 rule.

1    Q. Okay. So in other words, a resolution
2 acceptable to the Republican Party would require that
3 the state implement the registration in some form?
4    A. Are you suggesting some kind of settlement
5 offer or --
6    Q. No. I'm trying to understand what remedy
7 would be acceptable from the Republican's point of
8 view?
9    A. We're asking for declaratory relief finding
10 that the state law is unconstitutional because it
11 prohibits/hampers our ability to select our candidate
12 in the manner that we've prescribed, which is with
13 registration prior to the primary election.
14    And we've asked for injunction prohibiting
15 the Secretary of State from implementing further
16 primary elections that are inconsistent with our
17 party rule.
18    We've not, as I've discussed several times
19 with the other counsel, indicated exactly how we
20 think the registration should occur, what the details
21 of the registration are, what kind of hoops you need
22 to jump through, if any. None of that has been
23 discussed through our party platform, our rules, let
24 alone brought to the court in a request for relief.
25 So I would be speculating.

1    Q. It does seem to me that a necessary part of
2 the remedy that you're looking for, that the
3 Republican primary -- that the Republican candidate
4 be selected in the primary election that is conducted
5 by the state; correct?
6    A. In our complaint, number two, it says that
7 we're asking to "Issue permanent injunctive relief,
8 without bond, restraining and enjoining the State of
9 Idaho, acting by and through Defendant Secretary of
10 State, together with his agents, employees,
11 appointees or successors and all those acting in
12 concert and participation with him from the
13 enforcement, operation and execution of Idaho Code
14 34-904 as implemented by the Idaho Secretary of State
15 under the provisions of Idaho Code 34-740, as applied
16 to all Idaho Republican Party Primary Elections."
17    Without being an expert on Idaho election
18 law, I can tell just from that that the Secretary of
19 State apparently conducts the primary elections, and
20 we're asking that that primary election be conducted
21 consistent with the party rule.
22    I don't know how it would be done with
23 regard to Democrat primary elections or other primary
24 elections. But as applied to Idaho Republican Party
25 primary elections, the Secretary of State would be

1 prohibited from implementing the election statutes,
2 the primary election statues in a way inconsistent
3 with the rule. The state has a role obviously, in
4 the primary election process.
5    Q. Has the Republican Party ever asked the
6 state to ignore the results of the primary if -- has
7 the Republican Party ever asked the state if their
8 party could direct the Secretary of State to ignore
9 the results of a primary and place a different
10 candidate on the ballot?
11    A. I'm not aware that that position has ever
12 been taken or expressed. I'm certainly not familiar
13 with any pleading where we've asked for that or any
14 rule or resolution or platform or other position of
15 the party that has asked the Secretary of State to
16 ignore the results of a primary election.
17    We have asked that the primary election
18 process be changed so that we can have registration
19 of Republicans prior to the primary and that only
20 those folks that have registered be allowed to vote.
21 We've not asked for previous election results,
22 primary candidate selection results, to be thrown
23 out.
24    Of course the only one that has occurred
25 since the rule was adopted was 2008. I'm not aware

1  that we've asked, or that anybody else has asked, for
2  that.
3          Rather the relief for request has been that
4  the future application of the statute be construed
5  such that anything that is unconstitutional with
6  regard to our right of association be declared so.
7  And that implementation of those statutes not be
8  allowed to occur in the future in violation of the
9  Republican Party rule and right of association.
10         I don't think we're asking for anything
11 retroactive in our complaint.
12     Q. So the record is clear on this, the remedy
13 that the Republican Party is asking for and what it
14 believes is consistent with its rules can only be
15 accomplished by changes to the statutory system. It
16 cannot be effected by the opting out of the
17 Republican Party from the election process that's
18 been established; is that correct?
19     A. I don't know the answer to that question.
20 All I can speak to is the rule. The rule says that
21 we want to implement the candidate selection process
22 through the primary with registration prior to the
23 primary. That we believe the open primary election
24 law violates that. And to the extent it violates it,
25 it should be found unconstitutional.

