LAWRENCE G. WASDEN
ATTORNEY GENERAL

BRIAN KANE (ISB No. 6264)
Assistant Chief Deputy Attorney General

STEVEN L. OLSEN (ISB NO. 3586)
Chief of Civil Litigation Division

MICHAEL S. GILMORE (ISB NO. 1625)
KARIN D. JONES (ISB NO. 6846)
Deputy Attorneys General
Civil Litigation Division
Office of the Attorney General
954 W. Jefferson St., Second Level
P. O. Box 83720
Boise, ID  83720-0010
Telephone:  (208) 334-4130
Fax:  (208) 854-8073
mike.gilmore@ag.idaho.gov
karin.jones@ag.idaho.gov

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE IDAHO REPUBLICAN PARTY, its EXECUTIVE COMMITTEE, its STATE CENTRAL COMMITTEE, and CHAIRMAN, EXECUTIVE DIRECTOR; SIDNEY C. SMITH,<br><br>Plaintiffs,<br><br>vs.<br><br>BEN YSURSA, In his Official Capacity as Secretary of State of the State of Idaho,<br><br>Defendant. | Case No. 1:08-CV-00165-BLW<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT BEN YSURSA'S MOTION FOR SUMMARY JUDGMENT** |

COMES NOW Defendant Ben Ysursa, Secretary of State of the State of Idaho, by and through his undersigned counsel of record, and hereby submits this Memorandum in Support of Defendant Ben Ysursa's Motion for Summary Judgment.

**INTRODUCTION**

The Idaho Republican Party, its Executive Committee, its State Central Committee, and its former Chairman, Sidney C. Smith[1] (referred to collectively as "the Idaho Republican Party," "the Party," or "Plaintiff") seek a declaratory judgment that Idaho's primary election statutes violate the Idaho Republican Party's constitutional right to freedom of association. Complaint, Dkt. 1, ¶¶ 41-46. The Party further seeks injunctive relief prohibiting Secretary of State Ben Ysursa from: (1) conducting primary elections without party registration for members of the Idaho Republican Party; (2) "encouraging or facilitating … party raiding by non-party members;" and (3) conducting primary elections without implementing mechanisms for the Idaho Republican Party to: (a) limit voter participation as to the Party's nominees; (b) verify that individuals voting for Republican candidates are members of the Party; and (c) be able to subsequently communicate with those individuals who voted for Republican nominees. Id. at ¶ 50.

There are no disputed issues of fact. As a matter of law, the Party is not entitled to the relief it seeks and the Secretary of State is entitled to summary judgment in his favor for the following reasons:

- Idaho's current primary election system is constitutionally distinct from the type of primary election that has been rejected by the United States Supreme Court and therefore presents an open question of law;

- Under the United States Supreme Court's most recent election law decisions, <u>Washington State Grange v. Washington State Republican Party</u> and <u>Crawford v. Marion County Election Board</u>, this case should be treated as a facial challenge to the constitutionality of Idaho's primary election laws, because the Idaho Republican Party has failed to produce

---

[1] When this lawsuit was filed, the Chairman of the Idaho Republican Party was Plaintiff Sidney Smith. In June 2008, Norman Semanko was elected Chairman. See Statement of Facts, ¶ 1.

any evidence that Idaho's current primary election system has any of the factual consequences that underlie its allegations that the primary election system infringes upon its constitutional rights;

- The Idaho Republican Party has also failed to produce any evidence that its proposed closed primary system would be any different, as a practical matter, from the current primary election system; and

- The State's important and legitimate interests in regulating primary elections support the current primary election system and outweigh any alleged infringement upon the Party's constitutional rights.

