CHRIST T. TROUPIS
TROUPIS LAW OFFICE P.A.
1299 E. Iron Eagle, Ste 130
P.O. Box 2408
Eagle, Idaho 83616
Ph: (208) 938-5584
Fax: (208) 938-5482
Email: ctroupis@troupislaw.com

JOHN ERIC SUTTON
J.E. SUTTON & ASSOCIATES
200 N. 3rd St., Ste 2 & 3
Boise, Idaho 83701
Ph: (208) 336-4444
Fax: (208) 336-4494
Email: jesutton@jesutton.com

Attorneys for Plaintiff Idaho Republican Party

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO REPUBLICAN PARTY, et.al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>BEN YSURSA, In his Official Capacity as )<br>Secretary of State of the State of Idaho, )<br>)<br>Defendant. )<br>) | Case No. 1:08-CV-00165-BLW<br><br>RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT BEN YSURSA'S MOTION FOR SUMMARY JUDGMENT |

COMES NOW PLAINTIFF, by and through its attorneys, Christ T. Troupis and John Eric Sutton, in accordance with Rule 7.2(d) of the Local Rules of the United States District Court for the District of Idaho, and submits the following Memorandum of Authorities in Response to Defendant Ben Ysursa's Motion for Summary Judgment.

## ARGUMENT

## I

## THE STATE OF IDAHO DOES NOT HAVE ANY IMPORTANT INTEREST IN FORCING THE IDAHO REPUBLICAN PARTY TO ASSOCIATE WITH NON-REPUBLICANS IN THE SELECTION OF THEIR CANDIDATES

Each state has the power to enact and administer election laws. Commensurate with that power, the states have the right to impose reasonable burdens on voters and political parties. However, the Supreme Court has made it clear that "…when States regulate parties' internal processes they must act within limits imposed by the Constitution. See, e. g., Eu v. San Francisco County Democratic Central Comm., 489 U.S. 214 (1989); Democratic Party of United States v. Wisconsin ex rel. La Follette, 450 U.S. 107 (1981)." *California Democratic Party v. Jones,* 530 U.S. 567, 572-573 (2000).

Consistent with the Constitutional limitations on the state's power to regulate and administer elections, the Supreme Court has held it is impermissible for a state to interfere with a party's freedom of association. Thus, in *Tashjian v. Republican Party of Connecticut,* 107 S. Ct. 544, 479 U.S. 208, 93 L.Ed.2d 514 (1986), the Republican Party of Connecticut enacted a rule calling for a semi-open primary that allowed independent voters to participate in its primary elections. State law mandated a closed primary -- restricting participation to party members. The Supreme Court held that the State's interest in regulating the conduct of elections did not extend to control over the party's decision as to which voters it desired to associate in its primary election. The *Tashjian* Court held:

> "The statute here places limits upon the group of registered voters whom the Party may invite to participate in the "basic function" of selecting the Party's candidates. Kusper v. Pontikes, supra, at 58. The State thus limits the Party's associational opportunities at the crucial juncture at which the appeal to common

principles may be translated into concerted action, and hence to political power in the community."

"…the Constitution grants to the States a broad power to prescribe the "Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices. But this authority does not extinguish the State's responsibility to observe the limits established by the First Amendment rights of the State's citizens. The power to regulate the time, place, and manner of elections does not justify, without more, the abridgment of fundamental rights, such as the right to vote, see Wesberry v. Sanders, 376 U.S. 1, 6-7 (1964), or, as here, the freedom of political association." Id at 215-216.

Our case is the inverse of *Tashjian*, because Idaho law mandates an open primary, whereas the Idaho Republican Party Rule requires a closed primary. But the same Constitutional principles apply with the same force. The Idaho Republican Party has enacted a Platform and Rule requiring that the selection of its candidates be conducted through a closed primary election. Idaho law mandates an open primary election. Idaho does not have the power to abridge the Idaho Republican Party's freedom of political association in the conduct of its partisan primary election.

