CHRIST T. TROUPIS
TROUPIS LAW OFFICE P.A.
1299 E. Iron Eagle, Ste 130
P.O. Box 2408
Eagle, Idaho 83616
Ph: (208) 938-5584
Fax: (208) 938-5482
Email: ctroupis@troupislaw.com

JOHN ERIC SUTTON
J.E. SUTTON & ASSOCIATES
200 N. 3rd St., Ste 2 & 3
Boise, Idaho 83701
Ph: (208) 336-4444
Fax: (208) 336-4494
Email: jesutton@jesutton.com

Attorneys for Plaintiff Idaho Republican Party

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO REPUBLICAN PARTY, et.al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> BEN YSURSA, In his Official Capacity as ) <br> Secretary of State of the State of Idaho, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. 1:08-CV-00165-BLW <br><br> RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT INTERVENOR'S MOTION FOR SUMMARY JUDGMENT |

COMES NOW PLAINTIFF, by and through its attorneys, Christ T. Troupis and John Eric Sutton, in accordance with Rule 7.2(d) of the Local Rules of the United States District Court for the District of Idaho, and submits the following Memorandum of Authorities in Response to Defendant Intervenor's Motion for Summary Judgment.

# ARGUMENT

## I

## DEFENDANT INTERVENORS DO NOT HAVE ANY CONSTITUTIONALLY PROTECTED RIGHT TO PARTICIPATE IN THE IDAHO REPUBLICAN PARTY PRIMARY IN THE SELECTION OF THEIR CANDIDATES

Defendant Intervenors represent the group of persons who proudly proclaim that they "are persons who do not wish to affiliate with any political party and value their non-affiliation." Defendant-Intervenor Memo, p. 9. Doc. 25-2 Nonetheless, they seek to prevent the Idaho Republican Party from excluding their participation in its selection of its own party candidates.

As an overview, it should be noted that the Intervenors' position is entirely inconsistent with that of the State of Idaho, which contends that the act of voting for Republican party nominees in a primary election is equivalent to affiliation with the party and indistinguishable from registration as a Republican party member. Defendant-State's Memo, p. 10, Doc. 26-2

Defendant Intervenors' argument is that they want to participate in selecting Republican party candidates, but don't want to affiliate with the Republican party. Their contention was dealt with and rejected by the Supreme Court in *California Democratic Party v. Jones,* 530 U.S. 567, 583-584 (2000),

> "Respondents' third asserted compelling interest is that the blanket primary is the only way to ensure that disenfranchised persons enjoy the right to an effective vote. By "disenfranchised," respondents do not mean those who cannot vote; they mean simply independents and members of the minority party in "safe" districts. These persons are disenfranchised, according to respondents, because under a closed primary they are unable to participate in what amounts to the determinative election - the majority party's primary; the only way to ensure they have an "effective" vote is to force the party to open its primary to them. This also appears to be nothing more than reformulation of an asserted state interest we

have already rejected - recharacterizing nonparty members' keen desire to participate in selection of the party's nominee as "disenfranchisement" if that desire is not fulfilled. We have said, however, that a "nonmember's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications." Tashjian, 479 U.S., at 215-216, n. 6 (citing Rosario v. Rockefeller, 410 U.S. 752 (1973), and Nader v. Schaffer, 417 F. Supp. 837 (Conn.), summarily aff'd, 429 U.S. 989 (1976)). The voter's desire to participate does not become more weighty simply because the State supports it. Moreover, even if it were accurate to describe the plight of the non-party-member in a safe district as "disenfranchisement," Proposition 198 is not needed to solve the problem. The voter who feels himself disenfranchised should simply join the party. That may put him to a hard choice, but it is not a state-imposed restriction upon his freedom of association, whereas compelling party members to accept his selection of their nominee is a state-imposed restriction upon theirs."

The Defendant Intervenors have confused their right to participate in the electoral process with the right to participate in the candidate selection process of the Idaho Republican Party. As independent voters, they have a Constitutional right to participate freely and fully in any general election conducted in Idaho. This lawsuit does not concern that right or seek in any way to abrogate it. But if they do not wish to affiliate with the Idaho Republican Party, they do not have any Constitutional right to help its membership select its candidates for placement on the general election ballot, and the Idaho Republican Party has a right to close its selection process to nonmembers.

