Gary G. Allen (Idaho SB # 4366)
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701-2720
Telephone: 208-388-1200
Facsimile: 208-388-1300
Email: GaryAllen@givenspursley.com
S:\CLIENTS\10240\1\Def-Int Mem in Opp to IRP MSJ and in Supp of Def MSJ.DOC

Harry Kresky
LAW OFFICE OF HARRY KRESKY
250 W. 57th Street, Ste. 2017
New York, NY 10107
Telephone: 212-581-1516
Facsimile: 212-581-1352
Email: HarryKres@aol.com

Attorneys for Defendants-Intervenors

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| THE IDAHO REPUBLICAN PARTY, *et al.*,<br><br>Plaintiffs,<br>vs.<br><br>BEN YSURSA, in his Official Capacity as Secretary of State of the State of Idaho,<br><br>Defendants. | Case No. 1:08-cv-00165-BLW<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT YSURSA'S AND THEIR OWN MOTION FOR SUMMARY JUDGMENT** |

INTRODUCTION

Defendants-Intervenors submit this memorandum of law in opposition to plaintiffs' motion for summary judgment and in further support of defendant Ysursa's and their own motion for a judgment dismissing the complaint.[1]

---

[1] As can be seen from Defendants-Intervenors' Rule 7.1(c)(2) statement there, while there are no factual issues in dispute, there are several conclusionary statements made in plaintiffs' Rule 7.1(b)(1) statement which are disputed.

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT YSURSA'S AND THEIR OWN MOTION FOR SUMMARY JUDGMENT - 1**

# ARGUMENT

The Idaho Republican Party ("IRP") fundamentally misunderstands the nature of this case. First, they mischaracterize the case as an as-applied challenge when they offer no specific facts or circumstances to support the claim. Plainly, the claim is a facial challenge in which the IRP must prove there is no reasonable set of circumstances under which the law may be constitutionally applied.

Second, as discussed in Defendants-Intervenors' summary judgment brief, Idaho law grants numerous privileges to political parties who choose to qualify for ballot status. The IRP is not required to accept these privileges and can participate fully in the election process by other means – for example, by placing independent candidates on the ballot. The public benefit the State of Idaho (the "State") requires in exchange for the privilege of qualified party status is that all registered voters be allowed to choose whether they will affiliate with the party to vote in its primary election. Defendants-Intervenors contend this system places a modest, if any, burden on the IRP's associational rights.

The IRP simply ignores the measure of the burden and contends that it has a right to require the State to conduct the primary as the IRP directs:[2]

> The query begins and ends with the enactment of the Closed Republican Party Primary Rule by the Idaho Republican Party. The Idaho Republican Party made a policy decision to close its candidate selection process to all non-party members. The Party had the right and power to make that policy decision, and has a constitutionally protected right to have that decision enforced by this Court and carried out by the State of Idaho.

---

[2] At his deposition, Norm Semanko the State Chairperson of the IRP denied that this case was about who has the right to control Idaho's primary system, the State of Idaho or the IRP. Deposition of Norm Semanko ("Dep."), pp. 144-51, quoted on pp. 7-8 of Defendants-Intervenors' Memorandum of Law in Support of their Motion for Summary Judgment (Dkt. No. 25-2). His statement appears to contradict the position taken by counsel in the IRP's brief.

Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (Dkt. No. 28), p. 7.

The case law cited by the IRP does not support its position. *Democratic Party of U. S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107 (1981), by its own terms does not address the constitutionality of an open primary:

> The question in this case is not whether Wisconsin may conduct an open primary election if it chooses to do so, or whether the National Party may require Wisconsin to limit its primary election to publicly declared Democrats.

*LaFollette*, 450 U.S. at 120.

Indeed, the question the Supreme Court addressed was a narrow one:

> Rather, the question is whether, once Wisconsin has opened its Democratic Presidential preference primary to voters who do not publicly declare their party affiliation, it may then bind the National Party to honor the binding primary results, even though those results were reached in a manner contrary to National Party rules.

*Id.*, at 120.

The system in *LaFollette* was fundamentally different from the Idaho Republican primary. In *LaFollette,* Democrats chose their delegates to the National Convention through a private caucus. The State of Wisconsin sought to bind the hands of those delegates, selected by the party faithful, in a primary in which voters did not state a party preference. *Id.* at 112. In contrast, the Idaho law at issue here governs nomination for public office. It does not seek to bind the IRP or delegates to an IRP convention in any way. Further, as discussed below, the IRP has several options to explore if it does not wish to participate in the state-funded primary.

