LAWRENCE G. WASDEN
ATTORNEY GENERAL

BRIAN KANE (ISB No. 6264)
Assistant Chief Deputy Attorney General

STEVEN L. OLSEN (ISB NO. 3586)
Chief of Civil Litigation Division

MICHAEL S. GILMORE (ISB NO. 1625)
KARIN D. JONES (ISB NO. 6846)
Deputy Attorneys General
Civil Litigation Division
Office of the Attorney General
954 W. Jefferson St.
P. O. Box 83720
Boise, ID  83720-0010
Telephone:  (208) 334-4130
Fax:  (208) 854-8073
mike.gilmore@ag.idaho.gov
karin.jones@ag.idaho.gov

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE IDAHO REPUBLICAN PARTY, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> BEN YSURSA, In his Official Capacity as Secretary of State of the State of Idaho, <br><br> Defendant. | Case No. 1:08-CV-00165-BLW <br><br> **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT BEN YSURSA'S MOTION FOR SUMMARY JUDGMENT (DKT. No. 26)** |

COMES NOW Defendant Ben Ysursa, Secretary of State of the State of Idaho, by and through his undersigned counsel of record, and submits this Reply Memorandum in Support of Defendant Ben Ysursa's Motion for Summary Judgment, Dkt. No. 26.

## BACKGROUND

Defendant Ysursa moved for summary judgment that Idaho's primary election laws are constitutional and that his administration of those laws should not be enjoined. Dkt. No. 26. Plaintiff's Opposition to Defendant Ben Ysursa's MSJ (Opp. Mem.) presented four arguments,

none of which meets the threshold for finding Idaho's primary election laws unconstitutional. Dkt. No. 34. This Reply refutes those arguments in turn after first generally reviewing the provisions of the United States Constitution that apply to this case.

## ARGUMENT

States may prescribe the "Times, Places and Manners of holding Elections." Art. I, § 4, cl. 1. The First Amendment does not explicitly address associational rights, but case law holds that political parties' associational right are encompassed by the First Amendment. E.g., see discussion in California Democratic Party v. Jones, 530 U.S. 567, 574-576 (2000). But, associational rights of political parties are not absolute. E.g., Morse v. Republican Party of Virginia, 517 U.S. 186, 204-205 (1996) (party demand of payment of registration fee from delegates to state party convention that would choose party's nominees for general election ballot violated Voting Rights Act); Storer v. Brown, 415 U.S. 724, 730 (1974) (State may prevent losing factions within a party from splintering from the party and attempting to run as independents).

There can be tensions between Article I, § 4, cl. 1 and the First Amendment. When a political party claims that its associational rights trump a State's primary election law, the constitutional questions "cannot be resolved by any litmus-paper test"; the Court must "consider the character and magnitude of the asserted injury" and "must identify and evaluate the precise interests put forward by the State as justifications" for its election laws and "must … determine the legitimacy and strength of each of those interests [and] the extent to which those interests make it necessary to burden" the plaintiff political party. Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 213-214 (1986) (citations and internal punctuation omitted).

In this case Plaintiff Idaho Republican Party ***has not proven*** any burdens that Idaho's primary election laws impose upon the selection of its nominees from the Party's candidates in the primary election or upon the messages and positions articulated by its candidates in the primary election. Gilmore Affidavit, Dkt. No. 26-8; Exhibits to Gilmore Aff., Dkt. Nos. 26-9 thru 26-12; Defendant's Statement of Material Facts Etc., Dkt. No. 26-13. Given the total lack of evidence of any adverse effects of Idaho's primary election laws upon the Party and further given

that the Party has not even attempted to show a single instance in which Idaho's primary election law was unconstitutional as applied, the Party must fall back to a facial challenge.

