IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE IDAHO REPUBLICAN PARTY, its EXECUTIVE COMMITTEE, its STATE CENTRAL COMMITTEE, and CHAIRMAN, EXECUTIVE DIRECTOR; SIDNEY C. SMITH,<br><br>      Plaintiffs,<br><br>  v.<br><br>BEN YSURSA, in his Official Capacity as Secretary of State of the State of Idaho,<br><br>      Defendant. | Case No. CV-08-165-S-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

The Court has before it Defendant-Intervenors' Motion for Summary Judgment (Docket No. 25), Defendant Ben Ysursa's Motion for Summary Judgment (Docket No. 26), and Plaintiffs' Motion for Summary Judgment (Docket No. 27). The Court heard oral argument on the motions on February 18, 2009, and now issues the following decision.

# BACKGROUND

Under current Idaho law, political party nominees for general elections are chosen at Idaho's primary elections. Any qualified elector may vote in an Idaho

**Memorandum Decision and Order - 1**

primary election without prior registration as a member of a political party.  Idaho Code § 34-411(1).  However, a person voting in a primary election must choose a single political party for which to cast his/her votes.

Idaho Code § 34-904, which applies to paper ballots, provides in relevant part that "there shall be a single primary election ballot on which the complete ticket of each political party shall be printed. . . .  Each political ticket shall be separated from the others by a perforated line that will enable the elector to detach the ticket of the political party voted from those remaining." Thus, Idaho primary election paper ballots are prepared so that all of a political party's candidates are grouped together and physically separated from the candidates of all other political parties on the ballot.  (Ysursa Aff., ¶ 8); Idaho Code § 34-904.  Voters are allowed to place votes for only one party in the ballot box.  (Ysursa Aff., ¶ 10.)  With respect to ballots tallied by optical scanner or computer punch card readers, the optical scanners and computers are programmed not to count any ballots which contain votes for candidates from multiple political parties. (Id.)

In June 2007, the Idaho Republican Party State Central Committee adopted a rule stating, in relevant part, that "[o]nly persons who have registered as a Republican prior to the Primary Election will be allowed to vote on an Idaho Republican Party ballot in that Primary Election."  (Beck Aff., Exhibit A, page 21.)

**Memorandum Decision and Order - 2**

The rule is referred to as the Closed Republican Party Primary Rule.  In 2008, three bills were introduced in the Idaho Legislature dealing with the relationship between the Closed Republican Party Primary Rule and Idaho primary elections, but none were enacted into law.  The Idaho Republican Party, its Executive Committee, its State Central Committee, and its former Chairman, Sidney C. Smith (referred to collectively as "IRP") now seek a declaratory judgment that Idaho's primary election statutes violate IRP's constitutional right to freedom of association under the First Amendment to the United States Constitution.

## ANALYSIS

### I.    Summary Judgment Standard of Review

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id.* at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

**Memorandum Decision and Order - 3**

247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

## II.    Cross-Motions for Summary Judgment

**Memorandum Decision and Order - 4**

IRP seeks a declaratory judgment that Idaho's primary election statutes violate its constitutional right to freedom of association under the First Amendment to the United States Constitution. IRP requests a temporary, preliminary and permanent injunction against the Idaho Secretary of State with respect to enforcement of the Idaho open primary election law in all future Idaho Republican Party primary elections. IRP also requests temporary, preliminary and permanent injunctive relief mandating implementation of the Closed Republican Party Primary Rule, which would restrict participation in all future Idaho Republican Party primary elections to members of the Idaho Republican Party. All parties have moved for summary judgment.

### A.    Standard of Review for Challenging State Election Law

The process by which a political party selects its nominees for general elections is not a wholly public affair which the State may freely regulate. *California Democratic Party v. Jones*, 530 U.S. 567, 573-74 (2000). Instead, the State must act within Constitutional limits when it regulates a political party's internal processes. *Id.* Thus, "[a] court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for

**Memorandum Decision and Order - 5**

the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takashi, 504 U.S. 428, 434 (1992)* (Internal citations and quotations omitted).

