***Exhibit H: The Evidence of Crossover Voting in Ripley's Second Affidavit***

***Summary Points***

1. Mr. Ripley's analysis is scientifically unsound and would not stand up to the rigors of peer-review.

2. The counties and districts analyzed were not randomly selected from the population of races, and are not representative of races in Idaho generally.

3. Mr. Ripley does not consider other potential alternative explanations for patterns in participation and voting behavior in these primaries.

4. The conclusions about the magnitude of crossover voting in Mr. Ripley's analysis suffers from the *ecological fallacy*, and thus cannot be trusted.

5. Mr. Ripley's report contains no evidence whatsoever about the effect of the election of these particular candidates on the ideological make-up of the Idaho legislature. Analysis of the Idaho legislature suggests that the effects of the overall composition of the legislature are trivial at best.

6. The candidates Mr. Ripley identify as "liberals" are all within the mainstream of the Republican Party in the State of Idaho. All are more conservative than the most conservative Democrat serving in the state legislature.

*Introduction*

The Second Affidavit of David Ripley, dated January 12, 2010, contains a long report containing data about crossover voting and its impact in a variety of Republican primaries from 2002 to 2008. Mr. Ripley reviews a significant amount of data regarding these four primary elections, and claims there is a "prevalent pattern of Democrat crossover voting designed to produce more liberal members of the Idaho legislature" (Ripley, Exhibit A). He looks at patterns of bullet-balloting and/or reverse roll-off as a method—compared with what he asserts are "natural voting patterns of average voters" to draw inferences about the presence and impact of crossover voting. He ultimately claims that at least four elections were changed by the participation of Democratic crossover voting, and that this has had a "significant impact on the composition and ideological make-up of the Idaho Legislature."

My goal here is to speak to the *scientific* merit of Ripley's affidavit. In particular, I will discuss whether, and to what extent, the inferences he is drawing from Idaho electoral data are reliable and would stand up to rigorous scientific scrutiny. To do so, I begin by discussing the methodological deficiencies of the analysis.

*Methodological Deficiencies*

Mr. Ripley's report suffers from a number of methodological implications. One might view the purpose of Mr. Ripley's report to determine whether or not there has ever been a crossover voter in the Republican primary. Of course, the answer to that question is *yes*. And, as discussed earlier, any electoral system—including a closed primary—would allow for crossover voting by "real" Democrats who chose to register as Republicans. A more reasonable way to view Mr. Ripley's report is to empirically ascertain the *amount* of crossover voting in Idaho, and the *extent to which* it affects electoral outcomes.

First, in order to make claims that are generalizable to Republican legislative primaries in the State of Idaho, it is important to select a representative sample of primaries. Typically this would be done by randomly sampling from a list of races. Mr. Ripley, on the other hand, chooses his cases selectively. Indeed, the analyses come from Latah County (District 6), the part of Canyon County in District 10, and the part of Ada County in District 10. Figure H-1 contains two plots that summarize the percent liberal two-party vote in the 2008 presidential general election and the population of each for each county in the State of Idaho. (The population data are on the logarithm base-10 scale because the great variability in county population in the state). With regard to presidential vote share, these counties are all to the left of the distribution. John McCain lost Latah County, getting only 46.5% of the two-party vote. He won Ada county, getting 53.2% of the two-party vote. In Canyon County he received 68.0% of the two-party vote. As the left panel of Figure H-1 makes clear, these three counties are not representative of the counties in the state of Idaho. The legislative districts within these counties may be even more unrepresentative. Similarly, with regard to population, these counties are outliers. All three are to the right of the distribution, with all counties having a population greater than 31,600 (4.5 of the logarithmic base-10 scale).



**Figure H-1.** Histogram of the Republican percentage of the two-party vote by county in the 2008 general election, and histogram of the county population in 2008 (logarithm base 10). *Data source:* Idaho Secretary of State, http://www.sos.idaho.gov/elect/results.htm; U.S. Department of the Census, http://www.census.gov/popest/counties/tables/CO-EST2008-01-16.xls.

Second, Mr. Ripley looks for patterns in bullet-balloting and/or reverse roll-off by looking only at the vote totals. *Without considering other alternative explanations for these patterns, it is impossible to know whether the patterns are caused by crossover voting or something else.* A political science study of these data would require the systematic elimination of alternative explanations. As discussed below when I go case-by-case through the analysis, in many of these races the patterns of participation may be explained simply by the lack of competition in "higher" races. The lack of interest in other races, and variation in the amount of campaign spending and attention by the public might also explain variation in participation rates. Additionally, changes in the population or demographics of a district over time might account for patterns. The incumbency advantage also might matter. Finding a pattern and drawing a conclusion without considering alternative explanations does not meet scientific merit. Simply put*, anomalous voting patterns are evidence of anomalies*, and do not in and of itself provide evidence about *why* there are anomalies.

