**CHRIST T. TROUPIS**
**TROUPIS LAW OFFICE P.A.**
**1299 E. Iron Eagle, Ste 130**
**P.O. Box 2408**
**Eagle, Idaho 83616**
**Ph: (208) 938-5584**
**Fax: (208) 938-5482**
**Email: ctroupis@troupislaw.com**

**JOHN ERIC SUTTON**
**J.E. SUTTON & ASSOCIATES**
**200 N. 3rd St., Ste 2 & 3**
**Boise, Idaho 83701**
**Ph: (208) 336-4444**
**Fax: (208) 336-4494**
**Email: jesutton@jesutton.com**

**Attorneys for Plaintiff Idaho Republican Party**

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| **IDAHO REPUBLICAN PARTY, et.al.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**BEN YSURSA, In his Official Capacity as Secretary of State of the State of Idaho,**<br><br>Defendant. | Case No. 1:08-CV-00165-BLW<br><br>**AFFIDAVIT OF DAVID RIPLEY** |

David Ripley, being first duly sworn, deposes on oath and states:

1. I am not a party to this lawsuit. Each of the matters stated herein are known to me of my personal knowledge and if sworn as a witness, I could testify competently thereto.

2. I came to Idaho in 1984 under the auspices of the National Education Association's Political Action Committee (NEA-PAC) to assist with the election of Richard Stallings to Congress from Idaho's 2nd District.

3. I have been a paid political strategist in every election cycle since 1978, during which I served as a field organizer for Gene Wenstrom, Democratic candidate for Congress in Minnesota's 7th District.

4. In 1985, I served as the general political consultant/strategist for a mayoral candidate in New Orleans, after which I returned to Idaho to co-found a progressive political consulting firm with John C. Stocks, former Democrat state senator from Coeur d'Alene, Idaho.

5. As a Democrat political consultant, my client list included the Idaho State Senate Democrats' Campaign Committee, the Ada County Democratic Party, the LaRocco for Congress Committee, the Williams for Congress Committee, the Idaho Education Association, the Wisconsin Education Association, the National Education Association, the National Organization for Women, Freedom Means Choice PAC, among numerous others.

6. In 1992 I closed the successor consulting firm (Ripley & Associates, Inc.) in order to accept a full-time position as the first Political Director of the Idaho Education Association. I served in that position until 1994.

7. Since 1995 I have served as Executive Director of Idaho Chooses Life. In that capacity I have been involved in many legislative campaigns each election cycle.

8. I was approached by the Idaho Education Association's Executive Director, Don Rollie, in the winter of 1985, and offered a consulting contract with the political

action arm of the Idaho Education Association (PACE – Political Action Committee for Education).

9. In 1985, the Idaho Education Association ("IEA") strongly opposed positions taken by the Idaho Legislature over teacher compensation and general education funding. I was offered a consulting contract by the IEA in order to assist them in expanding their political program to include Democratic participation in Idaho Republican primaries.

10. Specifically, the IEA leadership had determined that the IEA could not affect enough legislative votes simply by backing Democrats in general elections. It needed to ensure that pro-education/moderate Republicans were elected in Republican-dominated districts.

11. I reluctantly accepted the consulting contract and continued under that arrangement for the next four election cycles, from 1985 through 1992. I closed my consulting firm in the winter of 1992 to accept a full-time staff position with the IEA as their first Political Director.

12. In the five primary election cycles in which I worked for the IEA, our success rate in electing moderate Republicans to the Legislature was about 80%.

13. The organization endorsed many candidates in each cycle – most of them incumbents. Most endorsed candidates would simply be given money. Beginning with the 1986 primary, I would be detailed to deal with targeted races/candidates – generally involving conservative Republican incumbents the organization had targeted for defeat.

14. Over the entire course of my work with the IEA, from 1985 through 1994, my responsibilities involved candidate recruitment, candidate training, assisting candidates with message development, voter contact, fundraising, media, printing, list development, precinct targeting, polling, direct mail projects and Get-Out-The-Vote efforts.

