**CHRIST T. TROUPIS**
**TROUPIS LAW OFFICE P.A.**
**1299 E. Iron Eagle, Ste 130**
**P.O. Box 2408**
**Eagle, Idaho 83616**
**Ph: (208) 938-5584**
**Fax: (208) 938-5482**
**Email: ctroupis@troupislaw.com**

**JOHN ERIC SUTTON**
**J.E. SUTTON & ASSOCIATES**
**200 N. 3rd St., Ste 2 & 3**
**Boise, Idaho 83701**
**Ph: (208) 336-4444**
**Fax: (208) 336-4494**
**Email: jesutton@jesutton.com**

**Attorneys for Plaintiff Idaho Republican Party**

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF IDAHO

| | |
|---|---|
| **IDAHO REPUBLICAN PARTY, et.al.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**BEN YSURSA, In his Official Capacity as Secretary of State of the State of Idaho,**<br><br>Defendant. | Case No. 1:08-CV-00165-BLW<br><br>**AFFIDAVIT OF**<br>**DENNIS MANSFIELD** |

Dennis Mansfield, being first duly sworn, deposes on oath and states:

1. I am not a party to this lawsuit. Each of the matters stated herein are known to me of my personal knowledge and if sworn as a witness, I could testify competently thereto.

2. In 2000, I ran for the open 1st Congressional District seat in the U.S. House of Representatives.

3. In 2002 and 2006, I ran for the Idaho State Senate in District 15 against John Andreason.

4. In the 2000 Congressional Primary, we had a vote goal total of 23,000 that it would take to win the race. We succeeded in reaching that goal and still lost the race.

5. The model we set up took into account Republican vote history for a Republican Congressional Primary. When we went back to look at the race, we found a number of areas that traditionally didn't bring a Republican turnout. The idea that we would see a large chunk of "Republican" voters in traditionally Democratic strongholds presented anomalies.

6. In the 2000 race, there were a number of people within the educational community who stated that "targeted areas within their community were specifically influenced to strategically vote in the Republican Primary."

7. In 2000, areas like Moscow had untraditionally large "Republican" turnout. Whenever those anomalies showed up, I lost that area.

8. In the 2002 Senate race, there was a huge push by the Idaho Education Association for Andreason. IEA-PACE donated $2,000 to Andreason's campaign in the 2002 election, and from 2000 through 2008, IEA-PACE has donated $6,000 to Andreason's campaigns.

9. The most obvious challenge to me was the impact of the IEA in both funding strategic candidates and in walking precincts in their support.

10. The IEA and IEA-PACE had a very aggressive precinct walking and literature campaign endorsing Andreason.

11. Andreason was also endorsed and or supported by many well-known high-profile Democrats.

12. In the 2002 Senate primary race against Andreason, there were 1160 more ballots cast than were cast for U.S. Congressman "Butch" Otter, indicating a large number of non-Republican voters participating in my Senate primary race.

13. I was a lobbyist from 1991-2000 on some of the most conservative Republican legislation drafted. The legislation matched and mirrored the GOP platform on abortion, gay rights, homeschooling, tax credits and property taxes.

14. In terms of the 2000, 2002, and 2006 races, my inability to succeed in any of those races with my past proven history and by anchoring these campaigns the best I could to these issues points to obvious, strategic, non-party influence and voting.

15. In the open primary, I was penalized for my adherence to and strict ownership of Republican Party policies and positions.

16. Against Andreason, I felt as if I had to bridle my tongue on things like home education because I knew that the typical democratic cross over voter would see that as anti-education.

17. In 2006 we never even mentioned home schooling. Based on it being an open primary, we knew that we would lose people and enrage the large bank of typical education-issue crossover voters. We had to stick to issues we knew wouldn't cost us.

18. I wrote a major part of the home school legislation. However, I was not able to mention that during my campaigns because of potential damage from cross over voters.

19. In regards to spending, we had to consolidate our spending into about 9 or 10 mailers, all one after another in the 2006 elections. We amended our strategy and had to do an overkill of our mailings and our automated phone campaigns in a concentrated window, knowing that if we stretched it over a long period of time, the IEA would put out a concentrated effort to combat us.

20. In order to not draw the combative attention in 2006, I had to announce late at 4:57 on the final day of filing, then had to raise and spend all our money in about 14 days to stay off the radar. I couldn't take the traditional long-range approach without having to combat the Democrats and the IEA.

FURTHER, AFFIANT SAYETH NOT.

_____
Dennis Mansfield

State of Idaho        )
                      ) ss.
County of Ada         )

Subscribed and sworn to before me, a Notary Public in and for the State of Idaho on this 15 day of January, 2010.

_____
Notary Public
My commission expires: 11/23/2015
Residing At: Boise, ID



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of January, 2010, I served a copy of the foregoing Affidavit of Dennis Mansfield by email transmission, addressed to the following persons:

Gary Allen
Givens Pursley
P.O. Box 2720
Boise, Idaho 83701-2720
garyallen@givenspursley.com

Harry Kresky
LAW OFFICE OF HARRY KRESKY
250 W. 57th Street, Ste 2017
New York, NY 10107
harrykresky@aol.com

Michael S. Gilmore
Karin D. Jones
Deputy Attorneys General
Civil Litigation Division
Office of the Attorney General
954 W. Jefferson Street, Second Level
P.O. Box 83720
Boise, ID 83720-0010
mike.gilmore@ag.idaho.gov
karin.jones@ag.idaho.gov