1          Whether that requires amendments or changes
2  to the statute, I don't know. Mead versus Arnell
3  said a lot of things about rule making and not being
4  able to amend rules, and I'm not sure that statute
5  has ever been amended, but we all know that that's
6  unconstitutional.
7          Then we've asked for injunctive relief again
8  so that whatever those laws say, the fact that
9  they're unconstitutional means that they can't be
10 implemented in a way that violates our rule and our
11 right of association. That's the reason for the
12 injunctive relief.
13         But exactly how that would be implemented,
14 exactly what form registration would take, what
15 registration even means, are things that are not
16 asked for in this filing and that would need to be
17 dealt with in -- I want to say the next phase of the
18 litigation. Maybe that is the next phase of
19 litigation or perhaps it's something that the parties
20 would be able to sort through at that point working
21 with the legislature. I don't know. I can't
22 anticipate what the future will hold.
23         I can tell you what we're asking for. It's
24 squarely in our prayer for relief. And our rule does
25 talk about primary and the candidate selection

1  process which includes registration prior to the
2  primary. It doesn't talk about caucus or any other
3  method.
4      Q. Are you familiar with the concept called the
5  modified open primary?
6      A. I've heard of it. I don't know how familiar
7  I am with it.
8      Q. Here is my understanding of what that is. A
9  modified open primary is a primary where people
10 register by party. But independents are allowed to
11 vote in either primary. People unaffiliated, I
12 should say.
13         Am I correct in reading your rule that a
14 modified open primary, as I've described it, is
15 inconsistent with the rule that the Republican Party
16 has adopted?
17     A. Without having read the particular piece of
18 legislation, I think it's hard to answer that. The
19 way I would answer it is to say that our rule says
20 only persons who have registered as a Republican
21 prior to the primary election will be allowed to
22 vote.
23         If someone is not registering as a
24 Republican prior to the primary election, they
25 wouldn't be allowed to vote under this rule.

1      Q. So can I conclude from that that the
2  Republican Party would take the position that a
3  modified open primary would also be unconstitutional?
4      A. I don't know that you can take that
5  position. We haven't talked about an open modified,
6  closed, whatever it is, in this filing. You're
7  asking me to represent the party's position on
8  something they haven't taken a position on.
9          If you'd like to run that by them, I'd be
10 happy to run it by them.
11     Q. Several times during your testimony you
12 stated that the opinion of the  -- I don't mean to
13 put words in your mouth.
14         The way I heard it was that the opinion of
15 the State Central Committee is that if registration
16 is required, that will lead to a higher probability
17 that people who share the beliefs and values of the
18 Republican Party will vote in the primary. Do you
19 recall that testimony?
20     A. Yeah. I think what I said, or meant to say
21 anyway, is that by having a process where Republicans
22 register ahead of time and only those people are
23 allowed to participate in the candidate selection
24 process, the primary, that the party's feeling
25 collectively, I would think for most of the people

1  who voted for this thing, is that they feel more
2  comfortable that that process is more likely to
3  result in selection of a candidate who most closely
4  represents the views, ideals and interests of the
5  party than the current process which allows anybody
6  to come in and vote with whatever motivation or party
7  affiliation.  I think that's what I meant to say if I
8  didn't say that.
9       That's just my opinion as to why people
10  voted for this.  It is the purpose of conducting the
11  primary election, to select that candidate that most
12  closely approximates the positions of the party.  We
13  think that can better be done with some advance
14  registration.
15      Q.  What evidence is there to support the
16  contention that a registration system would better
17  represent the beliefs and values of the Republican
18  Party or allow candidates -- allow the voters to  --
19      A.  If I can inject some common sense here.
20  When Republicans vote, they're going to tend to vote
21  for someone who believes in the Republican ideals and
22  values.
23       If a Democrat votes in a Republican Primary,
24  I don't know what they're more likely to vote for.  I
25  don't think they're most likely to vote for the