## BACKGROUND

The statute upon which the Idaho Republican Party has particularly focused in this lawsuit, Idaho Code § 34-904 (which applies to paper ballots), provides, in relevant part:

> There shall be a single primary election ballot on which the complete ticket of each political party shall be printed …. Each political ticket shall be separated from the others by a perforated line that will enable the elector to detach the ticket of the political party voted from those remaining. All candidates who have filed their declarations of candidacy and are subsequently certified shall be listed under the proper office titles on their political party ticket. …

### I. Idaho's Primary Election System

Under current Idaho law, political parties' nominees for office for the general election are chosen at the Idaho primary election from among each political party's candidates for office.[2] Defendant's Statement of Material Facts that Defendant Contends Are Not in Dispute ("Statement of Facts"), ¶ 6. Any qualified elector may vote in an Idaho primary election without prior registration as a member of a political party. Id. at ¶ 5; I.C. § 34-411(1).

---

[2] The exceptions to this rule involve: (a) the filling of vacancies in nominations for office between the primary and general elections; or (b) political parties with no contested primary election races. Statement of Facts, ¶ 6.

A person voting for candidates for a partisan office in a primary election in Idaho must choose a single political party for which to cast his votes. Statement of Facts, ¶ 6. The elector may lawfully vote for the candidates of any one (and only one) political party for which primary election ballots have been printed. Id.

Idaho primary election ballots are prepared so that all of a political party's candidates are grouped together and are physically separated on the ballot from the candidates of all other political parties. Affidavit of Defendant Ben Ysursa ("Ysursa Aff."), ¶ 8; I.C. § 34-904. Idaho's 2008 primary election used four types of ballots: oval optical scan ballots, arrow optical scan ballots, punch card ballots, and paper ballots. Ysursa Aff., ¶ 8 and Exs. A-D (sample ballots). Voters using paper ballots can only place votes for candidates from a single party in the ballot box; the paper ballots have perforations separating each party's slate of candidates, and only a single portion of the ballot is allowed to be placed in the ballot box. Ysursa Aff., ¶ 10. With ballots that are tallied by an optical scanner or a computer punch card reader (oval optical scan ballots, arrow optical scan ballots, and punch card ballots), the optical scanner or computer is programmed not to count any votes placed for candidates from multiple political parties. Id. In other words, if an elector marks the ballot for a Republican Party candidates for any office and for a Democratic Party candidate for any other office, the machine will not tally the elector's votes for any partisan offices. Id.

## II. The Idaho Republican Party's Closed Primary Rule

On June 2, 2007 the Idaho Republican Party's State Central Committee adopted a Party Rule ("the Closed Primary Rule") that provides: "Only persons who have registered as a Republican prior to the Primary Election will be allowed to vote on an Idaho Republican Party ballot in that Primary Election." Complaint, Dkt. 1, ¶ 21. On or about April 11, 2008, the Party

filed this lawsuit, seeking to enforce its Closed Primary Rule.  Complaint, Dkt. 1.

## ARGUMENT

As discussed in detail below, the Idaho Republican Party's claims fail as a matter of law, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  The Party has failed to provide any evidence of an actual constitutional infringement taking place in Idaho primary elections.  Any minimal infringement (if there were any) would be outweighed by the State's legitimate interests.

**I.      Standard of Review: Weighing the Asserted Constitutional Violation Against the State's Legitimate Interests**

In <u>Burdick v. Takushi</u>, 504 U.S. 428 (1992), the United States Supreme Court articulated in detail the standard of review and level of scrutiny applicable to constitutional challenges to election statutes.  The Court rejected the "erroneous assumption that a law that imposes any burden upon the right to vote must be subject to strict scrutiny."  <u>Burdick</u>, 540 U.S. at 432.  The Court explained that the State's important role in regulating elections necessarily imposes some reasonable burdens upon voters and political parties:

> It is beyond cavil that "voting is of the most fundamental significance under our constitutional structure." *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979).  <u>It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute</u>.  The Constitution provides that States may prescribe "[t]he Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl. 1, and <u>the Court therefore has recognized that States retain the power to regulate their own elections</u>.  *Sugarman v. Dougall*, 413 U.S. 634, 647, 93 S.Ct. 2842, 2850, 37 L.Ed.2d 853 (1973); *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986).  <u>Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections</u>; "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes."  *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed. 2d 714 (1974).