While the State of Idaho has legitimate state interests in assuring that elections are 'fair and honest' and conducted with 'some sort of order, rather than chaos,' *Burdick v. Takushi,* 504 U.S. 428, 432 (1992), the State of Idaho cannot infringe on First Amendment Rights. It has no interest whatsoever in allowing non-Republicans to choose the Idaho Republican Party's candidates. If the Idaho Republican Party wants to limit the persons eligible to vote for its candidates, the State of Idaho has no legitimate opposing interest that can overcome this constitutionally protected right. Moreover, although the State of Idaho has cited case law that discusses the State's regulatory power over elections in general terms, it has not provided this Court with any specific state interest that would justify continuing to allow non-Republicans to participate in the

Republican Party candidate selection process. Although the State has raised the question of additional expense of printing registration cards and administering the election itself, the Court in *Tashjian* rejected the argument that additional administrative expense alone justified infringement upon a fundamental constitutional right.

> "Appellant contends that the Party's rule would require the purchase of additional voting machines, the training of additional poll workers, and potentially the printing of additional ballot materials specifically intended for independents voting in the Republican primary. In essence, appellant claims that the administration of the system contemplated by the Party rule would simply cost the State too much.
>
> Even assuming the factual accuracy of these contentions, which have not been subjected to any scrutiny by the District Court, the possibility of future increases in the cost of administering the election system is not a sufficient basis here for infringing appellees' First Amendment rights. Costs of administration would likewise increase if a third major party should come into existence in Connecticut, thus requiring the State to fund a third major-party primary. Additional voting machines, poll workers, and ballot materials would all be necessary under these circumstances as well. But the State could not forever protect the two existing major parties from competition solely on the ground that two major parties are all the public can afford. Cf. Anderson v. Celebrezze, 460 U.S. 780 (1983); Williams v. Rhodes, 393 U.S. 23 (1968). While the State is of course entitled to take administrative and financial considerations into account in choosing whether or not to have a primary system at all, it can no more restrain the Republican Party's freedom of association for reasons of its own administrative convenience than it could on the same ground limit the ballot access of a new major party." Id at 218.

The freedom of association guaranteed to the Idaho Republican Party is a fundamental liberty assured by the Due Process Clause. It is therefore entitled to strong protection by this Court absent a compelling contravening state interest. As the Court noted in *Tashjian, supra* at 214:

> "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 460 (1958); see NAACP v. Button, 371 U.S. 415, 430 (1963); Bates v. Little Rock, 361 U.S. 516, 522-523 (1960). The freedom of association protected by the First and Fourteenth Amendments includes partisan political organization. Elrod v. Burns, 427 U.S. 347, 357 (1976) (plurality opinion); Buckley v. Valeo, 424 U.S. 1, 15

(1976). "The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom." Kusper v. Pontikes, 414 U.S. 51, 57 (1973).

If, as both the State and the intervenors ask, the Court is supposed to balance the purported interests of the State of Idaho and the intervenors against the constitutionally protected rights of the Idaho Republican Party, it is incumbent upon them to present specific compelling state interests to weigh in the balance. They have not done so.

The State also claims that requiring persons to register as a Republican before voting in the Republican Party primary violates the Idaho Constitution's guarantee of a secret ballot. Article VI, §1. But that is simply not the case here. First, it must be noted that the selection of Republican candidates is not a general election. It is a party selection process. Non party members do not have a constitutional right to participate in that process if the party chooses to limit participation to its own members. Second, the Supreme Court in *Jones* held that voter privacy was not a compelling state interest. Third, the secret ballot is not compromised by party registration. Registration merely provides which ballot the voter receives. His or her selections on that ballot remain secret.

II

### THE OPEN PRIMARY UNREASONABLY BURDENS THE IDAHO REPUBLICAN PARTY'S CONSTITUTIONAL RIGHT TO FREEDOM OF ASSOCIATION

In *California Democratic Party v. Jones,* 530 U.S. 567 (2000), the Supreme Court held that a 'blanket primary' was an unconstitutional infringement upon a political party's right to freedom of association where by rule, the party had elected to limit its primary selection process to registered party members. The Supreme Court held that a primary

which allowed voters unaffiliated with the party to participate in the selection of the party's candidates forced the party to 'adulterate their candidate selection process – a political party's basic function.'

The Court reasoned that:

"Proposition 198 forces political parties to associate with - to have their nominees, and hence their positions, determined by - those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival. In this respect, it is qualitatively different from a closed primary. Under that system, even when it is made quite easy for a voter to change his party affiliation the day of the primary, and thus, in some sense, to "cross over," at least he must formally become a member of the party; and once he does so, he is limited to voting for candidates of that party." Id at 577.