In *Jones, supra,* at 577, the Supreme Court declared:

"Not only does the dissent's principle of no right to exclude conflict with our precedents, but it also leads to nonsensical results. In Tashjian v. Republican Party of Conn., 479 U.S. 208 (1986), we held that the First Amendment protects a party's right to invite independents to participate in the primary. Combining Tashjian with the dissent's rule affirms a party's constitutional right to allow outsiders to select its candidates, but denies a party's constitutional right to reserve candidate selection to its own members. The First Amendment would thus guarantee a party's right to lose its identity, but not to preserve it."

## II

## IDAHO'S OPEN PRIMARY SYSTEM IMPOSES A SEVERE BURDEN ON THE IDAHO REPUBLICAN PARTY'S RIGHT TO FREEDOM OF ASSOCIATION

Defendants accurately state that this case presents a facial challenge to Idaho's Open Primary Law. The Plaintiff Idaho Republican Party contends that Idaho's Open Primary Law severely burdens its right to freely associate with its members in the conduct of its partisan primary election in all present applications. Idaho's law opens up the Republican party primary to persons wholly unaffiliated with the party. This occurs in every precinct in the State of Idaho under current law and in every primary election. Notwithstanding the passage of the Closed Primary Platform and Rule in 2006 and 2007, the State of Idaho conducted an open party primary election in May, 2008.

The party's contention that this conduct severely burdens the party's right to freedom of association is supported by the Supreme Court decision in *California Democratic Party v. Jones, supra.* As the Court declared in *Jones, supra* at 581-582:

> "In sum, Proposition 198 forces petitioners to adulterate their candidate-selection process - the "basic function of a political party," ibid. - by opening it up to persons wholly unaffiliated with the party. Such forced association has the likely outcome - indeed, in this case the intended outcome - of changing the parties' message. We can think of no heavier burden on a political party's associational freedom. Proposition 198 is therefore unconstitutional unless it is narrowly tailored to serve a compelling state interest."

No state can impose an unreasonable burden on a political party's right to freedom of association. Thus, in *Tashjian v. Republican Party of Connecticut,* 107 S. Ct. 544, 479 U.S. 208, 93 L.Ed.2d 514 (1986), the Republican Party of Connecticut enacted a rule allowing independent voters to participate in its primary elections. State law restricted participation to party members. The Supreme Court held that the State's

interest in regulating the conduct of elections did not extend to control over the party's decision as to which voters it desired to associate. The *Tashjian* Court noted:

> "The statute here places limits upon the group of registered voters whom the Party may invite to participate in the "basic function" of selecting the Party's candidates. Kusper v. Pontikes, supra, at 58. The State thus limits the Party's associational opportunities at the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community."

> "...the Constitution grants to the States a broad power to prescribe the "Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices. But this authority does not extinguish the State's responsibility to observe the limits established by the First Amendment rights of the State's citizens. The power to regulate the time, place, and manner of elections does not justify, without more, the abridgment of fundamental rights, such as the right to vote, see Wesberry v. Sanders, 376 U.S. 1, 6-7 (1964), or, as here, the freedom of political association." Id., at 215-216.

In *Tashjian,* the party wanted to open its primary to independent voters, but the State law restricted participation to party members. In our case, the roles are reversed, but the constitutional principles are identical. The Idaho Republican Party has enacted a Platform and Rule requiring that the selection of its candidates be conducted through a closed primary election. Idaho law mandates an open primary election. While the State of Idaho has legitimate state interests in assuring that elections are 'fair and honest' and conducted with 'some sort of order, rather than chaos,' *Burdick v. Takushi,* 504 U.S. 428, 432 (1992), the State of Idaho cannot infringe on First Amendment Rights.

Defendant Intervenors argue that the State is not required to provide a party primary, citing *Washington State Grange v. Washington State Republican Party,* 552 U.S. 1, 128 S. Ct. 1184 (2008)(slip opinion). While that is true, it is also irrelevant since Idaho law does provide for a party primary. The Idaho legislature may abolish the party primary altogether, or it may adopt the Washington model. But the issue for this Court is

the constitutionality of the current Open Primary law in light of the Idaho Republican Party Closed Primary Rule.