Likewise, plaintiffs seek to go way beyond the holding in *California Democratic Party v. Jones*, 530 U.S. 567 (2000). First, the Supreme Court distinguished between a blanket primary

(where voters can choose to vote for any candidate for any office regardless of party affiliation) and an open primary such as Idaho's where a voter can vote in the primary of only one party and, in effect, make a decision to affiliate with a particular party for the primary election. The *Jones* majority specifically noted that it was not ruling on the legitimacy of an open primary. *Id.* at 577. Furthermore, as noted in Defendants-Intervenors' moving papers, Idaho, unlike California, is a non-partisan registration state, so the fact of, much less the extent of, "cross-over voting" cannot be determined.

In *Jones*, *LaFollette* and the other cases attempting to balance the rights of parties against the rights of states to regulate primary elections, the courts have been careful to fashion a remedy narrowly tailored to alleviate a concrete, identifiable and significant burden on the parties. In *LaFollette,* that burden consisted in tying the hands of delegates to the Democratic Party National Convention. In *Jones* it was the impact of identified cross-over voters from other political parties deliberately targeting and attempting to influence the outcome of the primary election for a particular public office.

No such burden is asserted by plaintiffs' in the instant litigation. Indeed, their Chairperson explicitly denied the existence of any actual impact on the outcome of the IRP's primary election. Instead, plaintiffs choose to rely on a broad assertion of the Party's right to set the terms of its primary election, the desires of the State of Idaho and its citizens as expressed in long standing legislation to the contrary.

Acquiescence in plaintiffs' position that the State of Idaho is required to give effect to the rules of the IRP (something no court has held), would, indeed start us down a slippery slope. If the IRP can force the State to impose partisan registration simply by adopting a party rule, what prevents a political party from adopting other tests that the State has to implement on their behalf?

Could it compel the State to require that a voter demonstrate knowledge of the IRP's platform or sign a pledge that he or she agrees with a particular party position on a controversial issue like abortion or school vouchers as a condition for casting a vote?

The group most burdened by the outcome desired by plaintiffs would be the 28 percent of Idaho voters who do not identify with a political party. They would be forced to register into one or be excluded from the first round of voting for public officials. Plaintiffs justify this outcome in one of the resolutions of the IRP that laid the groundwork for this lawsuit, "Whereas, the Idaho Republican Party is a private political party and not an agent for the state of Idaho…." (IRP brief p. 2) This rationale, which would permit the unrestricted exclusion of persons from a major party primary, was rejected more than 60 years ago:

> We think that this statutory system for the selection of party nominees for inclusion on the general election ballot makes the party which is required to follow these legislative directions an agency of the state in so far as it determines the participants in a primary election. The party takes its character as a state agency from the duties imposed upon it by state statutes; the duties do not become matters of private law because they are performed by a political party.

*Smith v. Allwright,* 321 U.S. 649, 663 (1944) (which struck down the all-white primary established by the Democratic Party of Texas).[3]

---

[3] While the *Jones* Court sought to narrow the implications of this holding, it nonetheless stated:

> We have recognized, of course, that States have a major role to play in structuring and monitoring the election process, including primaries…
>
> What we have not held, however, is that the processes by which political parties select their nominees are, as respondents would have it, wholly public affairs that States may regulate freely. To the contrary, we have continually stressed that when States regulate parties' internal processes they must act within limits imposed by the Constitution.

*Jones, supra*, at 572-73.

A further weakness of Plaintiffs' position is exposed in the following statement in Paragraph 4 of the affidavit of Norm Semanko, dated October 23, 2008 (Dkt. No. 28-5):

> Idaho law provides that the selection of party nominees for Idaho and national office <u>may</u> be made through the Idaho Primary Election process established under Idaho Code Sec. 34-101 et. seq. In accordance with its right under Idaho law, the Idaho Republican Party <u>has chosen</u> to participate in the Idaho Primary Election process for the purpose of selecting its Party's nominees for public office at the local, state, and federal levels of government. (Emphasis added.)

In other words, the IRP has failed to ripen any rights it may have to challenge the primary system by refusing to seek to implement, or even to consider, options such as nominating its candidates at a caucus, open only to voters who declare their support for the Party (as the Idaho Democratic Party conducts its presidential delegate-selection process). Further, the IRP offers no reason why other options, such as conducting a "firehouse" or private primary likewise restricted to party members might not be an appropriate remedy for the burdens the IRP alleges. At his deposition, Chairperson Semanko rejected all of these alternatives as unacceptable.[4] This rejection cannot be reconciled with the IRP's claim of an unconditional burden, since it has refused to explore options that would alleviate the burden. Rather, the Party seeks to avail itself of the state-financed primary and the legitimacy it confers on its candidates, but only on its terms.

A similar issue was before the Court in *Miller v. Brown*, 503 F.3d 360, 367-68 (4th Cir. 2007). The Court of Appeals held that the existence of an alternative to the state run primary distinguished the case from *Jones,* and negated any claim by the Virginia Republican Party that the open primary imposed an impermissible burden on it:

> Here, we need not decide whether Virginia's open primary statute, viewed in isolation, impermissibly burdens a political party's right to associate with those who share its beliefs. That is because it is

---

[4] Dep. pp. 153-56, 176-77. (Exhibit A to Dkt. 25-3).