### I. IDAHO'S OPEN PRIMARY FURTHERS REASONABLE STATE INTERESTS, AND IDAHO NEED NOT IDENTIFY COMPELLING INTERESTS OR OVERCOME STRICT SCRUTINY TO DEFEND ITS OPEN PRIMARY

Plaintiff argues that Idaho has no "important interests" that support its open primary, indeed "no legitimate interest whatsoever," and that Idaho must identify "compelling interests" to defend its primary. Opp. Mem., Dkt. No. 34, pp. 2, 3, 4. The State disagrees. Its open primary serves rational State interests. Every Idaho voter may vote for candidates of the party with which the voter most closely identifies. The absolute secrecy of each voter's ballot is maintained, as required by Idaho Const., Art. VI, § 1, while political parties remain free to identify voters as party members. County clerks need not incur the time and expense of creating and maintaining Republican Party registration rolls and of policing primary elections to determine which voter has registered with and may vote for Republican candidates. Precinct election workers can give one ballot to all voters and need not maintain multiple ballots for the primary election. No one has suggested that these interests are anything but legitimate; the question becomes whether these interests are sufficient to overcome any burdens that Plaintiff may try to prove. Tashjian, supra. Plaintiff has proven no burdens, so there is nothing to overcome.

Plaintiff cites Tashjian for the proposition that the "Supreme Court held that the State's interest in regulating the conduct of elections did not extend to control over the party's decision as to which voters it desired to associate in its primary election." Opp. Mem., Dkt. No. 34, p. 2. Plaintiff's statement is broader than Tashjian's holdings. Tashjian considered the Connecticut Republican Party's (CRP's) challenge to Connecticut's closed primary, in which only voters previously registered as members of a political party could vote for that party's candidates in the primary election. 479 U.S. at 210-211 and n.1. The CRP adopted a rule that voters registered as Republicans and voters not registered as a member of another political party (*i.e.*, independents) could vote for Republican candidates for certain statewide offices, but not for other offices, *e.g.*, legislative offices. Id. at 212. Tashjian held that under the circumstances the statute denying the

CRP the ability to invite independents into part of its nominating process unconstitutionally burdened its First Amendment associational rights, id. at 225, and did not violate the Qualification Clauses of Article I, § 2, and of the Seventeenth Amendment, id. at 229. Tashjian mentioned open primaries in a footnote; it did not hold that open primaries were unconstitutional. Id. at 222, n.11. Further, Tashjian articulated that formal party registration does not necessarily determine the right to participate in the nomination of a party's candidates at a primary election:

> Considered from the standpoint of the Party itself, the act of formal enrollment or public affiliation with the Party is merely one element in the continuum of participation in Party affairs, and need not be in any sense the most important. Indeed, acts of public affiliation may subject the members of political organizations to public hostility or discrimination; under those circumstances an association has a constitutional right to protect the privacy of its membership rolls.

Id. at 215 (footnote included in text).

Plaintiff argues that Tashjian rejected administrative expense alone as a sufficient justification for not implementing a party rule regarding who may vote in the primary election. Opp. Mem., Dkt. No. 34, p. 4. Indeed, in that case, where the existing registration system already identified who would be allowed to vote under the CRP rule and where the State already had in place a system in which separate ballots were printed for each major political party, Tashjian rejected additional administrative expense as sufficient justification for not implementing the CRP rule. But, Tashjian did not present a case where an entirely new system of party registration for one party must be created and a new system of election monitoring must be created and enforced. Thus, Tashjian does not require this Court to hold that Idaho's interests underlying its open primary are too insubstantial to justify an open primary.

Fourteen years after Tashjian, in California v. Jones, 530 U.S. 567 (2000), the Supreme Court repeatedly cited Tashjian, id. at 572-576, 583, 585, and also explicitly stated that it was not passing upon the constitutionality of open primaries, id. at 577, n.8. Thus, Tashjian did not decide the issue before this Court: Is an open primary facially constitutional?

Plaintiff argues that Tashjian holds that Idaho needs a compelling State interest to justify its open primary. Opp. Mem., Dkt. 34, p. 5. Tashjian did not hold that only compelling State

interests can justify regulation of primary elections.  See 479 U.S. at 213-214.  To the contrary, reasonable restrictions in election laws are sufficient when they are weighed against modest burdens imposed upon political parties.  Washington State Grange v. Washington State Republican Party, 128 S.Ct. 1184, 1192 (2008); Burdick v. Takushi, 504 U.S. 428, 434 (2002).  Thus, Idaho may impose reasonable restrictions upon the Idaho Republican Party's participation in its open primary if there is no significant burden imposed upon the Party.