Under this standard, the rigorousness with which a court inquires into the propriety of a state election law "depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Id.* On the one hand, a state regulation must be narrowly drawn to advance a compelling State interest when those rights are subjected to severe restrictions. *Id.*; *see also Washington State Grange v. Washington State Republican,* 128 S.Ct. 1184, 1192 (2008). On the other hand, a state's regulatory interests generally justify the restrictions when the provision of a state election law imposes only reasonable, nondiscriminatory restrictions upon the First Amendment rights of the voters. *Id.*; *see also Washington State Grange,* 128 S.Ct. at 1192.

### B. Freedom of Association in Furtherance of Common Political Beliefs.

In this case, IRP argues that Idaho's primary election statutes violate its freedom of association. The Supreme Court "has recognized that the First Amendment protects the freedom to join together in furtherance of common political beliefs, which necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only."

**Memorandum Decision and Order - 6**

*Jones*, 530 U.S. at 575 (Internal quotations and citations omitted).  A corollary of the right to freely associate is a right not to associate.  *Id.*

Moreover, the Supreme Court has stressed that "[i]n no area is the political association's right to exclude more important than in the process of selecting its nominee. That process often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views."  *Id.* (Internal citations omitted).  Thus, it is no surprise that the Supreme Court consistently "affirm[s] the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party select[s] a standard bearer who best represents the party's ideologies and preferences."  *Id.* (Internal citation and quotations omitted).

In this case, IRP asserts that Idaho's open primary election statutes violate its freedom of association in light of IRP's newly adopted Closed Republican Party Primary Rule.  In support of its contention, IRP relies heavily on the Supreme Court's decision in *Jones*.  In *Jones*, four political parties – the California Democratic Party, the California Republican Party, the Libertarian Party of California, and the Peace and Freedom Party – filed suit against the California

**Memorandum Decision and Order - 7**

Secretary of State after citizens of California adopted Proposition 198. Proposition 198 changed California's partisan primary from a closed primary, in which only a political party's members could vote on its nominees, to a blanket primary, in which each voter's ballot lists every candidate regardless of party affiliation and allows the voter to choose freely among them. The plaintiffs alleged that California's new blanket primary violated their First Amendment right of association.

The District Court held that the burden placed on the political parties' right of association by the blanket primary was not severe, and was therefore justified by state interests. *Id.* at 571. The Ninth Circuit adopted the District Court's reasoning and affirmed the decision. In reversing the Ninth Circuit, the Supreme Court determined that Proposition 198 forced political parties "to adulterate their candidate-selection process – the basic function of a political party – by opening it up to persons wholly unaffiliated with the party." *Id.* at 581. Such forced association, the Supreme Court noted, "has the likely outcome . . . of changing the parties' message." *Id.* at 581-82. Finding that there was "no heavier burden on a political party's associational freedom," the Supreme Court deemed Proposition 198 unconstitutional after also concluding that it was not narrowly tailored to serve a compelling state interest. *Id.* at 582.

**Memorandum Decision and Order - 8**

This case is somewhat different from *Jones* because, unlike the blanket primary created by California Proposition 198, Idaho statutes mandate an open primary. "An open primary differs from a blanket primary in that, although as in the blanket primary any person, regardless of a party affiliation, may vote for a party's nominee, his choice is limited to that party's nominees *for all offices*. He may not, for example, support a Republican nominee for Governor and a Democratic nominee for attorney general." *Id*. at 576, n.6 (Italics in original). Thus, it is worth noting that, in *Jones*, the Supreme Court recognized that "the blanket primary . . . may be constitutionally distinct from the open primary. . . ." Therefore, in *Jones*, the Supreme Court was not required to determine the constitutionality of open primaries. *Id*. at 577, n.8.

Recognizing the difference between blanket and open primaries, this Court nevertheless finds the Supreme Court's analysis in *Jones* instructive here. In fact, in *Jones* the Supreme Court cited *Democratic Party of the United States of America v. Wisconsin ex rel. La Follette*, 450 U.S. 107 (1981), a case dealing with an open primary, in support of its analysis. The Supreme Court explained as follows:

> In *La Follette*, the State of Wisconsin conducted an open presidential preference primary. Although the voters did not select the delegates to the Democratic Party's National Convention directly – they were chosen later at

**Memorandum Decision and Order - 9**

>caucuses of party members – Wisconsin law required these delegates to vote in accord with the primary results. Thus allowing nonparty members to participate in the selection of the party's nominee conflicted with the Democratic Party's rules. We held that, whatever the strength of the state interests supporting the open primary itself, they could not justify this "substantial intrusion into the associational freedom of members of the National Party." 450 U.S. at 126.