Third, Mr. Ripley's analysis suffers from the *ecological fallacy*. One commits an ecological fallacy by drawing inferences about specific individuals by only looking at aggregate data. Mr. Ripley is interested in drawing conclusions about individual voting behavior from aggregate vote totals. The ecological fallacy is a generic problem in the social sciences, for which is there no solution (see, for example, Goodman 1953, King 1997, Wakefield 2004). Indeed, besides relying on the method of bounds (Duncan and Davis, 1953, discussed below)—which exploits simple arithmetic to place bounds on the amount of individual behavior of a particular type given aggregate statistics, there is no way to draw reliable inferences from aggregate data about individual behavior without making untestable assumptions.

As an illustration, suppose that in a particular Republican primary there were 100 more individuals who cast votes in that race compared with in a race "higher" on the ballot. Further, suppose that Candidate A—who is suspected to be a "real" Democrat—beat Candidate B by 80 votes. Does this

mean that Candidate B would have won on the election if not for these 100 voters?  No.  Looking only at the vote totals does not tell us much about the individual behavior.  Of course, had all 100 of these voters voted for Candidate A, Candidate B would win in Candidate A's absence.  But the primary participation totals do not contain that information.  Thus, making claims about how elections would have changed without determining individual behavior is fallacious.  Simply put, the burden of proof to show that electoral results would have changed in the absence of crossover voting is quite high.

Finally, even if one believed that Mr. Ripley's report provides evidence of crossover voting, *it provides no evidence about whether the candidates he isolates have had an effect on the ideological make-up of the Idaho legislature.*  Indeed, there is no evidence whatsoever about the behavior of winning candidates once in office.  Our study of the Idaho Legislature in Exhibit G provides some information here, which I will refer to when discussing Mr. Ripley's analysis case-by-case.

### *Facts About the Idaho Electoral Context*

When discussing particular primaries and the possibilities of bullet-balloting and reverse roll-off, it is important to keep in mind the context of each election.  Here are some facts about the 2002, 2004, 2006, and 2008 Idaho Republican primaries (unless otherwise noted, data is obtained from the Idaho Secretary of State Election Division):

- In 2002, Larry Craig was unopposed in the Republican primary for U.S. Senate.  "Butch" Otter and Mike Simpson were unopposed in the Republican primary for the U.S. House in Districts 1 and 2.  In the statewide gubernatorial race, Dirk Kempthorne faced three other candidates, ultimately winning the primary with just shy of 66% of the vote.  There were other contested statewide Republican primaries in 2002.
- The Republican presidential primary was uncontested in 2004.  Mike Crapo ran unopposed in the Republican primary for U.S. Senate.  "Butch" Otter was opposed in the 1st District House Race; Mike Simpson was unopposed in the 2nd District House Race.
- In 2006, the top federal race was for the U.S. House.  In District 1, "Butch" Otter's seat was open; six Republicans contested the race, which was ultimately won by Bill Sali.  Sali went on to win the general election with just shy of 50% of the votes.  In District 2, Mike Simpson was again unopposed.  The top state election was for Governor; "Butch" Otter ran again three other candidates in that primary.  There were other contested statewide races.
- In 2008, the Republican presidential primary was the top federal race.  That race was technically contested, with both John McCain and Ron Paul appearing on the Republican ballot.  That election—which took place on May 27, 2008—happened two and a half months *after* John McCain secured the Republican nomination (McCain clinched on March 4, 2008; http://www.cnn.com/2008/POLITICS/03/04/march.4.contests/index.html).  On the Democratic side, while delegates to the State Convention that would formally choose delegates to the national nominating convention for president were chosen on February 5, 20008, the Democratic presidential primary was still contested; Obama clinched a week later (http://www.cnn.com/2008/POLITICS/06/03/election.democrats/).  Eight Republicans contested the primary for U.S. Senate, which was won by Jim Risch with just over 65% of the vote.  Both Republican primaries for the U.S. House were also contested.

### *Latah County Analysis*

Mr. Ripley's analysis begins with two primaries in Latah County—the 2004 State Senate primary and the 2006 Congressional primary.  Latah County is the home of the University of Idaho, and is one of three counties President Obama carried in the 2008 presidential election.  Other than

election returns we have no specific data as to the distribution of ideology and party identification in Latah County, however the results suggest that there are more voters on the left in Latah County than in other counties in Idaho.  Moreover, it is quite likely that many voters (and, thus, candidates) identify as Republicans even though they may not agree with the majority of their party on issues like public funding of education and abortion rights.