15. Beginning with the 1986 cycle, I regularly organized cross-over voting efforts among Democratic members of the IEA, as well as the Democrats in the affected district's general population.

16. The specific strategies for cross-over voting campaigns varied from district to district and year to year, but generally involved the following:

    a) An effort to identify Democrats with a propensity for voting in primaries, as well as a strong commitment to improved education funding.

    b) Implementation of some form of organized persuasion appeal and Get-Out-the-Vote program targeted at the identified Democrats. These efforts included one or more of the following. Most races involved all of the tactics listed below.

        1) Sometimes we would do a direct mail piece, signed by some prominent local Democrat, urging his fellow Democrats to vote for moderate Republican candidate X against the "ultra-conservative" Republican incumbent who "opposed public education."

        2) Sometimes I would organize a short-term political action committee to sponsor mailings or phone calls to Democrats.

    3) On other occasions I would use a phone bank to make phone calls, with phoners purporting to be volunteers concerned about the quality of education our kids were receiving and urging the voter to vote for the moderate Republican.

17. The objective in Republican legislative primaries was to produce 300 to 1000 Democratic cross-over votes, which would usually be sufficient to allow the IEA-endorsed candidate to win the primary election.

18. Given the expenses involved in running such an effort, the IEA's long term goal was to build a slate of moderate Republicans in the same District so that resources could be maximized to affect one Senate seat and two House seats in that District. The election of a whole team of moderates from a single District carried the added benefit of long-term stability within the delegation: a unified, pro-IEA delegation meant that each politician was reinforcing the message of the other. After the successful election of a slate of moderates, it was cheaper and easier for the IEA to defend those moderate incumbents because voters were receiving the same basic message regarding education funding and other issues.

19. Because Idaho has an Open Primary Election, there was nothing to hinder the IEA's concerted effort to develop and implement strategic cross-over voting of Democrats and other non-Republicans in Idaho Republican Primary Elections during the five primary election cycles that I worked for it. In fact, if I had not taken full advantage of this opportunity to influence the results of Idaho Republican Primaries for the benefit of the IEA, it would have been a dereliction of my duties as its political consultant.

20. Idaho's Open Primary Election law has not changed since I was employed by the IEA. Since my work for them ceased and up to the present date, I have continued to work in Idaho as a political consultant for multiple candidates in every Idaho Republican Primary election cycle up to the present date. During that time, I have observed that the IEA has continued to use the same methods to promote and implement strategic cross-over voting that I helped it develop.

21. The strategic cross-over voting activities of the IEA have been extremely effective in advancing the organization's political and social agenda. Certainly the make-up of the Idaho Legislature, particularly the ideological orientation of many elected Republicans, provides prima facie evidence that the Idaho Education Association has continued to make effective use of the cross-over strategies first implemented in the 1986 primary election.

FURTHER, AFFIANT SAYETH NOT.

_____
David Ripley

State of Idaho            )
                          ) ss.
County of Ada             )

Subscribed and sworn to before me, a Notary Public in and for the State of Idaho on this 11th day of January, 2010.

_____
Notary Public
My commission expires:
Residing At:

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of January, 2010, I served a copy of the foregoing Affidavit of David Ripley by email transmission, addressed to the following persons:

Gary Allen
Givens Pursley
P.O. Box 2720
Boise, Idaho 83701-2720
garyallen@givenspursley.com

Harry Kresky
LAW OFFICE OF HARRY KRESKY
250 W. 57th Street, Ste 2017
New York, NY 10107
harrykresky@aol.com

Michael S. Gilmore
Karin D. Jones
Deputy Attorneys General
Civil Litigation Division
Office of the Attorney General
954 W. Jefferson Street, Second Level
P.O. Box 83720
Boise, ID 83720-0010
mike.gilmore@ag.idaho.gov
karin.jones@ag.idaho.gov

_____