1  person who most closely represents the views, ideals
2  and interests of the Republican Party when they're a
3  Democrat.
4       That's probably not an answer to your
5  question, but it's basic common sense that I think
6  most of the members of our party and most of the
7  members of our State Central Committee operate under
8  as they're going door to door and putting out
9  literature for Republicans.  They want to know that
10  that candidate was selected in a process that they
11  felt was the most meaningful process.  This is their
12  manifestation of the most meaningful process, and
13  that's the current rule of the party.  And we believe
14  it can't be implemented because of the state statute.
15      Q.  Apart from the common sense that you have
16  just articulated, are you aware of any other evidence
17  that would support that position?
18      A.  Restate that question.
19      Q.  So I asked you to begin with what evidence
20  supported the position that implementing voter
21  registration improves the probability that people who
22  share Republican values are going to vote in the
23  Republican Primary.  And you gave a common sense --
24  your stated common sense was the evidence that you're
25  aware of.  I'm just asking if there's any other

1  evidence?
2      A.  I believe that some of the materials that
3  we'll be producing will speak to that as well.  The
4  Gerber & Morton study in particular.
5       Again, as I said to previous counsel asking
6  questions, the conflict between the Idaho election
7  law and the Republican Party's primary rule fall
8  under more than just one category.  We also have the
9  right of association, the constitutional right.  And
10  that's being violated in and of itself by not
11  allowing us to implement our party rule.
12       It's not just whether you're going to be
13  more likely to elect the candidate that most closely
14  represents the views, ideals and interests.  It's
15  probably not going to be perfect, but we believe as a
16  party that it's going to be better.  At least that's
17  what I have to believe in terms of why we adopted the
18  rule as we feel it will be a better process for our
19  organizations to select its candidate to put on the
20  ballot in the general election.
21      Q.  What stops somebody who is openly
22  antagonistic from registering as -- openly
23  antagonistic to the Republican beliefs and values
24  from registering as a Republican?
25      A.  I believe I answered that before.

1  Self-control, ethics.  If somebody is really willing
2  to step up and say, you know what, I'm a Democrat.
3  I'm a hard-core Democrat, I would never vote for
4  Republican.  But I'm going to register as Republican
5  so I can vote in this primary and vote for the
6  candidate I think is the weakest, I think that's a
7  hard deal for a Democrat to do, a dyed-in-the-wool
8  Democrat.  I know as a Republican it would be hard
9  for me to do in a Democratic primary.
10       Maybe that's right; maybe that's wrong.  But
11  it's certainly a hurdle that wasn't there before.
12       You contrast that with an independent who in
13  any particular election may feel the Democrats have a
14  better deal going this time, I'm going to register
15  Democrat.  Or next time I think the Republican have a
16  better deal going this time.  I'm going to register
17  Republican.  That's easier to believe would happen,
18  and those people aren't necessarily antagonistic as
19  opposed to the died-in-the-wool Republican who is
20  saying, I'm going to go vote in this Democrat primary
21  so I can pick their weakest candidate.
22       Again, is it perfect?  No.  It's constructed
23  to make the process better from the Republican
24  perspective.  We believe under our right of
25  association that we have the right to pick that

1 candidate selection process.  And where a state law
2 infringes, doesn't allow us to implement that right
3 of association, we believe it's unconstitutional.
4     Q. Is there any document that states what the
5 purposes of the Republican Party are?
6     A. I can review some of our documents that tell
7 you.  Yes.  There are documents that talk about the
8 purposes of the Republican Party certainly.  The
9 platform talks about what the Republican Party stands
10 for.  I'd have to review the rules to see if there's
11 something that talks about the purposes of the party
12 as a whole.
13     There's certainly provisions that deal with
14 the duties and responsibilities of the chairman, the
15 State Central Committee, the committees, all of that.
16 If you're looking for that, it's in the state party
17 rules and our platform.  Those are the two main
18 documents that would express that.
19     Q. Do the purposes including electing
20 Republicans?
21     A. That's certainly a purpose of the Republican
22 Party.  Whether it's in the documents, I'd have to
23 look.
24     MR. KRESKY:  We could leave it blank and you
25 can fill it in.  Is that all right?