> Election laws will invariably impose some burden upon individual voters. Each provision of a code, "whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends." *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 1569-1570, 75 L.Ed.2d 547 (1983). <u>Consequently, to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest, as petitioner suggests, would tie the hands of States seeking to assure that elections are operated equitably and efficiently.</u> …

<u>Id.</u> at 433 (emphasis added) (some citations omitted).

In lieu of applying strict scrutiny to every constitutional challenge of election laws, the <u>Burdick</u> Court reaffirmed that "a more flexible standard applies." <u>Id.</u>

> <u>A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."</u> *Id.* at 789, 103 S.Ct. at 1570; *Tashjian*, *supra*, 479 U.S. at 213-214, 107 S.Ct. at 547-548.

<u>Id.</u> at 434 (emphasis added). The Court clarified that reasonable, politically neutral restrictions generally pass constitutional muster:

> Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. Thus, as we have recognized when those rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 705, 116 L.Ed.2d 711 (1992). <u>But when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions.</u> *Anderson*, 460 U.S. at 788, 103 S.Ct. at 1569-1570; see also *id.* at 788-789, n. 9, 103 S.Ct. at 1569-1570, n. 9.

<u>Id.</u> (emphasis added); <u>see</u> <u>also</u> <u>Washington State Grange v. Washington State Republican Party</u>, __ U.S. __, 128 S.Ct. 1184, 1192 (2008) ("If a statute imposes only modest burdens, [] then 'the State's important regulatory interests are generally sufficient to justify reasonable, nondiscrimi-

natory restrictions' on election procedures."), *quoting* Anderson v. Celebrezze, 460 U.S. 780, 788 (1983).

## II. The Idaho Republican Party Cannot Demonstrate that Idaho's Primary Election Laws Place an Unreasonable Burden on the Party's Right of Association

The First Amendment of the United States Constitution has been interpreted to contain the guarantee of the right to freedom of association, including the right to associate with the political party of one's choosing. U.S. Const. amend. I. In upholding this right, the courts have recognized that the right to freedom of association can include the right of a political party to choose its candidates. See, e.g., California Democratic Party v. Jones, 530 U.S. 567 (2000). This right, however, is not absolute; nor does every statute affecting this right constitute an unreasonable burden, particularly in light of the State's significant right and obligation to regulate elections. See Burdick, 504 U.S. at 432-34; Storer v. Brown, 415 U.S. 724, 730 (1974) ("[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.") In the case at hand, the Idaho Republican Party cannot demonstrate that the Idaho primary election laws place an unreasonable burden on the Party's associational rights.

### A. *Idaho's Primary Election System is Constitutionally Distinct From Primary Election Laws Rejected by the Supreme Court as Unconstitutional*

As discussed previously, Idaho law provides that the ballot for a primary election includes candidates for all political parties. However, a voter at the primary election must select a party and is then permitted to vote only for candidates from the chosen political party. Statement of Facts, ¶5; Ysursa Aff., ¶¶ 8, 10. The Idaho voter must decide, before casting a vote for a political office in a primary election, to identify with a particular political party for purposes of that primary election. Id. The Idaho voter is not permitted to pick and choose

among different parties' candidates for various offices.  Id.  Idaho's primary election system therefore significantly differs from the type of primary election that has been struck down by the United States Supreme Court for an unconstitutional infringement upon political parties' associational rights and therefore presents an open question of law that should be resolved in favor of Defendant Secretary of State Ysursa.

While the United States Supreme Court held in California Democratic Party v. Jones that "blanket primaries"[3] impose an unconstitutional burden upon political parties' associational rights, the Court explicitly distinguished "blanket primaries" from the very type of primary election system employed in Idaho:

> An open primary differs from a blanket primary in that, although as in the blanket primary any person, regardless of party affiliation, may vote for a party's nominee, his choice is limited to that party's nominees *for all offices*.  He may not, for example, support a Republican nominee for Governor and a Democratic nominee for attorney general.