A fair reading of the State's argument discloses that the State recognizes that the Idaho Republican Party has a constitutionally protected right to limit participation in its primary to members of its own party. However, because the facts in the *Jones* case involved a 'blanket primary' as opposed to an 'open primary,' the Supreme Court limited its decision to the 'blanket primary' at issue in the case. Based on that limitation, the State of Idaho argues that the constitutionality of the open primary in our case is an 'open question of law' and therefore it should be resolved in its favor, citing the dissenting opinion of Justice Powell in *Democratic Party of United States v. Wisconsin ex rel. La Follette,* 450 U.S. 107, 130 n.2 (1981). Justice Powell equated the 'act of voting in the Democratic primary ... as an act of affiliation with the Democratic Party..'

The State's reasoning in this regard is specious on several levels. First, Justice Powell's comments in *La Follette* are not the law, but merely his minority opinion. Second, even though the *Jones* Court did not specifically deal with the open primary, the Court's rationale underlying their decision in *Jones* does not support any material distinction between the 'open primary' and the 'blanket primary.' The *Jones* Court struck

down California's 'blanket primary' law because it opened the party's primary to persons wholly unaffiliated with the party, just as the open primary does to the Idaho Republican Party in Idaho.

> "In sum, Proposition 198 forces petitioners to adulterate their candidate-selection process - the "basic function of a political party," ibid. - by opening it up to persons wholly unaffiliated with the party. Such forced association has the likely outcome - indeed, in this case the intended outcome - of changing the parties' message. We can think of no heavier burden on a political party's associational freedom." *Jones, supra,* at 581-582.

In the open primary as in the blanket primary, participation in the selection of a party's candidate is open to persons wholly unaffiliated with the party. Idaho's open primary law does not require party registration. It does not require a voter to identify herself with the party. That is a central requirement of the Idaho Republican Party's Rule.

Third, in making this argument, the State of Idaho apparently concurs with Justice Powell's minority position, that the act of selecting the Republican Party ballot in the Idaho primary election is *de facto* registration in the Idaho Republican Party. If so, then Idaho has conceded that the Idaho Republican Party is entitled to limit participation in its primary to its members, and the only issue remaining in this case is whether the Idaho Republican Party can require that persons formally identify themselves as party members by registering before voting in the Republican Party primary, or, as the Defendant suggests, that right is already satisfied by *de facto* registration from the mere act of voting.

But that question has already been answered. The party's constitutional right to formally identify those people with whom it wants to associate has been firmly established. As the Court declared in *Jones, supra* at 574:

> "Consistent with this tradition, the Court has recognized that the First Amendment protects "the freedom to join together in furtherance of common political beliefs, *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, at 214-215, (1986) which "necessarily presupposes *the freedom to identify the people who constitute the association, and to limit the association to those people only*," La Follette, 450 U.S. at 122."

Moreover, the Idaho Republican Party Rules mandate that only persons who have registered as party members be allowed to vote in its primary elections. Its rules state:

> **"Article I Section 24:**
> **Party Registration Required to Vote in a Republican Primary Election.**
>
> "Primary elections in the Idaho Republican Party shall be open to all people who have registered as a Republican prior to the Primary election."

The Rule does not provide that selection of a Republican Party ballot in its primary is sufficient for *de facto* registration as a party member. It is solely up to the Idaho Republican Party to decide how it wants to identify its party members. The State of Idaho is not permitted to substitute its own judgment abrogating the Idaho Republican Party's Rule. The Supreme Court rejected such state interference in *Tashjian, supra at 224*:

> "The State argues that its statute is well designed to save the Republican Party from undertaking a course of conduct destructive of its own interests. But on this point "even if the State were correct, a State, or a court, may not constitutionally substitute its own judgment for that of the Party." Democratic Party of United States v. Wisconsin ex rel. La Follette, 450 U.S., at 123-124 (footnote omitted). The Party's determination of the boundaries of its own association, and of the structure which best allows it to pursue its political goals, is protected by the Constitution. "And as is true of all expressions of First Amendment freedoms, the courts may not interfere on the ground that they view a particular expression as unwise or irrational." Id., at 124"