Defendant Intervenors attempt to distinguish the holding in *Jones* on the grounds that California was a partisan registration state and that the harm was quantified with empirical data. Neither of these claims are material. First, although California is a partisan registration state, the Court held that the party's constitutional rights were violated because Proposition 198 provided that "all persons entitled to vote, including those not affiliated with any political party, shall have the right to vote...for any candidate regardless of the candidate's political affiliation." Second, although empirical data was presented, its results were discounted by the Ninth Circuit, which held that "the prospect of malicious crossover voting is slight." Nonetheless, the Supreme Court found a constitutional violation that constituted a severe burden on the party's freedom of association. The Supreme Court ruled that the occurrence of cross-over voting in a single election could be enough to destroy a party. Quantification of the burden or harm was thus not a critical component of the Court's decision in *Jones*. Rather, it was the fundamental nature of the protected right and the likelihood of affecting the parties' message that the Court deemed important.

Defendant Intervenors' objection to lack of quantification of the harm to the Republican Party appears disingenuous in light of their claim that Defendant Intervenors will suffer substantial harm by reason of their proposed exclusion from Republican Party primaries. On the one hand, Defendant Intervenors argue that the Idaho Republican Party cannot prove that cross-over voting occurs in their primary elections to any significant degree. On the other hand, Defendant Intervenors argue that they must

preserve their right to cross-over and vote in Republican primary elections. In fact, they tout the claimed effect that independent voters have had in Idaho contested primary elections. They note: "Furthermore, the Republican primary, surprisingly often, provides the only opportunity for voters to participate in a contested election. In both 2006 and 2008, 11 legislative seats included a Republican primary with no general election opponent. If county elections and token opponents were included, the total would lbe much higher." Defendant-Intervenor's Memo, p. 3-4, Doc. 25-2.

## III

## THE CASES CITED BY DEFENDANT-INTERVENOR DO NOT SUPPORT THEIR CLAIMS IN THIS CASE

Defendant Intervenors claim that subsequent cases involving challenges to primary election systems failed because the proponents did not present evidence to demonstrate the harm engendered by non-affiliated voter participation in the primary. *Washington State Grange v. Washington State Republican Party,* 552 U.S. 1, 128 S. Ct. 1184 (2008) did not involve the right of a political party to determine who could participate in its partisan primary election. Instead, it involved a non-partisan primary identifying the two top vote-getters. In its decision, the Supreme Court distinguished the Washington primary election system from party primaries. The reason that the Supreme Court required the petitioners to show evidence of harm from the state sponsored non partisan primary was that it did not purport to be a party primary.

The Court specifically stated:

"Unlike California's primary, however, the I-872 primary does not, by its terms, choose the parties' nominees. The choice of a party representative does not occur under I-872. The two top primary candidates proceed to the general

election regardless of their party preferences. Whether the parties nominate their own candidate outside the state-run primary is irrelevant." Id., at 10.

This is a constitutional distinction as the Court noted in *Jones, Supra*, at 585-586.

"The nonpartisan blanket primary "has all the characteristics of the partisan blanket primary, save the constitutionally crucial one: Primary voters are not choosing a party's nominee." (cited in *Washington State Grange* at 9.)

Moreover, the Court in *Washington State Grange, supra,* noted that the Washington primary statute, unlike Idaho's Open Primary law, had yet to be implemented.

"The State has had no opportunity to implement I-872, and its courts have had no occasion to construe the law in the context of actual disputes arising from the electoral context, or to accord the law a limiting construction to avoid constitutional questions." Id., at 7.

Defendant Intervenors assert that the *Washington State Grange* case stands for the proposition that if a statute imposes only modest burdens on a political party's associational rights, the State need only demonstrate that the burden is counterbalanced by important state interests. Id, at 1191-92. That however is only the case "if the statute imposes only modest burdens on a political party's associational rights..." The Supreme Court found that the Washington statute did not severely burden the party's associational rights only because it created a nonpartisan primary. It did not purport to choose a party's nominee.

Nor is the Court's decision in *Democratic Party v. Barbour,* 529 F.3d 538 (5th Cir. 2008) material to our case. In *Barbour,* the State of Mississippi enacted a semi-closed primary law. The Democratic Party challenged its constitutionality and the Court dismissed the case as not ripe for adjudication. Unlike our case, the Mississippi semi-closed primary law had never been implemented; the parties, not the State, conducted

their own partisan primaries; the Mississippi State Democratic Party had not taken any action to show it intended to hold a closed primary (such as adoption of a Rule or Platform); and while conducting its own partisan primary elections, the Mississippi State Democratic Party had not attempted to limit participation in its own partisan primaries..