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT
YSURSA'S AND THEIR OWN MOTION FOR SUMMARY JUDGMENT - 6**

clear that § 24.2-530-when properly viewed in the context of other methods of nomination permitted by Virginia law-does not facially burden political parties' associational rights.

As explained above, Virginia allows political parties to nominate candidates not only by state-run primary but also by other methods controlled and funded by the party. And, by merely choosing any of these other options, a party is free to limit its candidate selection process to voters who share its political views. Thus, the "forced association" that the Supreme Court has condemned, *Jones,* 530 U.S. at 581, 120 S.Ct. 2402, simply is not present here. Indeed, neither of the two Supreme Court decisions holding primary laws unconstitutional involved a statute that represented only one of several options for candidate nomination. *See id.* at 569, 120 S.Ct. 2402 (indicating that under California law, political parties could only nominate candidates through primaries); *cf. Tashjian,* 479 U.S. at 211, 107 S.Ct. 544 (explaining that although political parties in Connecticut used conventions to select a "party-endorsed candidate," any candidate not endorsed by the party but who received at least 20 percent of the votes at the convention could challenge the party-endorsed candidate in a primary). We agree with the district court that it is constitutionally significant that the primary laws in those cases were "both mandatory and exclusive." *Miller,* 465 F.Supp.2d at 591.

The Committee nevertheless argues that because Virginia allows political parties to select their candidates by primary, a party has a constitutional right to restrict participation in the primary to persons of its choosing. But as the district court emphasized, a party has no constitutional right even to select its nominees by primary. *See Am. Party of Tex. v. White,* 415 U.S. 767, 781, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974) (holding that states may dictate the method by which political parties select their nominees). Further, while the Committee argues that a primary has certain advantages over other forms of nomination-such as reduced cost to the party and broader exposure of party candidates to the public-there is no constitutional requirement that Virginia hold a primary at all. And, again, a party is free to select from various methods of nomination in which it can exclude voters who do not share its views-including a closed primary conducted and funded by the party.[FN7] It is only when the party chooses to hold a primary operated and funded by the state that it must allow all voters to participate.

FN7. *See supra,* at 362 & n. 3.

> In sum, because Virginia makes available to political parties
> multiple options for restricting their candidate selection process to
> individuals of their choosing, the refusal by the state to fund and
> operate a closed primary does not burden parties' right of
> association. *See Miller,* 465 F.Supp.2d at 595 (holding that
> "[s]ection 24.2-530 is constitutionally sound when engrafted onto a
> statutory scheme providing for alternative, less restrictive means of
> candidate selection"). We therefore affirm the holding of the
> district court that § 24.2-530 is facially constitutional.[5]

The position taken by the IRP is extreme. It rejects alternatives that may be already available to it. It will not consider alternatives adopted by its sister party in Virginia. Nothing short of this Court rewriting Idaho law and instituting partisan registration will satisfy it. No court in the land has directed relief even approaching what the IRP requests in its intrusiveness into the political life of the citizens of a sovereign state, and the burden it imposes on those who value their independence.

## CONCLUSION

For all of the above reasons, and those set forth in Defendants-Intervenors moving papers, plaintiffs' motion for summary judgment should be denied, and an order entered dismissing the complaint with prejudice.

DATED this 17th day of November, 2008.

GIVENS PURSLEY LLP

/s/ Gary G. Allen
GARY G. ALLEN

---

[5] The Court went on to address the situation where an open primary was forced on the party by a candidate's right to demand one. Even there, however, the Court went no further than to allow the Republican Party to challenge voters who would not pledge their allegiance to the Republican Party. The IRP has likewise rejected this alternative. Dep. 144-45.

LAW OFFICE OF HARRY KRESKY

/s/ Harry Kresky
HARRY KRESKY

Attorneys for Defendants-Intervenors THE COMMITTEE FOR A UNITED INDEPENDENT PARTY, INC.; the AMERICAN INDEPENDENT MOVEMENT OF IDAHO; its Chairman MITCH CAMPBELL; JOHN HAIGHT; CALVIN LEMAN; ANDREW LOGSDON; BARBARA NELSON; LAUNA NOBLE; LaMAR ORTON; JASON RAMSEY; BOYD STOKES; LAURA PIKE CAMPBELL and JOSEPH BRITTON

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of November, 2008, I submitted this foregoing to the Clerk of the Court for service on CM/ECF Registered Participants as reflected on the Notice of Electronic Filing, including, but not limited to, the following:

| | |
|---|---|
| John Eric Sutton | jesutton@jesutton.com |
| Charles Crawford Crafts | idaholitigator@yahoo.com |

                                              /s/ Gary G. Allen
                                              Gary G. Allen