Plaintiff Idaho Republican Party has not proven that there are any actual burdens placed upon it.  It maintains that Idaho's open primary "forc[es] the Idaho Republican Party to associate with non-Republicans in the selection of their candidates," Opp. Mem., Dkt. No. 34, p. 2, but it cannot specifically identify any election in which these voters have affected the outcome of a primary election or forced a candidate to change his or her messages or positions during the primary.  Thus, this case stands in stark contrast to Jones, which extensively reviewed the evidence presented in the District Court of the effect of California's blanket primary on the four political parties that were plaintiffs.  530 U.S. at 578-580.

Further, when the Plaintiff's Chairman was asked what standards the Party had to determine which voter is or is not a Republican, or if the Party had any standards by which to disqualify a voter from claiming to be a Republican, Plaintiff acknowledged there were none; instead party identification would be determined by the voter.  See Defendant's Statement of Material Facts Etc., Dkt. No. 26-13, ¶¶ 18-20.  Under the current system, voters self-identify with a party in the voting booth.  Plaintiff asks the Court to change the current system without even attempting to prove that the changed system would in effect differ from the current system.  In short, Plaintiff has not proven as a matter of fact that it suffers any burdens to be weighed against Idaho's legitimate interests in an open primary.

### II. IT IS NOT A FAIR READING OF JONES TO CONCLUDE THAT THERE ARE NO MATERIAL DISTINCTIONS BETWEEN BLANKET AND OPEN PRIMARIES

Plaintiff argues that Jones's underlying rationale—that a blanket primary forced parties to "adulterate their candidate selection process" by opening up their primary selection process to

persons "wholly unaffiliated with the party"—shows that Jones has in the end foreclosed the State's argument in favor of its open primary because it is "solely up to the Idaho Republican Party to decide how it wants to identify its party members." Opp. Mem., Dkt. No. 34, pp. 6, 7, 8.

As noted, Jones did not decide the constitutionality of open primaries. 530 U.S. at 577, n.8. Jones considered California's blanket primary, in which voters could vote for candidates from all four qualifying political parties in the same election. Id. at 570-571. Idaho is different. In its open primary, a voter must exclusively affiliate with (and thus is not wholly unaffiliated with) one and only one party for that election; if not, the voter's ballot is invalidated for all partisan offices. See Ysursa Aff., Dkt. No. 26-3, ¶ 10. As Tashjian itself suggested, voting for a party's candidates in a primary falls within the continuum of participation in party affairs. 479 U.S. at 215. Voters who select Republican candidates in Idaho's primary are not "wholly unaffiliated" with the Idaho Republican Party; in that election they are exclusively affiliated with it.

Plaintiff argues that Jones established a constitutional right "to formally identify those people with whom it wants to associate" in the primary election, citing Jones, 530 U.S. at 574. Opp. Mem., Dkt. 34, p. 7. Indeed, when describing the rise of political parties in the first days of the Union, Jones quoted Democratic Party v. Wisconsin ex rel. La Follette, 450 U.S. 107, 122 (1981), to the effect that freedom to join together to further political beliefs includes "the freedom to identify the people who constitute the association, and to limit the association to those people only." 530 U.S. at 574. Nothing in Idaho law prohibits the Idaho Republican Party from itself creating a membership list and allowing only those people on its membership list to attend its meetings and conventions. But the Idaho Republican Party has not done so. Instead, the Party wants the State to do its job for it by creating a system of party registration and prohibiting any person not registered as a Republican from voting for Republican candidates in the Idaho primary election, even though the Idaho Republican Party has no criteria for determining who is or is not a Republican or challenging any person who claims to be one.