*Jones*, 530 U.S. at 567.

Ultimately, the Supreme Court in *Jones* determined that a blanket primary like the one created by California's Proposition 198 imposed a severe burden on the political parties' First Amendment rights by forcing them "to associate with – to have their nominees, and hence their positions, determined by – those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival." *Id*. at 577. This, of course, is "qualitatively different from a closed primary. Under that system, even when it is made quite easy for a voter to change his party affiliation the day of the primary, and thus, in some sense, to 'cross over,' at least he must formally *become a member of the party*; and once he does so, he is limited to voting for candidates of that party." *Id.* (Italics in original).

Notably, to reach this conclusion, the Supreme Court relied on statistical surveys of California voters where 37 percent of Republicans said they planned to vote in the 1998 Democratic gubernatorial primary, and 20 percent of Democrats

**Memorandum Decision and Order - 10**

said they planned to vote in the 1998 Republican United States Senate primary (Proposition 198 had passed and was enacted into law two years earlier in 1996). *Id.* Such figures were apparently comparable to results of studies in other States with blanket primaries. *Id.* The Supreme Court also relied on expert testimony indicating that only 25-33 percent of all voters in Washington – a blanket primary state at that time – limited themselves to candidates of one party throughout the ballot. *Id.* The surveys relied upon by the Supreme Court also revealed different policy preferences between primary voters who "crossed over" from another party and the party members. *Id.*

Additionally, the Supreme Court relied on expert testimony stating that policy positions of legislators elected from blanket primary states are more moderate and reflect the preferences of voters at the center of the ideological spectrum. *Id.* at 580. The Supreme Court cited one expert who determined that it is inevitable under a blanket primary that political parties will be forced to give their official designation to a candidate who is not preferred by a majority or even a plurality of party members. *Id.* at 579.

These surveys, statistics and opinions, the Supreme Court explained, suggest that a blanket primary impedes the ability of political parties to select their own candidates. Based on all this evidence, the Supreme Court concluded that "the

**Memorandum Decision and Order - 11**

prospect of having a party's nominee determined by adherents of an opposing party [in a blanket primary] is far from remote – indeed, it is a clear and present danger." *Id.* at 578.

Here, the Court has not been provided with the same type of expert testimony, surveys or statistics. In fact, the record before this Court is quite undeveloped. The record before this Court includes the affidavits of Mitch Campbell, founder and director of The American Independent Movement of Idaho, and Jacqueline Salit, President of the Committee for a Unified Independent Party, Inc., who assert their opinions on political recognition of independent voters. However, neither of these individuals was designated as an expert in this matter, and neither of them provide the Court with the type of statistical or expert information provided to the court in *Jones*.

The Court has also been provided with a copy of a 1998 study entitled Primary Election Systems and Representation, which was apparently relied upon by the court in *Jones*. However, it also appears that at least one of the authors of that article, Elisabeth Gerber, was a designated expert who provided an expert report in *Jones*. *Id.* at 580. Moreover, that report was more contemporary with the *Jones* case than this case, having been authored in 1998.

Here, the only evidence resembling the record presented in *Jones* is the

**Memorandum Decision and Order - 12**

deposition testimony and affidavit of IRP's current Chairman, Norman Semanko. That testimony, however, does not help the Court analyze potential "cross over" voting in a meaningful way as done in the *Jones* case. When asked about "cross over" voting, Chariman Semanko stated that he "can't say whether [cross over voting] did or didn't or has or hasn't affected the ultimate outcome of any particular primary." (Gilmore Aff., Ex. F, p. 19). In his affidavit, he likewise states that "no statistical study has been conducted in the State of Idaho to determine the precise amount of voter cross-over that has occurred in Republican Party primary elections." (Semanko Aff., ¶ 15). The record is also void of statistics and surveys of "cross over" voting in other open primary states.