Mr. Ripley argues that in 2004 the drop-off from the Bush and Crapo races suggest a bullet-ballot strategy to elect Gary Schroeder rather than Gregg Vance.  In 2004, however, both President Bush and Senator Crapo were unopposed; this might have produced less participation in these races, since Republican voters knew these "top" races were inconsequential.  It is also the case that in 2004 the Democratic presidential nomination was still in play, and as such, "real" Democrats would want to participate in that primary rather than selecting the Republican ballot.

State Senate Primary

|  |  | Schroeder | Vance | Total |
|---|---|---|---|---|
| Presidential Primary | Bush | [1137,2399] | [0,1262] | 2399 |
|  | PDCOV | [286,1548] | [0,1262] | 1548 |
|  | Total | 2685 | 1262 | 3947 |

**Table H-1.**  Illustration of the ecological inference problem using data from the 2004 Latah County State Senate primary.  The numbers in brackets contain the range of possible values obtained using the method of bounds.  This illustration is based on the *wholly unreasonable* assumption that all voters who cast votes in the Republican presidential primary for "None of the Names Shown" (1068) or who did not vote in that race but did vote in the State Senate primary (480) are Possible Democratic Crossover Voters [PDCOV].

Table H-1 provides an illustration of the limitations of using aggregate election data to draw inferences about individual behavior.  In this table, the total number of Bush and what I label "Possible Democratic Crossover Voters" (PDCOVs) is known; these voters are one of the 1068 who cast a ballot in the race for "None of the Names Shown" or one of the 480 who did not vote in that race but did vote in the State Senate primary.  We further know that Schroeder received 2685 votes in the Republican primary with Vance receiving 1262.  The problem of *ecological inference* is learning about the interior cells of this table from the known totals.  The interior cells tell us about individual voters, for example, the number of Bush Voters who voted for Vance.  The only definitive conclusion one can draw from a table like this comes from the method of bounds (Duncan and Davis 1953).  This method uses simple accounting identities to narrow the possible interior cell counts.  For example, if 2399 people voted for Bush, we know that no more than 2399 Bush voters could have voted for Schroeder in the primary.  The bracketed interior cells of the table show the lower and upper bounds for each interior cell.

What does this table tell us?  First, a significant number of Bush voters—between 47.3% and 100%—had to have voted for Senator Schroeder.  At least some PDCOVs had to have voted for

Schroeder as well—between 18.5% and 100%. *Without any additional information, there is no reason to assign weight to one of these numbers over another*. The data are just as consistent with 18.5% of the PDCOVs voting for Schroeder than 100%. Was this enough to affect the outcome? No. Moreover, there are many reasons why a PDCOV is not an actual crossover voter. This would include any Republicans who chose not to vote because the race was uncompetitive, or voted for "None of the Names Shown" as a protest against President Bush. Even if we accept Ripley's premise that some of these people were "real" Democrats, the number of them necessary to have affected the outcome of this election would be implausibly large.

Our analysis of the Idaho legislature suggests that Schroeder is indeed a liberal Republican. He is the most liberal member of the Republican caucus. *However, in the 57th, 58th, and 59th Senate he is consistently more conservative than the most conservative Democrat*. (See Exhibit G, Figures G-4, G-5, G-6, pp. 8-10). This reflects the relative liberalness of this district, not a Trojan Horse strategy. Indeed, such a strategy would not be necessary. Schroeder could easily win a general election as a Democrat. He, nonetheless, identifies as a Republican, and has done so consistently throughout his political career. Additionally, Schroeder is an incumbent. The political science literature has shown that legislative incumbents enjoy significant electoral advantages (see, for example, Gelman and King 1990). These incumbency advantages exist at the state level (Jewell and Breaux 1988), and have increased over time in state legislative races (Ansolabehere and Snyder 2002). The power of incumbency is another factor that could explain Schroeder's success. Since the Democrats have not contested Senator Schroeder for a number of years, the Republicans could attempt a Trojan Horse candidacy themselves in Latah. It would surely be unsuccessful.

There is similarly thin evidence of crossover voting in the 2006 congressional primary. Indeed, with the large number of candidates, there is little than can be made from the participation rates in this hotly contested election. Sorenson was not a "liberal" in the state Senate (see Exhibit G, Figure G-4, p. 8). Our analysis of the Idaho legislature suggests she was right in the middle of the Republican caucus. She was likely elected because she was the candidate that best reflected her district, which is somewhat to the left. There is simply no affirmative evidence that Democratic crossover voting caused her to be elected.