1     MR. ALLEN:  Sure.  We can read the rules
2 ourselves.
3     WITNESS:  I'm not aware if there's a rule
4 that specifically states it in that manner.  That's
5 certainly my view of what I'm helping to do as
6 chairman.  Part of my role.  It's not the totality of
7 the role.  But we would like to get our candidates
8 elected in November.
9     Q. (BY MR. ALLEN)  Does limiting participation,
10 as set forth in your rule, serve that purpose?
11     A. I guess I don't agree with the proposition
12 of your question.  We're not limiting participation.
13 Anyone who wants to register as a Republican is
14 welcome to participate in our candidate selection
15 process.  At the end of that candidate selection
16 process, we are going to select a Republican nominee.
17     The question that you were alluding to has
18 to do with electing candidates at the general
19 election.  Whoever our candidate that we've selected
20 for the general election, we are working toward
21 getting that person elected.
22     We like to think if we have a registration
23 process, the more people that step through and want
24 to be involved in the Republican Party and register
25 as Republican and vote in the Republican primary

1 election, that's a good thing, not a bad thing.
2 We're not trying to shrink the size of the party by
3 any means.  We're trying to increase it all the time.
4     I guess we actually think it's helpful for
5 the primary election candidate selection process to
6 get more people involved as Republicans and don't see
7 how it has a negative impact on the general election
8 whatsoever.
9     We're not limiting or effecting or defining
10 in any way what the general election process should
11 look like.  We are only attempting to address our
12 candidate selection process in May, not the general
13 election process in November.
14     Q. Does the Republican Party value the
15 participation of independent voters in its primary?
16     A. How do I address that?  I guess I've got to
17 answer in the context of this rule and the fact that
18 we have a rule as a Republican Party.  Certainly
19 anyone -- and I think I used the example of an
20 independent who feels like, I think the Republican
21 candidates have the right perspective this time
22 around, for whatever reason.  And I'm going to vote
23 in their primary by registering as a Republican.
24     Maybe they stay a Republican the rest of
25 their life, maybe they switch back.  I don't know.

1 We certainly value independents registering as
2 Republicans under that rule and coming in and voting
3 in our primary.
4     I don't know how we can say otherwise.
5 We've not suggested any kind of litmus test or oath
6 or examination of somebody's political background.
7 We've just said we want you to register as
8 Republican.  I don't know what the details of that
9 would be.
10     If an independent is able and willing, for
11 whatever reason they choose to register as a
12 Republican for that primary election, I think that's
13 a good thing.  Yes, from my perspective anyway, the
14 party would value that and is always trying to
15 attract that.
16     Certainly during the general election.  But
17 I think there's value in the primary too if somebody
18 decides they earnestly do want to register and be
19 part of the Republican Party for that primary.  I
20 think there's value in that.  So yes.
21     Q. If someone is  -- I'm thinking of a voter
22 who values their status as an independent and doesn't
23 want to lie and say that they're a Republican so they
24 can vote.  Why should that person be excluded from
25 your primary if they sincerely want to vote in favor

1  of a Republican candidate?
2      A. That's a great question. Again, it goes
3  back to whether there's a constitutional right to
4  associate or not. If Republicans have a right to
5  associate, which I surely believe they do, then they
6  have the right to dictate the manner in which they
7  select their candidate, the Republican candidate, to
8  put on the ballot.
9      If the requirements that we've set forth to
10  participate in that primary, in this case registering
11  as a Republican, are not satisfied, then it's our
12  right to say who should be able to vote in the
13  primary.
14      If the independent is not comfortable being
15  registered as a Republican, would rather vote in the
16  Democratic primary or not vote in a primary at all,
17  that's their choice.
18      We, as a party, have the right to describe
19  the manner in which we're going to select our
20  candidate. That's probably the best I can answer
21  that.
22      Q. Just so the record is clear on this, you are
23  not trying to require registration of voters into
24  other political parties; correct?
25      A. Our rule doesn't state that. Our platform