Jones, 530 U.S. at 576 n.6.  Even more importantly, the Jones Court stated:

> [T]he blanket primary also may be constitutionally distinct from the open primary, … in which the voter is limited to one party's ballot. "[T]he act of voting in the Democratic primary fairly can be described as an act of affiliation with the Democratic Party .... The situation might be different in those States with 'blanket' primaries—*i.e.,* those where voters are allowed to participate in the primaries of more than one party on a single occasion, selecting the primary they wish to vote in with respect to each individual elective office."

Id. at 577 n.8 (emphasis added), *quoting* Democratic Party of United States v. Wisconsin ex rel. La Follette, 450 U.S. 107, 130 n.2 (1981) (Powell, J., dissenting); see also Democratic Party of Washington v. Reed, 343 F.3d 1198, 1203 (9th Cir. 2003) ("*Jones* carefully distinguishes blanket primaries, in which a voter can vote for candidates of any party on the same ballot, from an 'open' primary where the voter can choose the ballot of either party but then is limited to the

---

[3]   In a blanket primary, an elector is permitted to vote on the same ballot for nominees from multiple political parties.  See Jones, 530 U.S. at 577 n.8.

candidates on that party's ballot.")

### B. *The United States Supreme Court's Recent Election Decisions*

More relevant to the case at hand are the Supreme Court's most recent decisions in the area of election law: <u>Washington State Grange v. Washington State Republican Party</u>, __ U.S. __, 128 S.Ct. 1184 (2008), and <u>Crawford v. Marion County Election Board</u>, __ U.S. __, 128 S.Ct. 1610 (2008). Both cases held that the plaintiffs failed to demonstrate that certain election statutes infringed upon their constitutional rights, primarily due to lack of evidence of any unreasonable burden affecting their rights in their facial challenges.

In <u>Washington State Grange</u>, the plaintiffs opposed a primary election system where the two nominees receiving the most votes would proceed to the general election, regardless of their party affiliation. Candidates were permitted to list their "party preference" on the primary election and general election ballots. The plaintiffs asserted that this system infringed upon their associational rights because voter confusion might lead electors to believe that a candidate at the general election had been specifically nominated by a particular political party, rather than selected by the general electorate. The Court held that the plaintiffs' lack of evidence defeated their claims:

> [R]espondents' assertion that voters will misinterpret the party-preference designation is <u>sheer speculation</u>… . There is simply no basis to presume that a well-informed electorate will interpret a candidate's party-preference designation to mean that the candidate is the party's chosen nominee or representative or that the party associates with or approves of the candidate.
>
> … . Of course, it is *possible* that voters will misinterpret the candidates' party-preference designations as reflecting endorsement by the parties. But … we cannot strike down I-872 … based on the mere possibility of voter confusion. See *Yazoo*, 226 U.S., at 219, 33 S.Ct. 40 ("[T]his court must deal with the case in hand and not with imaginary ones"); *Pullman Co. v. Knott*, 235 U.S. 23, 26, 35 S.Ct. 2, 59 L.Ed. 105 (1914) (A statute "is not to be upset upon hypothetical and unreal possibilities, if it would be good upon the facts as they are").

Washington State Grange, 128 S.Ct. at 1193 (emphasis added). The Court continued:

> Each of their arguments rests on factual assumptions about voter confusion, and each fails for the same reason: <u>In the absence of evidence, we cannot assume that Washington's voters will be misled.</u> See *Jones*, 530 U.S. at 600, 120 S.Ct. 2402 (STEVENS, J., dissenting) (<u>"[A]n empirically debatable assumption ... is too thin a reed to support a credible First Amendment distinction"</u> between permissible and impermissible burdens on association).

Id. at 1195 (emphasis added).