III

## THE WASHINGTON STATE GRANGE CASE HAS NO BEARING ON THE CLAIMS HERE

The State cites *Washington State Grange v. Washington State Republican Party*, 552 U.S. 1, 128 S. Ct. 1184 (2008)(slip opinion) and *Crawford v. Marion County Election Board*, 553 U.S. 1, 128 S. Ct. 1610 (2008)(slip opinion) apparently because in both cases the Supreme Court rejected challenges to election statutes due to lack of evidence of an unreasonable burden on the petitioner's constitutional rights. From these two rulings, the State attempts to conclude that no facial challenge to an election law can be sustained. However, that conclusion simply does not flow from these decisions.

First, neither of the cited cases involved the right of a political party to limit the persons with whom it associates in a primary election. In the *Washington State Grange* case, the Court specifically stated:

> "Unlike California's primary, however, the I-872 primary does not, by its terms, choose the parties' nominees. The choice of a party representative does not occur under I-872. The two top primary candidates proceed to the general election regardless of their party preferences. Whether the parties nominate their own candidate outside the state-run primary is irrelevant." Id at 10.

This is a distinction bearing directly on the Constitutional question presented in a case involving a partisan primary, as the Court noted in *Jones, Supra*, at 585-586.

> "The nonpartisan blanket primary "has all the characteristics of the partisan blanket primary, save the constitutionally crucial one: Primary voters are not choosing a party's nominee." (cited in *Washington State Grange* at 9.)

In *Crawford, supra,* the petitioners were a few voters who objected to an Indiana state law requiring photo identification at the polls. No political party was involved in the case, nor were the party's fundamental right of freedom of association in issue. The

Court upheld the law because it was an 'even-handed, nondiscriminatory' statute that protected the integrity of the electoral process. The Court noted:

> "In *Anderson v. Celebrezze,* 460 U. S. 780 (1983), however, we confirmed the general rule that "evenhanded restrictions that protect the integrity and reliability of the electoral process itself" are not invidious and satisfy the standard set forth in *Harper.* 460 U. S., at 788, n. 9." *Crawford,* at 6.

The claims in our case cannot reasonably be compared to the voter's complaints against Indiana's photo identification requirement, By its terms, Idaho's open primary election law is not even-handed and discriminates against the Idaho Republican Party which has enacted a Platform and Rule mandating that its primary election be closed to non-members of the party. Preserving the open primary in direct conflict with the Party Platform and Rule does not protect the 'integrity and reliability of the electoral process' but in fact denigrates it.

Second, the Supreme Court has already ruled unequivocally that a political party has a constitutionally protected fundamental right to determine the persons with whom it will associate in a primary election, and that interference with this right by the State is a severe infringement and burden in all cases. Contrary to the claims of the State and the intervenors, the decision in *Jones* was not based on the wealth of empirical data on malicious cross-over voting. In fact, the Supreme Court reversed a Ninth Circuit decision that was predicated on its analysis of that empirical data. Instead, the Supreme Court held that these constitutional rights required protection in every application. The Idaho Republican Party does not have the burden to prove specific cases of cross-over voting in Idaho because the threat alone of cross-over voting is sufficient to severely burden the constitutional rights of the party. The Court declared as much in *Jones, supra,* at 879:

> "In concluding that the burden Proposition 198 imposes on petitioners' rights of association is not severe, the Ninth Circuit cited testimony that the prospect of malicious crossover voting, or raiding, is slight, and that even though the numbers of "benevolent" crossover voters were significant, they would be determinative in only a small number of races.(fn9) 169 F.3d, at 656-657. But a single election in which the party nominee is selected by nonparty members could be enough to destroy the party. In the 1860 Presidential election, if opponents of the fledgling Republican Party had been able to cause its nomination of a proslavery candidate in place of Abraham Lincoln, the coalition of intraparty factions forming behind him likely would have disintegrated, endangering the party's survival and thwarting its effort to fill the vacuum left by the dissolution of the Whigs. See generally 1 Political Parties & Elections in the United States: An Encyclopedia 398-408, 587 (L. Maisel ed. 1991). Ordinarily, however, being saddled with an unwanted, and possibly antithetical, nominee would not destroy the party but severely transform it. "[R]egulating the identity of the parties' leaders," we have said, "may . . . color the parties' message and interfere with the parties' decisions as to the best means to promote that message." Eu, 489 U.S., at 231, n. 21."