Intervenors point to the discussion in *Miller v. Brown,* 503 F.3d 360 (4th Cir. 2007) of a purportedly lesser intrusive alternative to the closed primary. But the 'voter loyalty pledge' document referenced appears more onerous than mere registration. Moreover, this discussion skirts the constitutionality issue entirely. The point is that Idaho law provides for a party primary. The Idaho Republican Party has a right to participate in that primary. It also has a right to determine who participates in its primary according to its rules. So long as Idaho continues to provide for a party primary, it must provide access to that primary to political parties consistent with those rules.

The Intervenors' citation of *Miller* is important on the question of the existence and nature of the harm to the Idaho Republican Party in this case. Although the intervenors continue to assert that the Idaho Republican Party must quantify the extent of cross-over voting or the effect of the prospect of such voting on the party's message, the Court in *Miller, supra,* at 317-318, eschewed that notion entirely. That Court ruled that the mere existence of the open primary law created a constitutional injury.

> "Focusing on the plaintiffs' injuries reveals that their alleged constitutional injuries are not conjectural or hypothetical. The participation of Democrats in the plaintiffs' upcoming primary is inevitable. Knowing their upcoming process for selecting a nominee will include Democrats prevents the plaintiffs from formulating a message and selecting the candidates best tailored to their party's interests. *See Clingman v. Beaver,* 544 U.S. 581, 600, 125 S.Ct. 2029, 161 L.Ed.2d 920 (2005) (O'Connor, J., concurring) ("And the choice of who will participate in selecting a party's candidate obviously plays a critical role in determining both the party's message and its prospects of success in the electoral contest.").

The plaintiffs' goal to nominate the candidate who best represents the interests of the Republican Party in the 11th Senatorial District is thwarted if the plaintiffs must account for Democrats voting in their primary. *See Jones,* 530 U.S. at 577-82, 120 S. Ct. 2402 (recognizing the effects of crossover voting on a political party's right to freely associate). Knowing that voters wholly unaffiliated with the plaintiffs' party will participate in their primary dramatically changes the plaintiffs' decisions about campaign financing, messages to stress, and candidates to recruit. Because campaign planning decisions have to be made months, or even years, in advance of the election to be effective, the plaintiffs' alleged injuries are actual and threatened. *See New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1500-01 (10th Cir. 1995) (finding injury from the mere existence of a New Mexico statute relating to campaign expenditures that caused congressman to engage in fundraising differently than he otherwise would have, even though the congressman had not yet announced his intention to run for office).

The mere existence of the open primary law causes these decisions to be made differently than they would absent the law, thus meeting the standing inquiry's second requirement of a causal connection between the plaintiffs' injuries and the law they challenge. *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 41-42, 96 S. Ct. 1917, 48 L.Ed.2d 450 (1976). The open primary law causes the plaintiffs to associate with Democrats during the candidate-selection process. Under Virginia law, Democrats cross over and vote in the Republican primary free of procedural impediments, such as changing voter registration or paying a fee. Accounting for Democrats in the primary causes the plaintiffs to alter campaign decisions. *See Jones,* 530 U.S. at 581-82, 120 S. Ct. 2402 ("Such forced association has the likely outcome . . . of changing the parties' message."). "We can think of no heavier burden on a political party's associational freedom." *Id.* at 582, 120 S. Ct. 2402. Undoubtedly, a causal connection exists between the open primary law itself and the plaintiffs' alleged injuries."

## CONCLUSION

For the reasons set forth above, the Plaintiff Idaho Republican Party respectfully requests that the Court deny the Defendant Intervenor's motion for summary judgment and grant Plaintiff's motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

Dated: November 13, 2008  TROUPIS LAW OFFICE, P.A.

By _____
Christ Troupis
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFIY that on this 13th day of November, 2008, I electronically filed the foregoing Memorandum in Opposition to Defendant Intervenor's Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Gary Allen
Givens Pursley
P.O. Box 2720
Boise, Idaho 83701-2720
garyallen@givenspursley.com

Harry Kresky
LAW OFFICE OF HARRY KRESKY
250 W. 57th Street, Ste 2017
New York, NY 10107
harrykresky@aol.com

Michael S. Gilmore
Karin D. Jones
Deputy Attorneys General
Civil Litigation Division
Office of the Attorney General
954 W. Jefferson Street, Second Level
P.O. Box 83720
Boise, ID 83720-0010
mike.gilmore@ag.idaho.gov
karin.jones@ag.idaho.gov

_____