Jones was decided in California, which had existing party registration. Neither Jones nor any other Supreme Court decision holds that party rules can require a State to create a system of

party registration for a primary election when one does not already exist.  Jones does not require this Court to hold that Idaho's open primary is unconstitutional.

Further, all four parties that qualified for the California ballot sued in Jones.  This case is brought by one party, and it will affect other parties.  California courts noted that even small variations in a State's otherwise uniform election system at one party's request may contain the "seeds of Babel."  Green Party v. Jones, 31 Cal.App. 4th 747, 759, 37 Cal.Rptr.2d 406 (1995).

### III.  WASHINGTON STATE GRANGE AND CRAWFORD SHOW THAT THE IDAHO REPUBLICAN PARTY MUST PROVE ITS CASE AS APPLIED AND CANNOT PREVAIL IN A FACIAL CONSTITUTIONAL CHALLENGE

Plaintiff argues that Washington State Grange, supra, and Crawford v. Marion County Election Board, 128 S.Ct. 1610 (2008), have no bearing on their claims.  Defendant agrees that neither case addressed the merits of an open primary.  However, both addressed facial challenges to election statutes, and both rejected them.  The common thread in Washington Grange and Crawford that is discussed below is that debatable adverse factual consequences that plaintiffs alleged in their complaints about the Washington and Indiana election statutes could not be assumed to be true; they had to be proven.

Washington Grange reviewed the Ninth Circuit's affirmance of an injunction against Washington's non-partisan blanket primary, in which all candidates for office run against one another in the primary, with the top two advancing to the general election; candidates may indicate their party preference on the primary election ballot.  The political parties argued and the Ninth Circuit held that the primary was a facially unconstitutional infringement on their associational rights because the parties maintained there would be voter confusion about which candidates were actually associated with the parties.  128 S.Ct. at 1189-1195.  The Supreme Court succinctly reversed because the underlying factual predicate—voter confusion—had not been proven:

> Because [the Washington statute] does not on its face impose a severe burden on political parties' associational rights, and because respondents' arguments to the contrary rest on factual assumptions about voter confusion that can be evaluated only in the context of an as-applied challenge, we reverse.

Id. at 1187.

In Crawford the Supreme Court reviewed the Seventh Circuit's affirmance of a summary judgment that Indiana's voter identification law that required persons who voted at the polls to show a government-issued identification to vote did not severely burden the right to vote and was not facially unconstitutional. 128 S.Ct. at 1613-1615. Again, the Supreme Court noted the lack of evidence to support a determination of facial unconstitutionality and affirmed: "[T]he District Court and the Court of Appeals correctly concluded that the evidence in the record is not sufficient to support a facial attack on the validity of the entire statute." Id. at 1615.

The lesson that Defendant Ysursa draws from these decisions is not, as Plaintiff asserts. "that no facial challenge to an election law can be sustained." Opp. Mem., Dkt. No. 34, p. 9. A facial challenge to an election law that violated the Fifteenth Amendment by denying non-whites the right to vote, that violated the Nineteenth Amendment by denying women the right to vote, that violated the Twenty-Fourth Amendment by imposing a poll tax, or that violated the Twenty-Sixth Amendment by denying eighteen-year olds the right to vote would surely be successful.

Instead, Plaintiff's challenge to Idaho's open primary is explicitly based upon factual allegations that Idaho's open primary affects the outcome of primary elections for Republican nominees and forces Republican candidates in the primary to alter their messages and positions, all to the harm of the Party. Complaint, Dkt. No. 1, ¶¶ 22, 24, 31, 35-39.

These are debatable factual issues upon which the Party bears the burden of persuasion; their assertion cannot be the basis of a successful facial challenge. *Cf.* Washington Grange, 128 U.S. at 1195; Crawford, 128 U.S. at 1621. Idaho's primary election statutes are reasonable and nondiscriminatory among the political parties and supported by politically neutral justifications. Plaintiff has not proven the existence of the burdens upon the Party alleged in its Complaint. Washington Grange and Crawford counsel that this Court should deny Plaintiff's facial challenge under these circumstances for lack of proof. 128 S.Ct at 1190-1196; 128 U.S. at 1621-1624.