Chairman Semanko did testify that "every single Republican who has been on the primary ballot since 1988" has modified his or her political message, ideology and position on public policy issues in order to persuade nonparty members to vote for him/her in the primary election. (Gilmore Aff., Ex. F. pp. 28, 50-51). IRP therefore suggests that regardless of whether there exists evidence of actual "cross over" voting, the threat of "cross over" voting alone causes IRP candidates to change their message, ideology and position, which is what ultimately violates IRP's freedom of association.

However, Chairman Semanko and IRP cite no evidence supporting this

**Memorandum Decision and Order - 13**

conclusion.  Conclusory statements made by a party chairman are not the type of evidence the Supreme Court relied upon in *Jones*, and they are not the type of evidence this Court can rely upon to reach a similar conclusion here.  The Court cannot conclude, based on mere assertions, that Republican candidates have modified and will continue to modify their political messages, ideologies and positions because of Idaho's current open primary system.  Surveys, expert testimony, statistics and/or testimony from the candidates themselves is needed.

In *Jones*, the Supreme Court explained that the "substantial numbers" of "cross over" voters in a blanket primary will alter the identity of the nominee, and "[e]ven when the person favored by a majority of the party members prevails, he will have prevailed by taking somewhat different positions – and, should he be elected, will continue to take somewhat different positions in order to be renominated."  *Id*. at 579-80.  This, of course, is a reasonable conclusion based on the expert testimony, statistics and surveys presented to the Court in *Jones*.  Here, such a conclusion would be immature at this point because the record is void of such evidence.  The Court simply cannot determine at this point whether the prospect of having IRP's nominees determined by adherents of opposing parties is remote or a clear and present danger.  *Id*. at 578.

Therefore, based on the current record before this Court, genuine issues of

**Memorandum Decision and Order - 14**

material fact remain – mainly whether and to what extent "cross over" voting exists in Idaho, and whether and to what extent the threat of such "cross over" voting affects the message of IRP and its candidates.  Therefore, the Court cannot determine whether Idaho's open primary subjects the Republican Party's candidate-selection process to persons wholly unaffiliated with the party.  *Id*. at 581.  Moreover, the Court cannot simply borrow the statistics, opinions and surveys from *Jones* because, as noted above, that case dealt with a blanket primary instead of an open primary, and it is clear that there is a distinction between the two.  *Id*. at 576, n.6.  These differences may result in different "cross-over" voter statistics.

Thus, the Court cannot determine what burdens or restrictions, if any, are placed on IRP by Idaho's open primary.  In turn, the Court cannot weigh the character and magnitude of IRP's asserted injury against the interests of the State as justification for any such burden imposed by its statutes.  *Burdick*, 504 U.S. at 434.  These questions of fact prevent the Court from granting summary judgment for either party at this point.  Instead, the Court intends to conduct an evidentiary hearing or trial in this matter to better develop the record in a manner similar to the record before the Court in *Jones*.

The Court recognizes that the parties envisioned disposition of this case

**Memorandum Decision and Order - 15**

based on these motions. Accordingly, the parties may have failed to conduct the discovery needed to address the issues discussed above. Therefore, the Court will re-open discovery for the purpose of obtaining the relevant information. However, time is of the essence. The Court hopes to conduct the trial or evidentiary hearing, and issue a final decision, well before the 2010 Idaho legislative session begins. Therefore, the Court will schedule a status conference as soon as practicable. The parties should be ready to discuss an expedited discovery schedule and trial/evidentiary hearing date at the status conference.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant-Intervenors' Motion for Summary Judgment (Docket No. 25) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that Defendant Ben Ysursa's Motion for Summary Judgment (Docket No. 26) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that and Plaintiffs' Motion for Summary Judgment (Docket No. 27) shall be, and the same is hereby DENIED.

IT IS FURTHER ORDERED that a telephonic status conference for the purpose of discussing an expedited discovery schedule and trial/evidentiary date shall be conducted on **September 9, 2009 at 9:00 a.m.** Plaintiff is directed to

**Memorandum Decision and Order - 16**

initiate the call.  The Court can be reached at (208) 334-9145.



DATED:  **September 4, 2009**

_/s/ B. Lynn Winmill_
B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - 17**