*Canyon County Analysis*

In 2008, Curtis Bowers—the sitting House member in District 10A—lost the primary to Pat Takasugi by 507 votes. There was an uptick in participation in the 2008 primary compared with the previous three. Mr. Ripley attributes this to Democratic crossover voting. There are at least two other plausible explanations. First, Canyon County grew substantially during this time period, which would suggest an increase in participation. Second, and more importantly, 2008 was a presidential election when the Democratic nomination was still at stake, and a race for a U.S. Senate seat with many Republican candidates. As such, the uptick in participation is not surprising, and certainly cannot be attributed to crossover voting without considering other explanations. The Republican presidential nomination was settled at the time of the election, which might cause a number of Republican voters to not vote for any candidate—especially those who supported candidates other than McCain early in the contest.

How conservative was Bowers? Our analysis of the 59th Idaho House shows that Bowers was the fifth most conservative House member in the session (see Exhibit G, Figure G-3, p. 7). While we do not have data about the ideological distribution among Republican identifiers in District 10, it is just as plausible to believe that Bowers lost the election because he was simply too conservative for the Republicans in the district. The "uptick" in participation in this race is not definitive evidence that

the outcome of the race was affected. Moreover, making claims about the individual behavior as it relates to the 507-vote margin is fallacious.

### *Ada County Analysis*

The final set of analyses come from District 14 in Ada County. Ada County is by far the largest county in Idaho based on population, and as such, contains eight legislative districts. We have no specific data about the ideological distribution of voters or the partisan identification of voters in Ada County. Because Ada County has urban and rural areas, we would expect there to be great heterogeneity within the county. In the 2008 presidential election, John McCain received 53.2% of the two-party vote; this is one of the lowest in the State of Idaho.

Mr. Ripley focuses first on two races in District 14. In 2004, the "top" Republican primary races were uncontested, including the presidential race and the race for U.S. Senate. "Butch" Otter was opposed in the primary for 1st District House race that contains some of Ada County. In 2004 in the Senate race between Hal Bunderson and Rod Beck and the House race between Henry Kulczyk and Stan Bastian, Mr. Ripley claims that there were 354 and 612 Democratic crossover voters. Using the vote totals to reach these numbers is not principled, as doing so would require one to fall prey to the ecological fallacy. Bunderson also enjoyed the incumbency advantage in his race. Are Bunderson and Bastian liberals? Absolutely not. Our analysis of the 57th Idaho Senate suggests that Bunderson falls right in the middle of the Republican caucus (see Exhibit G, Figure G-4, p. 8). (Kulczyk was the most conservative member of the 57th Idaho House). In the 58th Idaho House, Bastian is toward the left of the Republican caucus, but is more conservative than six fellow Republicans and all of the Democrats (see Exhibit G, Figure G-2, p. 6). These data about the performance of these candidates in government suggests that both are well within the Republican mainstream in the State of Idaho. They are not Trojan Horse Democrats. Indeed, they were most likely superior candidates to Kulczyk and Beck in their district. The evidence about the 2006 primary between Bastian and Beck is even less persuasive.

Mr. Ripley provides additional analysis from District 15 in Ada County. Mr. Ripley again compares turnout to a "top" race—in this case primary for U.S. Senate that was uncontested, and the race for the two U.S. House races that were also uncontested. The comparison of the 99% vs. 82% roll-off rates is not evidence of crossover voting. It is evidence only of roll-off. The race between sitting Senator Andreason and Dennis Mansfield took place in 2002 and 2006. Is Andreason a Trojan Horse? It is the case—as shown in our analysis of the Idaho Senate—that Andreason is to the left of the Republican caucus (see Exhibit G, Figures G-4, G-5, G-6, pp. 8-10). However, he still falls well within the Republican mainstream. He attracted a Democrat challenger in 2002, 2004, and 2006 (he was unopposed in 2008). This suggests that Andreason is not a Trojan Horse, but is simply a candidate who best matches the ideology of the Republicans in the district.

At the end of his report, Mr. Ripley discusses the 2004 House primary in District 28 (Bingham County) between Joseph Cannon and Steve Adams. Cannon defeated Adams by 16.87% (964 votes). There were more votes cast in that race than in the "top" ticket races, but in 2004 the presidential primary and the U.S. Senate primary were uncontested. The comparison between this district and overall statewide returns is preposterous. *They should only match if the precise demographics and political contexts across the state matched those in this particular district!* They do not. Cannon won this primary handily, and went on to win the general election. Our analysis of the 58th Idaho House suggests that he, too, falls right in the middle of the Republican mainstream (see Exhibit G, Figure G-2, p. 6).

*Conclusion*

Taken as a whole, these analyses of voting patterns in Idaho provide little evidence of the existence of crossover voting, and no evidence about whether crossover voting has affected the outcome of a legislative race, or the composition of the Idaho legislature. All "liberal" Republican candidates discussed are in the mainstream of Republicans in the State of Idaho.