1      No, this is the candidate selection process.
2  And Republicans should be responsible for selecting
3  their candidate to put on the ballot. The general
4  election is a different animal. That's where
5  everyone gets to vote for the candidate of their
6  choice from the different options out there.
7      There's no obligation to do anything.
8  You've registered as a Republican. That gives you
9  the opportunity to vote in the primary. That's it.
10  That's all our rule talks to. It doesn't say
11  anything else.
12      Q. And if the Republican Party prevails in this
13  lawsuit, then it would be the case that the -- that
14  independents would be unable to participate in the
15  candidate selection process by the dominant party in
16  the State of Idaho; correct?
17      A. No. That's not true at all. Anyone who is
18  willing to register -- however that is defined,
19  whatever the process is. Again, we're not asking how
20  that be defined -- for the Republican primary
21  election will be allowed to do that.
22      Q. So can you be an independent and Republican
23  at the same time?
24      A. You can register as a Republican. That's
25  the only criteria in the rule, is that you register

1  position rules, none of them talk about trying to do
2  anything to any other party. In fact, in our request
3  for relief, we say on the injunctive portion as
4  applied to the Republican Party.
5      So, no, we're not trying to in, in my view,
6  affect any other party or registration of any other
7  party.
8      How this will get implemented, that's a
9  different question. We're asking that there be
10  registration as a Republican prior to voting in our
11  Republican primary election.
12      MR. KRESKY: I have two more questions, then
13  I promise I will stop.
14      FURTHER EXAMINATION
15  BY MR. KRESKY:
16      Q. If a person registers Republican, does that
17  person have an obligation to vote Republican in the
18  general election?
19      A. No. A person could sincerely say they're
20  Republican, register, and vote in that primary
21  election. A, their candidate doesn't get elected.
22  B, their candidate does get elected but they don't
23  like what they say for the next three months or they
24  really like what the independent says and decides to
25  vote for that person.

1  as a Republican prior to the primary election.
2      I think I've already painted a couple of
3  scenarios where that certainly is a reasonable
4  assumption that it could occur. One is probably more
5  likely. The independent scenario is more
6  likely than the Democrat scenario. I suppose it can
7  happen in either case.
8      Again, is it perfect? No. But it is
9  calculated to result in candidate selection that more
10  closely approximates the views and ideals of the
11  members of the Republican Party. It's never going to
12  be one hundred percent perfect. At least nobody has
13  come up with how to do that yet.
14      MR. KRESKY: I have nothing further.
15      MR. GILMORE: Maybe two minutes.
16      FURTHER EXAMINATION
17  BY MR. GILMORE:
18      Q. As I understand your answers to Mr. Kresky
19  and Mr. Allen, the Republican Party would like to
20  retain the use of a state finance and
21  state-administrated primary election system for the
22  choice of its candidates; is that correct?
23      A. I don't know if we addressed that in our
24  complaint.
25      Q. I thought that's what you --

1    A. I guess what I've said is that we adopted a
2 rule that says that only persons who register as
3 Republican prior to a primary election will be
4 allowed to vote on an Idaho Republican Party ballot
5 in the primary election.
6    Q. Okay. Is --
7    A. Does that prohibit us from not having a
8 primary and doing something else? Probably not. To
9 me, this says the candidate process is a Republican
10 Party primary with registration prior to the
11 election.
12    Q. Is it a primary election you're discussing,
13 a primary election that the state would administer
14 and finance?
15    A. Again, I don't see that we're asking for
16 relief along those lines. To me that's an
17 implementation issue. And once our right gets
18 upheld, we get to have a discussion, I hope, about
19 the details -- it would be nice to have it before
20 then -- of how this thing would be implemented. What
21 registration is, how the primary is handled. All of
22 that I think is up in the air.
23    I don't think we're asking for any relief
24 particular to that, and I don't believe our rules --
25 I don't make up these positions. I don't believe