Similarly, in <u>Crawford</u>, the Court upheld a statute requiring electors to produce photo identification in order to vote. The Court held that the record lacked sufficient evidence of any actual substantial burden imposed upon a particular elector or class of electors. <u>Crawford</u>, 128 S.Ct. at 1622-23. In so holding, the Court rejected an expert's report as "utterly incredible and unreliable," noted that "the deposition evidence presented in the District Court does not provide any concrete evidence of the burden imposed on voters who currently lack photo identification," and came to a similar conclusion regarding an indigent voter's affidavit, stating: "The record does contain the affidavit of one homeless woman who … was denied a photo identification card because she did not have an address. But that single affidavit gives no indication of how common the problem is." <u>Id.</u> (internal citation omitted). The Court concluded: "In sum, on the basis of the record that has been made in this litigation, we cannot conclude that the statute imposes 'excessively burdensome requirements' on any class of voters." <u>Id.</u> at 1623.

    **C.** *The Idaho Republican Party Has Failed to Produce Evidence of Infringement Upon its Constitutional Rights*

As in <u>Washington State Grange</u> and <u>Crawford</u>, the Idaho Republican Party has failed to provide sufficient evidence of any actual, substantial burden imposed by Idaho's primary election laws. To the contrary, the record before this Court shows a complete lack of evidence that Idaho's primary election system adversely affects the Party's rights of association. More

importantly, the Court has before it a summary judgment motion, and if the Plaintiff fails in its proof (which it has), judgment should be entered for the Defendant Secretary of State Ysursa.

The Party's Complaint asserts that Idaho's primary election system: (1) permits "infiltration of non-Republicans into the selection process for Idaho Republican Party candidates" for which "cross-over of non-Republicans voting for persons who would represent the Idaho Republican party in a general election" "pose[s] an immediate threat to the integrity of the Party"; (2) "weakens, dilutes, and obstructs [the nomination] process"; (3) "forc[es] its candidates to modify their political message, ideology and positions on public policy issues in order to persuade non-Party members to vote for them in the primary election"; (4) "forces the Party and its members to associate with those persons who do not share their political beliefs and who are openly antagonistic to the ideology and principles of the Idaho Republican Party"; (5) subjects the Party to "forced dilution" and "party raiding" that affects the outcome of elections; (6) results in "selection of different party nominees than would otherwise be selected"; and (7) has "cause[d] immediate and irreparable harm to the Idaho Republican Party and its members, and to all Idaho voters." Complaint, Dkt. 1, ¶¶ 22, 24, 31, 35-37.

During discovery in this matter, however, the Party failed to produce any evidence in support of these allegations. Statement of Facts, ¶¶ 7-17. As an example, the Party's designated Rule 30(b)(6) deponent, current Party Chairman Norman Semanko, acknowledged that he did not have any actual knowledge of "infiltration of non-Republicans into the selection process for Idaho Republican Party candidates," stating: "I can't get into the minds of the individuals that voted or why they voted the way they did… . I don't know which ballot they grabbed or how they voted;" and "I'm not personally familiar with anyone who identified as not being a Republican who voted in the primary." Affidavit of Michael S. Gilmore ("Gilmore Aff."), Ex. F

(Deposition of Norman Semanko), pp. 11-12, 74. Chairman Semanko additionally acknowledged that he could not name any particular Republican candidates who had allegedly modified his or her political message to appeal to non-Republican voters for the primary election. Id. at 27-33. Instead, Chairman Semanko broadly asserted that "every single Republican primary candidate that's been on the ballot since 1988 has been affected … ." Id. at 29. However, Chairman Semanko admitted that he could not provide a single specific example of a political message that had been modified, stating: "I can't tell you with any particularity exactly how any individual candidate did that"; "I certainly have not been inside the mind of any of our candidates when they are on the stump"; and "I can't tell you exactly how – what exactly they changed in their message or in their formal position." Id. at 30-32. Finally, Chairman Semanko acknowledged that, regardless of the primary election, a Republican candidate attempts to appeal to non-Republican voters for the general election:

> In the general election, everybody knows that everybody is entitled to vote. So every candidate, if they're a smart candidate, they're going to be trying to tailor their political message to appeal to as many voters as possible.[4]

Id. at 33.