Third, the Idaho Republican Party has not presented statistical evidence of crossover voting in Idaho because as the State is well aware, no such records are kept by the State of Idaho, which has complete control over the conduct of primary elections. But the absence of statistics specific to Idaho do not diminish the the proof presented in other cases which is just as applicable here. In *Jones,* the Court noted that the blanket primary in California created a 'clear and present danger' of a party's nominee being determined by adherents of an opposing party, and further stated that studies in other states with blanket primaries reached a similar conclusion.

> "The evidence in this case demonstrates that under California's blanket primary system, the prospect of having a party's nominee determined by adherents of an opposing party is far from remote - indeed, it is a clear and present danger. For example, in one 1997 survey of California voters 37 percent of Republicans said that they planned to vote in the 1998 Democratic gubernatorial primary, and 20 percent of Democrats said they planned to vote in the 1998 Republican United States Senate primary. Tr. 668-669. Those figures are comparable to the results of studies in other States with blanket primaries."

There is absolutely no reason to believe that an Idaho voter survey would yield any different result, and in fact, very good reason to believe that Idaho voters are no different than their counterparts in other states.

## IV

### THERE ARE SIGNIFICANT DIFFERENCES BETWEEN IDAHO'S OPEN PRIMARY LAW AND THE IDAHO REPUBLICAN PARTY CLOSED PRIMARY RULE

As a corollary to its adoption of Justice Powell's *de facto* registration argument, the State contends that there is no practical difference between Idaho's Open Primary Law which requires an elector to choose which party's ballot he or she will vote on in a primary election, and the Idaho Republican Party Closed Primary Rule which requires that a person register as a party member before receiving the Idaho Republican Party ballot. However, there are unquestionably factual differences between the two propositions. Under present law, no one identifies himself or herself as a member of a political party prior to voting. There is no record kept of the ballot selected by an elector. The IRP Closed Primary Rule would require formal registration as a party member rather than just selecting a ballot. The person would have to identify himself or herself as a member of the Idaho Republican Party in order to receive its ballot, and that identification would be recorded.

Moreover, the State contradicts its own argument that no practical difference exists between the current primary election system and the closed primary a few pages later in its own memorandum. The State argues that the current Idaho primary system promotes the State interest of voter privacy, and that in contrast the Idaho Republican Party's proposed system would force voters to publicly identify themselves as

Republicans in order to participate in its primary election. State Memo, p. 18, Doc. 26-2. The State also contends that there would be substantial additional costs to implement the proposed system, including creating and maintaining a Republican Party registration system, including creating and printing Republican Party registration cards and maintaining lists of registered Republican voters. State Memo, p. 17, Doc. 26-2.

The State also claims that party registration would not be effective in preventing party raiding. But as previously pointed out by the Court in *Tashjian,* the State has no right to substitute its judgment for the Party's on intra-party matters, such as the appropriateness or effectiveness of party registration. *Tashjian, at 224.*

## CONCLUSION

For the reasons set forth above, the Plaintiff Idaho Republican Party respectfully requests that the Court deny the Defendant Ben Ysursa's motion for summary judgment and grant Plaintiff's motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

Dated: November 12, 2008                TROUPIS LAW OFFICE, P.A.

                                        By _____
                                            Christ T. Troupis
                                            Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFIY that on this _13_ day of November, 2008, I electronically filed the foregoing Memorandum in Opposition to Defendant Ben Ysursa's Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Gary Allen
Givens Pursley
P.O. Box 2720
Boise, Idaho 83701-2720
garyallen@givenspursley.com

Harry Kresky
LAW OFFICE OF HARRY KRESKY
250 W. 57th Street, Ste 2017
New York, NY 10107
harrykresky@aol.com

Michael S. Gilmore
Karin D. Jones
Deputy Attorneys General
Civil Litigation Division
Office of the Attorney General
954 W. Jefferson Street, Second Level
P.O. Box 83720
Boise, ID 83720-0010
mike.gilmore@ag.idaho.gov
karin.jones@ag.idaho.gov