Plaintiff also argues that "Jones was not based upon the wealth of empirical data of malicious cross-over voting" and that it "held that these constitutional rights required protection in every application." Opp. Mem., Dkt. No. 34, p. 10. Defendant disagrees. Jones was based upon

evidence at trial of "adherents of an opposing party" "determining the party's nominee" and of "substantial numbers of voters who help select the nominees of parties they have chosen not to join often have policy views that diverge from those of the party faithful."  530 U.S. at 578.  In Jones *evidence* established that the blanket primary placed significant burdens upon California's political parties; it was after reviewing the evidence that Jones, in the passage quoted at the top of page 11 of the Opp. Mem., Dkt. No 34, overturned the Ninth Circuit's ultimate conclusion that California's blanket primary did not impose a severe burden on political parties.  Nothing in Jones suggested that evidence that the Jones trial court considered regarding blanket primaries, where, *e.g.*, voters in one party could target a single candidate in another party while generally voting for candidates in their own party, would *ipso facto* carry over and establish the evidentiary basis for Plaintiff's challenge to Idaho's open primary in this case.

Plaintiff's closing quotation from Jones, Opp. Mem, Dkt. No. 34, p. 11, begins with the words:  "The evidence in this case demonstrates that under California's blanket primary system … ."  None of that evidence transfers to Idaho's open primary.  Plaintiff Idaho Republican Party, like all plaintiffs, bears the burden of introduction of evidence.  It cannot avoid that burden by simply asserting:  "There is absolutely no reason to believe that an Idaho voter survey would yield any different result, and in fact, very good reason to believe that Idaho voters are no different from their counterparts in other states."  Id. at 12.  If that statement were offered into evidence, then some expert must make it, and that expert must be subject to cross examination to test the premises of that statement.  There is no such expert here.

### IV. PLAINTIFF OFFERS NO PROOF THAT IDAHO'S OPEN PRIMARY AND THE REPUBLICAN PARTY RULE WOULD HAVE DIFFERENT EFFECTS ON THE PARTY

Lastly, Plaintiff argues that there are significant differences between Idaho's open primary and the Party rule, but identifies only one:  A voter must register as a Republican before voting for Republican candidates under the Party rule, but need not do so under current law.  The issue is not whether this difference is significant; the issue is whether this difference will impose significant burdens on the Party.  Tashjian, 439 U.S. at 413-414.  The Party has provided no

proof that it will. Without proof of harmful effects, which was offered in <u>Jones</u> and in which the political parties prevailed, and which was not offered in <u>Washington Grange</u> and in which the political parties did not prevail, Plaintiff cannot prevail here. The Court should grant Defendants Ysursa's Motion for Summary Judgment, and the Plaintiff should be denied all relief.

DATED this 1st day of December, 2008.

                                                      */s/ Michael S. Gilmore*
                                                      Michael S. Gilmore
                                                      Deputy Attorney General

---

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of December, 2008, I electronically filed the foregoing Reply Memorandum in Support of Defendant Ben Ysursa's Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| J E SUTTON & ASSOCIATES<br>200 N. 3rd St., Ste. 2 & 3<br>Boise, ID 83701<br>(208) 336-4444<br>Fax: (208) 336-4444<br>Email: jesutton@jesutton.com | Christ T. Troupis<br>TROUPIS LAW OFFICE P.A.<br>1299 E. Iron Eagle, Ste. 130<br>P.O. box 2408<br>Eagle, ID 83616<br>Fax: (208) 938-5482<br>ctroupis@troupislaw.com |
| Gary Allen<br>GIVENS PURSLEY<br>P.O. Box 2720<br>Boise, ID 83701-2720<br>garyallen@givenspursley.com | Harry Kresky<br>LAW OFFICE OF HARRY KRESKY<br>250 W. 57th Street, Suite 2017<br>New York, NY 10107<br>212-581-1516<br>harrykres@aol.com |

                                                      */s/ Michael S. Gilmore*
                                                      Michael S. Gilmore
                                                      Deputy Attorney General