1 there's any rule or resolution or platform or other
2 position that speaks to what we want to do in terms
3 of the primary election and how they're financed and
4 all of that. If there is, you'll find it in the
5 documents we produce. But I'm not aware that there
6 is a position on that.
7    Q. When you refer to the primary election, then
8 could that primary election include a primary
9 election that the Republican Party finances and
10 conducts itself independent of the Idaho Primary
11 Election? Or are you talking about the Idaho primary
12 election that the state finances and administers?
13    A. The injunctive relief we're asking for says
14 that we don't want to see any elections held under
15 34-904 or 34-740 as applied to the Idaho Republican
16 Party primary elections that are inconsistent with
17 our rule.
18    Does that say that we would be willing to do
19 our own primary or that we're proposing that? It
20 doesn't say that.
21    Q. I'm trying to find out what your position is
22 as chairman of the Republican Party. Is the
23 Republican Party willing to conduct and finance its
24 own primary? Or are you only talking in this case
25 about the primary election that is supervised by the

1 Secretary of State and paid for by the State of
2 Idaho?
3    A. No. The State Republican Central Committee
4 is the governing body of the party. We have not
5 taken that issue up. I can't make up positions for
6 the party.
7    I don't know if that is brought to the state
8 party what their decision will be. We've not raised
9 it. We have had not any discussions about it.
10    Q. Would a primary election conducted by the
11 Republican Party at its own expense be a primary
12 election within the meaning of this resolution?
13    A. I just don't know.
14    Q. You've been designated as the --
15    A. If you'll let me answer the question. I
16 don't know enough about the state law with regard to
17 primary elections to know as a legal matter whether
18 primaries must be conducted under state law or
19 whether they can be conducted by private entities.
20    If they can be conducted by private
21 entities, like a caucus or something else, I'm sure
22 the party would be willing to discuss it and decide
23 whether that's the best way to go or not.
24    I'm telling you, they haven't done that.
25 It's a legal matter. I don't know if it's legal or

1 not. If you know, you can let us know and we can
2 discuss it.
3    You're asking me facts and some opinions,
4 and I don't know the law with regard to whether you
5 can do a private primary or not. We've not discussed
6 it at all.
7    Q. Regardless of what the law may or may not
8 be, as a fact witness -- that's what you are today --
9 would you consider a primary election that the
10 Republican Party finances and administers itself to
11 be a primary election within the meaning of this
12 resolution?
13    A. Let me read it. I don't know. That's the
14 best I can do.
15    Q. You don't know whether -- let me rephrase
16 this.
17    A. I think you asked me whether a private
18 primary would satisfy the rule, and I don't know. I
19 don't know.
20    MR. GILMORE: I have no further questions.
21    MR. KRESKY: Before we close, I want to
22 talk.
23    (Discussion held off the record.)
24    MR. GILMORE: Because of the judge's
25 schedule and working around the available dates when

1c00d8c3-6611-4e7e-a991-613d874d857f

1  we can all get together, we've scheduled the
2  deposition before the documents would be produced.
3  Would it be permissible if there's something in those
4  documents, could we reconvene this by a written
5  interrogatory or something to follow up on those
6  documents?
7       MR. SUTTON:  Sure.
8       MR. KRESKY:  That would go for the
9  intervenors as well?
10      MR. SUTTON:  Yes.
11      MR. GILMORE:  We wouldn't insist upon a
12 spoken deposition.
13      MR. KRESKY:  Thank you.
14      (The deposition adjourned at 1:02 p.m.)
15      (Signature requested.)
16
17
18
19
20
21
22
23
24
25

(208) 345-9611      M & M COURT REPORTING SERVICE, INC.  (208) 345-8800 (fax)