### D. *Any Differences Between Idaho's Current Primary System and the Idaho Republican Party's Proposed System are Merely Semantic*

Perhaps most significantly, there is minimal, if any, practical difference between Idaho's current primary election system and the system proposed by the Idaho Republican Party. The Party is seeking to require that electors register with the Republican Party "prior to the Primary Election" in order to vote for Republican nominees. Complaint, Dkt. 1, ¶ 21. However, the Party has not established any mechanism or litmus test for determining whether an Idaho voter is

---

[4] Chairman Semanko acknowledged: "I can't speculate on what any particular candidate would do in the primary with the view toward the general election." Gilmore Aff., Ex. F, p. 52.

actually a Republican and/or associates with the Republican Party. Statement of Facts, ¶ 18. Neither does the Idaho Republican Party have any rules, policies, or criteria to determine affiliation with the Party other than some form of self-identification as a member of the Party.[5] Id. at ¶ 19. The Party has not taken a position on whether it would oppose election-day Party registration of electors wishing to vote for Republican nominees in the primary election; no specific time period has been assigned by the Party to its requirement that registration occur "prior to the Primary Election." Id. at ¶ 20; Complaint, Dkt. 1, ¶ 21.

Under the current system, an elector wishing to vote for Republican nominees at a primary election must decide to affiliate with the Republican Party for purposes of the primary election by choosing to vote the Republican portion of the ballot. Ysursa Aff., ¶¶ 8, 10. "[T]he act of voting in the [Republican] primary fairly can be described as an act of affiliation with the [Republican] Party." La Follette, 450 U.S. at 130 n.2 (Powell, J., dissenting). In so doing, the elector has self-identified as a Republican for purposes of the primary election.

Under the Idaho Republican Party's proposed system, an elector wishing to vote for Republican candidates in the primary election must decide to affiliate with the Republican Party for purposes of the primary election by choosing to register with the Republican Party at some point prior to the election. Complaint, Dkt. 1, ¶ 21. That registration may even occur as late as the election day – the same time that an elector under the current system decides to affiliate with the Republican Party by choosing to vote the Republican portion of the ballot. Ysursa Aff., ¶¶ 8, 10; Statement of Facts, ¶ 20. As noted previously, the Party has developed no rules, policies, or criteria to determine eligibility for Party registration, other than self-identification as a Repub-

---

[5] The Party has acknowledged that not all Republicans share the exact same ideologies, views, and beliefs and that many independent voters share the ideologies, views, and beliefs of the Idaho Republican Party. Statement of Facts, ¶ 10.

lican, the same self-identification that an elector employs under the current system when choosing the Republican portion of the ballot. Statement of Facts, ¶¶ 18-19. The Idaho Republican Party has noted that a voter who registers as a Republican for the primary election has no obligation to vote the Republican ticket in the general election. Gilmore Aff., Ex. F., p. 171. Thus, as a practical matter, the only potential distinction between the current primary election system and the Party's proposed system is the timing of an elector's choice to affiliate with the Republican Party for purposes of the primary election: either at the polling place or a certain period of time before the election day.

Significantly, in <u>Tashjian v. Republican Party of Connecticut</u>, the Supreme Court held that a statute requiring voters to register with a political party in order to participate in that party's primary election did not serve to address the State of Connecticut's proffered interest of preventing exactly the type of "party-raiding" alleged by the Idaho Republican Party in this case. <u>Tashjian</u>, 479 U.S. 208, 219 (1986). In other words, the <u>Tashjian</u> Court held that Party registration is not an effective method of preventing party-raiding, particularly with respect to independent voters. <u>Id.</u> The Court noted that the "raiders need only register as Republicans and vote in the primary." <u>Id.</u> Indeed, Party Chairman Norman Semanko has explicitly stated:

> We're not limiting participation. Anyone who wants to register as a Republican is welcome to participate in our candidate selection process.
>
> * * *
>
> We certainly value independents registering as Republicans under [the Party's] rule and coming in and voting in our primary.
>
> I don't know how we can say otherwise. We've not suggested any kind of litmus test or oath or examination of somebody's political background. We've just said we want you to register as Republican.[6]

---

[6] With respect to electors who identify with the Democratic Party, Mr. Semanko asserted: "I'm pretty sure, from my own personal experiences, that Democrats don't vote Republican most of the time."

Gilmore Aff., Ex. F, pp. 167, 169.

The Idaho Republican Party failed to offer any evidence that "party-raiding" occurs under the current system or that cross-over voting has affected the outcome of any election. Statement of Facts, ¶¶ 12-16. While the Party has suggested in its Complaint that the current system has resulted in the nomination of candidates who do not share the ideologies, views, and beliefs of the Republican Party, the 30(b)(6) deponent for the Party could not identify any such nominees and acknowledged that every Republican candidate nominated under the current primary election system in fact "reflect[ed] the interests, ideology and beliefs of the Republican party." Gilmore Aff., Ex. F, pp. 74-75; Complaint, Dkt. 1, ¶¶ 23-24. Party Chairman Semanko admitted:

> All I can say is I can't say whether [cross-over voting] did or didn't or has or hasn't affected the ultimate outcome of any particular primary.
>
> * * *
>
> … I can't with any particularity, tell you that everybody that voted in the primary what their party affiliation is or isn't and how folks that were not Republican participating in that primary would have affected the outcome if they had not participated. … I can't tell you because I'd be speculating. I don't have those facts in front of me.

Gilmore Aff., Ex. F, pp. 19, 48.

### E. *The Party's Claims Fail for Lack of Proof*

As in the Supreme Court's recent decisions of <u>Washington State Grange</u> and <u>Crawford</u>, the Idaho Republican Party cannot point to any evidence that the current Idaho primary election system in fact infringes upon its associational rights. See Statement of Facts, ¶¶ 7-17. On the contrary, Chairman Semanko welcomed independent voters registering as Republicans to vote in the primary election. Gilmore Aff., Ex. F, pp. 167, 169, quoted *supra* at p. 15. Nor is there any

---

Gilmore Aff., Ex. F, p. 13.

evidence that the Party's proposed system would involve any practical change to the current system in terms of addressing the Party's asserted concerns of cross-over voting. As such, the Party's constitutional claims fail for lack of proof. See Washington State Grange, 128 S.Ct. at 1193-95; Crawford, 128 S.Ct. at 1622-23. Even if the current system were deemed as a burden upon the Party's associational rights, that burden is, at most, the type of "modest burden" that is easily outweighed by "the State's important regulatory interests." Washington State Grange, 128 S.Ct. at 1192, *quoting* Anderson, 460 U.S. at 788.

## III. The Current Primary Election System Is Supported by the State's Legitimate Interests

Even if the Idaho Republican Party had not failed to produce evidence of the current Idaho primary election system's infringement upon its associational rights, the current system is supported by the State's important and legitimate interests in regulating primary elections. "The Constitution provides that States may prescribe '[t]he Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, and the Court therefore has recognized that States retain the power to regulate their own elections." Burdick, 504 U.S. 428, 432-44, *quoting* Sugarman v. Dougall, 413 U.S. 634, 647 (1973); Tashjian, 479 U.S. at 217.

> [T]he state is not powerless to act. Turning the entire electoral apparatus over to political parties would pose as great a threat to the integrity of our system of government as would the state's unprincipled meddling in the political process. This recognition informs the Supreme Court's direction to lower courts to strike a balance between the interests of the parties and those of the state that will best enhance the democratic character of our system.

Lightfoot v. Eu, 964 F.2d 865, 873 (9th Cir. 1992).

The current primary election system provides an organized, streamlined method to ensure that all voters have the opportunity to participate in the election. Rather than speculating on the number of Republican ballots, Democratic ballots, etc. that need to be printed in each county,

resulting in potential waste from over-printing of a particular ballot or potential shortages of a ballot in high demand, a single ballot is all that is required for Idaho's primary election.

Implementing the Idaho Republican Party's proposed system would inflict significant additional costs upon the State, costs that the Party has made no indications it intends to cover. Statement of Facts, ¶ 21. These costs would include: (1) creating and printing separate ballots for the Republican Party versus the remainder of the nominees; (2) creating and maintaining a Republican Party registration system, including creating and printing Republican Party registration cards and creating and maintaining lists of registered Republican voters; (3) policing the primary elections to ensure that only registered Republicans receive the separate Republican Party ballot and/or vote for Republican nominees; (4) training the County Clerks and others who work at the polling places regarding the new Republican registration requirement; and (5) educating the public about the need to register as a Republican in order to vote for Republican nominees in the primary election. The current system serves the State's legitimate interest of carrying out primary elections in a simple, straightforward, and cost-effective manner.

In evaluating the costs to the State, this case must be analyzed against a backdrop that balances the interests of the Party, which fully avails itself of the State's system without bearing any of the State's costs, with those of citizens of Idaho who have fully constructed, financed, and organized the current primary system. In essence, the State's provision of the primary election system represents a careful balancing of the interests of the parties that voters commit themselves to only one political party's candidates, while ensuring the system is cost effective and accessible to meaningful participation by voters.

The current primary system additionally serves the State's interest of encouraging the full participation of Idaho's voters and ensuring, for example, that independent voters are not

effectively disenfranchised by a Party registration requirement. It also promotes the State interest of protecting voter privacy, which is specifically guaranteed by Article VI, § 1 of Idaho's Constitution.[7] In contrast, the Idaho Republican Party's proposed system would force voters to publicly identify themselves as Republicans or non-Republicans in order to participate in a primary election.

These important State interests support the current primary election system and outweigh the alleged burdens imposed by the current system, particularly as the Idaho Republican Party has failed to point to any evidence supporting its assertion that such a burden exists.

## **CONCLUSION**

For the reasons set forth above, Defendant Secretary of State Ben Ysursa respectfully requests that this Court dismiss this case as a matter of law, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

DATED this 24th day of October, 2008.

*/s/ Michael S. Gilmore*
Michael S. Gilmore
Deputy Attorney General

---

[7] Article VI, § 1, provides, in part: "An absolutely secret ballot is hereby guaranteed … ." Defendant recognizes that the Supreme Court, in Jones, held that voter privacy was not a compelling State interest under the facts of that case. Defendant contends, however, that it is nevertheless an important State interest that outweighs the modest (or nonexistent) burdens alleged by Plaintiff in this case.

MEMORANDUM IN SUPPORT OF DEFENDANT BEN YSURSA'S MOTION FOR SUMMARY JUDGMENT- 18

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of October, 2008, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT BEN YSURSA'S MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| J E SUTTON & ASSOCIATES<br>200 N. 3rd St., Ste. 2 & 3<br>Boise, ID 83701<br>(208) 336-4444<br>Fax: (208) 336-4444<br>Email: jesutton@jesutton.com | ☐ U.S. Mail<br>☐ Hand Delivery<br>☐ Certified Mail, Return Receipt Requested<br>☐ Overnight Mail<br>☐ Facsimile: _____<br>☒ CM/ECF |
| Gary Allen<br>GIVENS PURSLEY<br>P.O. Box 2720<br>Boise, ID 83701-2720<br>garyallen@givenspursley.com | ☐ U.S. Mail<br>☐ Hand Delivery<br>☐ Certified Mail, Return Receipt Requested<br>☐ Overnight Mail<br>☐ Facsimile: _____<br>☒ CM/ECF |
| Harry Kresky<br>LAW OFFICE OF HARRY KRESKY<br>250 W. 57th Street, Suite 2017<br>New York, NY 10107<br>212-581-1516<br>harrykres@aol.com | ☐ U.S. Mail<br>☐ Hand Delivery<br>☐ Certified Mail, Return Receipt Requested<br>☐ Overnight Mail<br>☐ Facsimile: _____<br>☒ CM/ECF |

                                              */s/ Michael S. Gilmore*
                                              Michael S. Gilmore
                                              Deputy Attorney General